**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| ALBERTO GONZALEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANO HEALTH, INC. f/k/a JAWS ACQUISITION CORP., MARLOW HERNANDEZ, BRIAN D. KOPPY, JOSEPH L. DOWLING, and MICHAEL RACICH,<br><br>Defendants. | **Case No.**<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Alberto Gonzalez ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Cano Health, Inc. ("Cano" or the "Company") f/k/a Jaws Acquisition Corp. ("Jaws"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Cano securities between

1

May 18, 2020 and February 25, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Cano provides primary care medical services to its members in the U.S. and Puerto Rico.  The Company owns and operates medical centers, as well as operates pharmacies.

3.      Cano used to be a special purpose acquisition company ("SPAC")[1] and operated under the name "Jaws Acquisition Corp."  On June 3, 2021, Jaws consummated a merger with Primary Care (ITC) Intermediate Holdings, LLC ("PCIH"), whereby, among other things, Jaws changed its name to "Cano Health, Inc." and began to provide primary care medical services (the "Business Combination").

4.      As a publicly traded company, Cano must adhere to strict financial reporting requirements by, among other things, timely filing periodic financial reports with the SEC and complying with Financial Accounting Standards Board ("FASB") guidelines, including Accounting Standards Update No. 2014-09, *Revenue from Contracts with Customers (Topic 606)* ("ASC 606").  Particularly, under ASC 606, Cano must analyze its revenue recognition with respect to, *inter alia*, certain Medicare risk adjustments.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Cano overstated its due diligence efforts and expertise with respect to acquiring target businesses; (ii)

---

[1] A SPAC, also called a blank-check company, is a development stage company that has no specific business plan or purpose or has indicated its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person.

accordingly, Cano performed inadequate due diligence into whether the Company, post-Business Combination, could properly account for the timing of revenue recognition as prescribed by ASC 606, particularly with respect to Medicare risk adjustments; (iii) as a result, the Company misstated its capitated revenue, direct patient expense, accounts receivable, net of unpaid service provider costs, and accounts payable and accrued expenses; (iv) accordingly, the Company was at an increased risk of failing to timely file one or more of its periodic financial reports; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

6. On February 28, 2022, Cano issued a press release "announc[ing] it will delay its fourth quarter and full year 2021 earnings release, conference call and 2022 guidance updates, previously scheduled for Monday, February 28, 2022." In explaining the delay, Cano advised that "in the course of finalizing its audit of the financial statements for the year ended December 31, 2021, the Company and its independent auditor . . . identified certain potential non-cash adjustments to account for revenue recognition under accounting standard ASC 606." Specifically, Cano advised that "[t]he adjustments relate to how and when the Company accrues revenue related to Medicare Risk Adjustments" and that "[t]he adjustments are expected to impact the timing of revenue recognition, by delaying recognition of certain amounts related to the Medicare Risk Adjustment to subsequent periods[.]"

7. On this news, Cano's Class A common stock price fell $0.32 per share, or 6.17%, to close at $4.87 per share on February 28, 2022.

8. On March 14, 2022, Cano filed its annual report for the quarter and year ended December 31, 2021 (the "2021 10-K"). That filing stated, *inter alia*, that "[t]he correction in the timing of revenue recognition under ASC 606 resulted in adjustments to capitated revenue, direct patient expense, accounts receivable, net of unpaid service provider costs, and accounts payable

and accrued expenses[,]" and that the Company therefore "restated its financial statements for each of the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021 in the [2021 10-K.]"  For example, the 2021 10-K reported that, as restated, capitated revenue decreased 2.13% for the three months ended March 31, 2021; 13.11% for the three months ended June 30, 2021; and 5.58% for the three months ended September 30, 2021.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Cano is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

13.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.    Plaintiff, as set forth in the attached Certification, acquired Cano securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.    Defendant Cano is a Delaware corporation with principal executive offices located at 9725 NW 117th Avenue, Miami, Florida 33178.  Cano's Class A common stock and warrants trade in an efficient market on the New York Stock Exchange ("NYSE") under the trading symbols "CANO" and "CANO/WS", respectively.  Prior to the Business Combination, Cano was a Cayman Islands corporation with principal executive offices located at 1601 Washington Avenue, Suite 800, Miami Beach, Florida 33139, and its units, Class A ordinary shares, and redeemable warrants traded in an efficient market on the NYSE under the trading symbols "JWS.U", "JWS", and "JWS WS", respectively.

16.    Defendant Marlow Hernandez ("Hernandez") has served as Cano's Chief Executive Officer ("CEO") at all relevant times following the Business Combination.

17.    Defendant Brian D. Koppy ("Koppy") has served as Cano's Chief Financial Officer ("CFO") at all relevant times following the Business Combination.

18.    Defendant Joseph L. Dowling ("Dowling") served as Cano's CEO at all relevant times prior to the Business Combination.

19.    Defendant Michael Racich ("Racich") served as Cano's CFO at all relevant times prior to the Business Combination.

20.    Defendants Hernandez, Koppy, Dowling, and Racich are sometimes referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Cano's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Cano's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Cano, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     Cano and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Cano provides primary care medical services to its members in the U.S. and Puerto Rico.  The Company owns and operates medical centers, as well as operates pharmacies.

24.     Cano used to be a SPAC and operated under the name "Jaws Acquisition Corp." On June 3, 2021, Jaws consummated the Business Combination, whereby, among other things, the Company acquired certain equity interests in PCIH, PCIH became a direct subsidiary of the Company, Jaws changed its name to "Cano Health, Inc.", and the Company began to provide primary care medical services.

25.     As a publicly traded company, Cano must adhere to strict financial reporting requirements by, among other things, timely filing periodic financial reports with the SEC and

complying with FASB guidelines, including ASC 606.  Particularly, under ASC 606, Cano must

analyze its revenue recognition with respect to, *inter alia*, certain Medicare risk adjustments.

### Materially False and Misleading Statements Issued During the Class Period

26.     The Class Period begins on May 18, 2020, the first trading day after Cano—then

still operating as Jaws—filed a prospectus on Form 424B4 with the SEC in connection with its

initial public offering.   That filing stated, *inter alia*:

> In evaluating a prospective target business, we expect to conduct an extensive due diligence review which may encompass, as applicable and among other things, meetings with incumbent management and employees, document reviews, interviews of customers and suppliers, inspection of facilities and a review of financial and other information about the target and its industry. We will also utilize our management team's operational and capital planning experience.
>
> * * *
>
> Prior to the completion of our initial business combination, we will have available to us the $1,900,000 of proceeds held outside [a] trust account, as well as certain funds from loans from our sponsor, its affiliates or members of our management team. We will use these funds to primarily identify and evaluate target businesses, perform business due diligence on prospective target businesses, travel to and from the offices, plants or similar locations of prospective target businesses or their representatives or owners, review corporate documents and material agreements of prospective target businesses, and structure, negotiate and complete a business combination.

27.     On August 13, 2020, the Company filed a quarterly report on Form 10-Q with the

SEC, reporting its financial and operating results for the quarter ended June 30, 2020 (the "2Q20

10-Q").  That filing stated, in relevant part:

> At June 30, 2020, we had cash of $2,140,755 held outside of [a] Trust Account. We intend to use the funds held outside the Trust Account primarily to identify and evaluate target businesses, perform business due diligence on prospective target businesses, travel to and from the offices, properties or similar locations of prospective target businesses or their representatives or owners, review corporate documents and material agreements of prospective target businesses, and structure, negotiate and complete a Business Combination.

28.     Appended as exhibits to the 2Q20 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2022 ("SOX"), wherein Defendants Dowling and Racich certified that "[t]he [2Q20 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "the information contained in the [2Q20 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company as of and for the period covered by the [2Q20 10-Q]."

29.     On November 10, 2020, the Company filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for the quarter ended September 30, 2020 (the "3Q20 10-Q"). That filing stated, in relevant part:

> At September 30, 2020, we had cash of $1,675,265 held outside of [a] Trust Account. We intend to use the funds held outside the Trust Account primarily to identify and evaluate target businesses, perform business due diligence on prospective target businesses, travel to and from the offices, properties or similar locations of prospective target businesses or their representatives or owners, review corporate documents and material agreements of prospective target businesses, and structure, negotiate and complete a Business Combination.

30.     Appended as an exhibit to the 3Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Dowling and Racich.

31.     On March 29, 2021, the Company filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 10-K"). That filing contained substantively the same statements as referenced in ¶ 26, *supra*, regarding the Company's due diligence efforts in evaluating prospective businesses to acquire.

32.     The 2020 10-K also stated, in relevant part:

> At December 31, 2020, we had cash of $1,037,124 held outside of [a] Trust Account. We intend to use the funds held outside the Trust Account primarily to identify and evaluate target businesses, perform business due diligence on prospective target businesses, travel to and from the offices, properties or similar

locations of prospective target businesses or their representatives or owners, review corporate documents and material agreements of prospective target businesses, and structure, negotiate and complete a business combination.

33.     Appended as an exhibit to 2020 10-K were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Dowling and Racich.

34.     On April 29, 2021, the Company filed an amendment to the 2020 10-K on Form 10-K/A (the "2020 10-K/A"), which contained substantively the same statements as referenced in ¶ 26, *supra*, regarding the Company's due diligence efforts in evaluating prospective businesses to acquire, and the same statements referenced in ¶ 31, *supra*, regarding the Company's use of funds to conduct that due diligence.

35.     Appended as an exhibit to 2020 10-K/A were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Dowling and Racich.

36.     On May 7, 2021, the Company filed a proxy statement and prospectus on Form 424B3 with the SEC in connection with the Business Combination (the "Proxy").  That filing stated that, "[i]n evaluating the transaction with PCIH, the Jaws Board consulted with our management and legal counsel as well as financial and other advisors, and the Jaws Board considered and evaluated several factors[,]" "[i]n particular . . . the results of the due diligence investigation conducted by Jaws' management."

37.     Specifically, with respect to Cano's due diligence efforts prior to approving the Business Combination, the Proxy assured investors, *inter alia*, that "[t]he Jaws Board . . . identified and considered . . . factors and risks weighing negatively against pursuing the Business Combination" including "[b]usiness risks of PCIH"; that "[i]n analyzing the Business Combination, the Jaws Board and Jaws' management conducted due diligence on PCIH and researched the industry in which PCIH operates and concluded that the Business Combination was

in the best interest of its shareholders"; that "[b]etween September 16, 2020 and September 25, 2020, [Defendant] Dowling engaged in discussions with representatives of PCIH regarding a potential business combination" and, "[d]uring this time, Jaws conducted further financial and business due diligence on PCIH"; that "[f]ollowing . . . communications [with Defendant Hernandez], Jaws began to conduct further due diligence on PCIH, the senior health care services industry, and comparable companies in the same sector as PCIH"; that "[b]etween October 12, 2020 and October 18, 2020, the parties further negotiated [a] letter of intent" and "continued due diligence activities and ongoing discussions regarding future value creation as well as began preparation of certain investor materials"; and that "[f]ollowing the execution of the Letter of Intent, Jaws and its advisors continued their due diligence review of PCIH, including business, legal, accounting, tax, IT systems and health care regulatory due diligence, as well as due diligence calls with PCIH management."

38.     The Proxy further represented that, "[b]efore reaching its decision, the Jaws Board discussed the material results of its management's due diligence activities, which included," among other things, "extensive meetings and calls with PCIH's management team regarding PCIH's operations and projections, including interviews of top executives"; "research on the healthcare industry, including historical and projected growth trends and calls with industry experts"; "the financial projections provided by PCIH"; "engagement of KPMG for financial, accounting, tax, IT and public-market readiness due diligence"; "engagement of Kirkland & Ellis for legal due diligence"; and "engagement of Epstein Becker Green for healthcare-specific and coding due diligence."

39.     Likewise, the Proxy assured investors that "[t]he Jaws Board considered the scope of the due diligence investigation conducted by Jaws' management and outside advisors and

evaluated the results thereof and information available to it related to PCIH," such as "multiple meetings and calls with the PCIH management team regarding its operations, financial metrics, historical performance and financial projections and the proposed transaction"; "review of materials related to PCIH made available by PCIH, including strategic plans, key metrics and performance indicators, benefit plans, insurance policies, litigation information, financial statements, compliance plans, risk mitigation materials and other financial and legal diligence"; "review of the due diligence reports of all third-party advisors, including KPMG, Kirkland & Ellis and Epstein Becker Green"; "interviews with PCIH's management as well as interviews of industry experts"; "analysis of industry competitors and publicly traded comparable companies"; and "research regarding the Medicare and Medicare Advantage markets."

40.     On May 24, 2021, the Company filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q").  That filing stated, in relevant part:

> At March 31, 2021, we had cash of $487,743 held outside of [a] Trust Account. We intend to use the funds held outside the Trust Account primarily to identify and evaluate target businesses, perform business due diligence on prospective target businesses, travel to and from the offices, properties or similar locations of prospective target businesses or their representatives or owners, review corporate documents and material agreements of prospective target businesses, and structure, negotiate and complete a Business Combination.

41.     Appended as an exhibit to 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Dowling and Racich.

42.     On August 12, 2021, the Company—now operating as Cano—filed a registration statement on Form S-1 with the SEC in connection with an offering of the Company's Class A common stock.  For the three months ended March 31, 2021, that filing reported capitated revenue of $267.051 million, direct patient expense of $34.287 million, accounts receivable, net of unpaid

11

service provider costs of $88.007 million, and accounts payable and accrued expenses of $39.87 million.

43.     On August 16, 2021, Cano filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "2Q21 10-Q").  For the three months ended June 30, 2021, that filing reported capitated revenue of $379.21 million, direct patient expense of $43.782 million, accounts receivable, net of unpaid service provider costs of $131.831 million, and accounts payable and accrued expenses of $46.465 million.

44.     Additionally, the 2Q21 10-Q represented, *inter alia*, that "[o]n January 1, 2019, the Company adopted ASC 606, applying the full retrospective method as of the earliest period presented[,]" while stating the following regarding how the Company recognized revenue under ASC 606:

> Under ASC 606, the Company recognizes revenue when a customer obtains control of the promised goods or services. The amount of revenue that is recorded reflects the consideration that the Company expects to receive in exchange for those goods or services. The Company applies the following five-step model in order to determine this amount: (i) identify the contract(s) with a customer; (ii) identify the performance obligations in the contract; (iii) determine the transaction price; (iv) allocate the transaction price to the performance obligations in the contract; and (v) recognize revenue when (or as) the Company satisfies a performance obligation. The Company only applies the five-step model to contracts when it is probable that the Company will collect the consideration it is entitled to in exchange for the goods or services the Company transfers to the customer (i.e. patient). At contract inception, once the contract is determined to be within the scope of ASC 606, management reviews the contract to determine which performance obligations must be satisfied and which of these performance obligations are distinct. The Company recognizes as revenue the amount of the transaction price that is allocated to the respective performance obligation when the performance obligation is satisfied.

45.     With specific respect to how Cano accounted for Medicare risk adjustments and recognized revenue under certain contractual arrangements, the 2Q21 10-Q stated, *inter alia*:

Capitated revenue is derived from fees for medical services provided by the Company under capitated arrangements with health maintenance organizations' ("HMOs") health plans. Capitated revenue consists of revenue earned through Medicare as well as through commercial and other non-Medicare governmental programs, such as Medicaid, which is captured as other capitated revenue. The Company is required to deliver primary care physician services to the enrolled member population and is responsible for medical expenses related to healthcare services required by that patient group, including services not provided by the Company. Since the Company controls the primary care physician services provided to enrolled members, the Company acts as a principal. The gross fees under these contracts are reported as revenue and the cost of provider care is included in third-party medical costs . . . .

Since contractual terms across these arrangements are similar, the Company groups them into one portfolio. The Company identifies a single performance obligation to stand-ready to provide healthcare services to enrolled members. Capitated revenues is recognized in the month in which the Company is obligated to provide medical care services. The transaction price for the services provided depends upon the pricing established by the Centers for Medicare & Medicaid ("CMS") and includes rates that are based on the cost of medical care within a local market and the average utilization of healthcare services by the members enrolled. The transaction price is variable since the rates are risk adjusted for projected health status (acuity) of members and demographic characteristics of the enrolled members. ***The risk adjustment to the transaction price is presented as the Medicare Risk Adjustment ("MRA") within accounts receivable on the accompanying condensed consolidated balance sheets.*** The fees are paid on an interim basis based on submitted enrolled member data for the previous year and are adjusted in subsequent periods after the final data is compiled by the CMS.

(Emphasis added.)

46.     Appended as an exhibit to 2Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Hernandez and Koppy.

47.     On November 11, 2021, Cano filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021 (the "3Q21 10-Q").  For the three months ended September 30, 2021, that filing reported capitated revenue of $501.78 million, direct patient expense of $57.708 million, accounts receivable, net of unpaid service provider costs of $223.644 million, and accounts payable and accrued expenses of $76.654 million.

48.     Additionally, the 3Q21 10-Q contained substantively the same statements as referenced in ¶¶ 44-45, *supra*, regarding Cano's adoption ASC 606 and how the Company accounted for Medicare risk adjustments and recognized revenue.

49.     Appended as an exhibit to 3Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Hernandez and Koppy.

50.     The statements referenced in ¶¶ 26-49 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Cano overstated its due diligence efforts and expertise with respect to acquiring target businesses; (ii) accordingly, Cano performed inadequate due diligence into whether the Company, post-Business Combination, could properly account for the timing of revenue recognition as prescribed by ASC 606, particularly with respect to Medicare risk adjustments; (iii) as a result, the Company misstated its capitated revenue, direct patient expense, accounts receivable, net of unpaid service provider costs, and accounts payable and accrued expenses; (iv) accordingly, the Company was at an increased risk of failing to timely file one or more of its periodic financial reports; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

51.     On February 28, 2022, Cano issued a press release announcing that it would delay its fourth quarter and full year 2021 earnings release, conference call, and 2022 guidance updates because of certain adjustments to account for revenue recognition under ASC 606, specifically, adjustments relating to how and when the Company accrues revenue related to Medicare risk adjustments, stating, in relevant part:

Cano . . . will delay its fourth quarter and full year 2021 earnings release, conference call and 2022 guidance updates, previously scheduled for Monday, February 28, 2022. The Company currently anticipates filing a Form 12b-25, Notification of Late Filing, no later than March 2, 2022, which will provide the Company with a 15 day calendar extension to file its Form 10-K. The Company expects to report fourth quarter and full year 2021 earnings, as well as increased full year 2022 guidance, on or before March 16, 2022, the expiration date of the extension period. Updated conference call details will be provided in a subsequent announcement.

Last week, in the course of finalizing its audit of the financial statements for the year ended December 31, 2021, the Company and its independent auditor . . . identified certain potential non-cash adjustments to account for revenue recognition under accounting standard ASC 606. The adjustments relate to how and when the Company accrues revenue related to Medicare Risk Adjustments. The adjustments are expected to impact the timing of revenue recognition, by delaying recognition of certain amounts related to the Medicare Risk Adjustment to subsequent periods, but do not impact the Company's cash from operations, its cash position, or estimated collectability of receivables.

52.     On this news, Cano's stock price fell $0.32 per share, or 6.17%, to close at $4.87 per share on February 28, 2022.

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Post-Class Period Developments**

54.     On March 14, 2022, Cano filed the 2021 10-K.  That filing stated, *inter alia*, that "[t]he correction in the timing of revenue recognition under ASC 606 resulted in adjustments to capitated revenue, direct patient expense, accounts receivable, net of unpaid service provider costs, and accounts payable and accrued expenses[,]" and that the Company therefore "restated its financial statements for each of the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021 in the [2021 10-K.]"  For example, the 2021 10-K reported that, as restated, capitated revenue decreased 2.13% for the three months ended March 31, 2021; 13.11% for the three months ended June 30, 2021; and 5.58% for the three months ended September 30, 2021.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Cano securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

56.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Cano securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Cano or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

58.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Cano;

- whether the Individual Defendants caused Cano to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Cano securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

61.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Cano securities are traded in an efficient market;

17

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Cano securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

62.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

63.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

64.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

66.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Cano securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Cano securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

67.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Cano securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Cano's finances and business prospects.

68.     By virtue of their positions at Cano, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

69.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Cano, the Individual Defendants had knowledge of the details of Cano's internal affairs.

70.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Cano.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Cano's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Cano securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Cano's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Cano securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

71.     During the Class Period, Cano securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Cano securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were

paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Cano securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Cano securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

72.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

73.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

74.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.     During the Class Period, the Individual Defendants participated in the operation and management of Cano, and conducted and participated, directly and indirectly, in the conduct of Cano's business affairs.  Because of their senior positions, they knew the adverse non-public information about Cano's misstatement of income and expenses and false financial statements.

76.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Cano's

financial condition and results of operations, and to correct promptly any public statements issued by Cano which had become materially false or misleading.

77.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Cano disseminated in the marketplace during the Class Period concerning Cano's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Cano to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Cano within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Cano securities.

78.     Each of the Individual Defendants, therefore, acted as a controlling person of Cano. By reason of their senior management positions and/or being directors of Cano, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Cano to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Cano and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

79.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Cano.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  March 18, 2022                              Respectfully submitted,

                                        MILLER SHAH LLP

                                        */s/ Jayne A. Goldstein*
                                        Jayne A. Goldstein
                                        1625 N. Commerce Pkwy, Suite 320
                                        Fort Lauderdale, Florida 33326
                                        Telephone: (954) 903-3170
                                        Facsimile: (866) 300-7367
                                        jagoldstein@millershah.com

                                        POMERANTZ LLP
                                        Jennifer Pafiti
                                        (*pro hac vice* application forthcoming)
                                        1100 Glendon Avenue, 15th Floor
                                        Los Angeles, California 90024
                                        Telephone: (310) 405-7190
                                        Facsimile: (212) 661-8665
                                        jpafiti@pomlaw.com

                                        *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.      I, **ALBERTO GONZALEZ**, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Cano Health, Inc. ("Cano" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Cano securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Cano securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Cano securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.


**Executed 03/10/22**
          **(Date)**

_____
          **(Signature)**


ALBERTO GONZALEZ
          **(Type or Print Name)**

**Cano Health, Inc. (CANO)**                                              **Gonzalez, Alberto**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 6/4/2021 | 192 | $15.1198 |
| Purchase | 6/4/2021 | 4 | $15.1100 |