# EXHIBIT A

**EFiled:  May 03 2023 04:57PM EDT**
**Transaction ID 69948536**
**Case No. 2023-0477-PAF**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| BARRY STERNLICHT, DR. LEWIS GOLD, ELLIOT COOPERSTONE | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MARLOW HERNANDEZ, ANGEL MORALES, JACQUELINE GUICHELAAR, ALAN MUNEY, KIM RIVERA, AND SOLOMON TRUJILLO | ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| CANO HEALTH, INC. | ) ) |
| Nominal Defendant. | ) ) |

C.A. No. 2023-477-PAF

PUBLIC VERSION FILED
MAY 3, 2023

## VERIFIED COMPLAINT TO REOPEN WINDOW FOR STOCKHOLDERS TO MAKE DIRECTOR PROPOSALS AND NOMINATIONS AT THE 2023 ANNUAL MEETING

Plaintiffs Barry Sternlicht, Dr. Lewis Gold, and Elliot Cooperstone ("Plaintiffs"), by and through their undersigned counsel, hereby allege upon personal knowledge as to their actions, and upon information and belief as to all other allegations herein, as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs are beneficial owners of shares representing more than 36% of the voting power of Cano Health, Inc. ("Cano" or the "Company") and former members of Cano's Board of Directors (the "Board").  Extraordinary and material

- 1 -

issues have transpired after the window to make nominations and proposals closed on February 15, 2023 (the "Nomination Deadline"), including rampant self-dealing, a thwarted investigation into related-party transactions by outside counsel, unfathomable directorial fealty to a compromised CEO who borrowed tens of millions of dollars from individuals who sold companies to Cano, the formation of a "Special Committee" that wrongfully excluded Plaintiffs and usurped Board power in violation of Delaware law, and Plaintiffs resigning as directors because Defendants—who make up the balance of the Board—effectively blocked any further investigation of the conflicted transactions, and broadly precluded Plaintiffs from performing their jobs as directors. Plaintiffs therefore bring this action to reopen the window under Cano's Bylaws (the "Bylaws") for stockholders to propose the removal of one or more directors pursuant to 8 *Del. C.* § 141(k) and to nominate director candidates at the 2023 annual meeting ("Annual Meeting"). The brazen nature of these governance failures may be the subject of further fiduciary duty litigation, but the issues in this action are limited to reopening the window to prevent the Company from abusing its advance notice bylaws to the detriment of its stockholders.

2. On March 7, 2023, outside counsel at Weil, Gotshal & Manges LLP ("Weil"), which the Board retained to investigate related-party transactions and pledging activities of Cano's CEO, Dr. Marlow Hernandez ("Dr. Hernandez"),

- 2 -

presented their interim conclusions to the Board.  Weil reported that it found Dr. Hernandez's borrowing and pledging activities to be "egregious violations of the Company's code of conduct," and that his activities required remediation. Defendants, however, refused to recommend any meaningful disciplinary action against Dr. Hernandez.

3. The Board immediately took steps to thwart Plaintiffs efforts to bring full transparency and accountability at the Board level and to retaliate against them for their insistence on pursuing the investigation. While Weil's review was underway, the Board called a special meeting for March 17, 2023, in which Defendants formed a sham Special Committee comprised of all directors *other* than Plaintiffs, with Dr. Hernandez permitted to be an "observer" on the Special Committee.  The purported Special Committee was granted an enormously wide scope of authority, which had the effect of unlawfully precluding Plaintiffs from fulfilling their fiduciary duties as directors and creating a "shadow board."

4. On March 30, 2023, the Board met again, and Weil provided another interim report regarding troubling evidence that Dr. Hernandez's father, Jose Hernandez, through a number of companies, had likely been directly or indirectly paid by Cano without proper vetting of conflicts of interest or making related-party disclosures.  Weil stated that further additional investigation would be required.

5. Although the Board had learned of a number of troubling transactions, including facts which showed that Dr. Hernandez had lied about the Company's dealings with his father, Defendants continued to refuse to hold Dr. Hernandez accountable. Instead, Defendants announced that the "Special Committee" had decided that the Company was "moving on," and that the Board would be retaining Dr. Hernandez as CEO.

6. Plaintiffs resigned during or immediately following the meeting. Plaintiffs had no choice but to resign because, among other reasons, the Board refused to remove Dr. Hernandez and because the Board's conduct prevented them from exercising their fiduciary obligations.

7. As required under the federal securities laws, each Plaintiff filed a Schedule 13D disclosing their concerns regarding Dr. Hernandez's leadership and the other Defendants' firm alignment with him.

8. The material facts that caused Plaintiffs' resignations have been exacerbated by new revelations unearthed after their resignations.

9. For example, on April 6, 2023, in the wake of Plaintiff's resignations, Dr. Hernandez filed a Schedule 13-D publicly disclosing—*for the first time*—(i) a **$30 million** loan made by the Company's Chief Operating Officer, Robert Camerlinck to Dr. Hernandez and his affiliated companies, over a year before, on February 28, 2022; (ii) that the promissory note (the "Note") had been guaranteed

- 4 -

by two current and one former Cano officers; and (iii) that Dr. Hernandez and his guarantors had repaid the $30 million loan on April 5, 2023, through another related-party transaction: the transfer of 20,000,000 shares of stock to Mr. Camerlinck, about 3.79% of the voting power of the Company (the "Repayment Agreement").

10.     Then, on April 17, 2023, the Company announced that Defendant Solomon "Sol" Trujillo had succeeded Dr. Hernandez as Chairman of the Board, with Dr. Hernandez remaining a director and CEO.  The Company touted Mr. Trujillo's appointment as strengthening its corporate governance.  However, Plaintiffs had discovered just one week earlier that Mr. Trujillo—who served as Lead Independent Director of the Company and was required to have "no material relationships with the Company"—is also compromised.  Cano, a company in dire financial shape, recently spent hundreds of thousands of dollars sponsoring a 2022 conference put on by Mr. Trujillo's company, L'Attitude, LLC.  This transaction has never been disclosed.

11.     Under Cano's bylaws, the advance notice window for the Annual Meeting to make stockholder proposals and nominate candidates closed on February 15, 2023.  Cano has provisionally set June 28, 2023, as the Annual Meeting date. Cano has a classified board, currently consisting of six members.  Two Class II directors, Defendants Alan Muney and Kim Rivera, will be up for election at the 2023 Annual Meeting.

12.     The aforementioned material developments all transpired or were discovered *after* the February 15, 2023 deadline, and have dramatically changed the Company's future prospects and altered the total mix of information available to stockholders.  These developments have also raised significant questions regarding the suitability of the Defendants to serve as fiduciaries.

13.     On April 14, 2023, Plaintiffs delivered a letter to Cano's outside counsel at Weil, demanding that Cano's Board waive the advance notice bylaw, and reopen the window to make director proposals and nominations.  Cano's Board has not responded.

14.     Advance notice bylaws have utility because they create certainty and predictability for the orderly conduct of stockholder meetings.  However, where the Company's own actions and recent public disclosures raise serious and fundamental questions about boardroom misconduct, self-dealing, and whether the remaining directors are suitable to serve as fiduciaries, the Company (through those same directors) cannot invoke such bylaws to thwart the will of stockholders and interfere with the stockholder franchise. These public disclosures, moreover, are just the tip of the iceberg, with Defendants' having curtailed Weil's internal investigation, and then suppressing disclosure of Weil's factual findings.

15.     Having shown a greater allegiance to Dr. Hernandez than to Cano's stockholders, Defendants have left Plaintiffs with no recourse except to seek the

removal of Dr. Hernandez, Mr. Trujillo, and potentially other self-dealing partners on the Board pursuant to 8 *Del. C.* § 141(k).  In light of Defendants' malfeasance and breaches of fiduciary duties, equity requires that Cano's stockholders be provided an opportunity to determine whether to elect new directors and remove Dr. Hernandez and others for cause.  The advance notice bylaw must be waived.

16.    Plaintiffs therefore petition this Court to issue an order permanently enjoining Defendants from enforcing the advance notice bylaw for the Annual Meeting or, in the alternative, to set a new deadline in advance of the upcoming Annual Meeting by which stockholders may comply with the notice requirements. Should the Court grant the relief sought, Plaintiffs will submit proposals aimed at correcting the course of the Company, including to nominate two director candidates on Cano's classified Board of Directors, and to remove Dr. Hernandez, Mr. Trujillo, and potentially others for cause.

### THE PARTIES

17.    Plaintiff Barry Sternlicht is a significant stockholder and former director of the Company.  While a director, Mr. Sternlicht was a member of Cano's Nominating and Corporate Governance Committee (the "NCGC").  Mr. Sternlicht was the Chairman of JAWS Acquisition Corp. ("JAWS"), the SPAC that was Cano's predecessor company.  He is the beneficial owner of 25,480,624 shares of Cano's Class A common stock, through which he controls approximately 4.8% of the

Company's voting power.[1]  Mr. Sternlicht founded Starwood Capital Group, a private alternative investment fund, and serves as its Chairman and Chief Executive Officer.  He also serves as Chairman and CEO of Starwood Property Trust, a leading diversified finance company.  He is also a member of the board of the Estée Lauder Companies and has served as a director of Tri Pointe Homes, Inc., Restoration Hardware Holdings, Inc., A.S. Roma, and Invitation Homes, Inc., among other entities.

18.    Plaintiff Elliot Cooperstone is a significant stockholder and former director of the Company.  He is the record owner of 14,825 shares of Cano's Class A common stock.  Mr. Cooperstone is also the founder and Managing Partner of InTandem Capital Partners, LLC ("ITC"), a private equity firm.  Beginning in 2016, ITC invested in Cano Health through its affiliate, ITC Rumba LLC ("ITC Rumba"), prior to the business combination with JAWS.  ITC Rumba is the record owner of 159,780,988 shares of Cano Class B common stock.  Together with ITC, Mr. Cooperstone controls approximately 30.3% of the Company's voting power.

19.    Plaintiff Lewis Gold is a significant stockholder and former director of the Company.  Dr. Gold served as a member of Cano's Audit Committee and its

---

[1] Under Cano's Certificate of Incorporation, holders of Cano's Class A and Class B common stock are each entitled to one vote per share.

Compensation Committee.   Dr. Gold owns 14,825 shares of Cano's Class A common stock and, individually and through entities he controls, is beneficial owner of 1,706,760 shares of Cano's Class A common stock and 1,391,935 shares of Cano's Class B common stock, representing 1% of Cano's voting power.

20.   Defendant Marlow Hernandez is the founder, director, and Chief Executive Officer of Cano.  He has been a director of Cano since 2021, and his term expires in 2024.  Dr. Hernandez served as Cano's Chairman between June 2021 and April 17, 2023.  According to the Schedule 13D/A filed on April 6, 2023, Dr. Hernandez beneficially owns 25,108,418 shares of Cano, or 4.75% of the aggregate Class A and Class B common stock outstanding, which includes the option to repurchase the 8,536,936 Class B Shares transferred to Mr. Camerlinck pursuant to the Repayment Agreement.

21.   Defendant Angel Morales has been a director of Cano since 2021 and his term expires in 2024.  Mr. Morales serves as Chair of Cano's Audit Committee. He currently beneficially owns 62,902 shares of Class A common stock of Cano. On information and belief, these Class A shares consist entirely of director compensation.  He is also a beneficial owner, through an entity named Morales Borrower Holdings LLC, of 6,968,507 shares of Class B common stock. In total Mr. Morales owns less than 2% of Cano's total voting power.   According to the Company's public filings, all of these shares have been pledged to a "certain lender."

- 9 -

22.     Defendant Jacqueline Guichelaar has been a director of Cano since 2021 and her term expires in 2024.  Ms. Guichelaar is a member of Cano's Audit Committee.  She beneficially owns 62,902 Class A common stock of Cano, which represents less than 1% of Cano's voting power. On information and belief, these Class A shares consist entirely of director compensation.

23.     Defendant Alan Muney has been a director of Cano since 2021 and his term expires in 2023.  He is the Chair of Cano's Compensation Committee and is a member of the Audit Committee.  He beneficially owns 62,902 Class A common stock of Cano, which represents less than 1% of Cano's voting power. On information and belief, these Class A shares consist entirely of director compensation.

24.     Defendant Kim Rivera has been a director of Cano since 2021 and her term expires in 2023.  She is the Chair of Cano's NCGC and a member of its Audit Committee.  She beneficially owns 62,902 Class A common stock of Cano, which represents less than 1% of Cano's voting power.  On information and belief, these Class A shares consist entirely of director compensation.

25.     Defendant Solomon Trujillo is a director of Cano, and is a member of Cano's NCGC.  On April 17. 2023, he was elevated to position of Chairman.  Before he was elevated to Chairman, Mr. Trujillo was Cano's "Lead Independent Director," which required that he have "no material relationship with the Company" and "not

[be] significantly aligned with any particular shareholder group(s) such that there is even the appearance that the Lead Director may not represent all shareholders."[2]  Mr. Trujillo beneficially owns 166,663 Class A Common stock and 13,680,443 shares of Class B common stock of Cano, which represents less than 3% of Cano's voting power.

26.    Nominal Defendant Cano is a Delaware corporation with its principal place of business in Miami, Florida.  On June 3, 2021, Cano became a public company through a combination with JAWS.  Cano stock trades on the NYSE under ticker symbol CANO.

27.    Non-party Robert Camerlinck is Cano's Chief Operating Officer.

28.    Non-party Richard Aguilar is Cano's Chief Clinical Officer.

29.    Non-party Rick Sanchez is Cano's former Chief Marketing Officer.

## SUBSTANTIVE ALLEGATIONS

### Cano Health

30.    Cano is a value-based primary care provider and population health company that provides health care services through over 170 owned medical centers and affiliate relationships with other health care providers.  Cano predominantly

---

[2] *See* Corporate Governance Guidelines, Section L, available at https://s27.q4cdn.com/826681067/files/doc_downloads/Corporate_Governance_ Guidelines.pdf.

enters into capitated contracts with the nation's largest health plans to provide holistic, comprehensive healthcare. Cano receives the majority of its revenue from Medicare, through Medicare Advantage plans.

31. When Cano agreed to the business combination with JAWS, it had an enterprise value of $4.4 billion, with additional funding through a fully committed $800 million PIPE. Demonstrating its belief in the Company, ITC remained Cano's largest stockholder following the business combination.

32. Cano's shares have declined by a shocking 92.5% since the business combination closed in 2021, a staggering underperformance relative to the S&P 500 Index, S&P Healthcare Sector Index, Russell 2000 and practically every possible peer. Since then, Cano has depleted all of the roughly $535 million of capital it had on its balance sheet and most of the approximately $1 billion of debt capital raised since then.

33. As of the new year, Plaintiffs knew that Cano needed to make significant changes to get the Company's performance back on track. As some of the Company's largest stockholders, Plaintiffs' interests were and are aligned with other stockholders, in that they seek to enhance and increase stockholder value over the long term.

**<u>Cano's Advance Notice Bylaw</u>**

34.     Section 2(a)(b) of Cano's Bylaws require timely notice of nominations or other business to be brought no later than 90 days and no earlier than 120 days before an annual meeting:

> For nominations or other business to be properly brought before an Annual Meeting by a stockholder pursuant to clause (ii) of Article I, Section 2(a)(1) of these By-laws, the business must be (i) specified in the notice of the meeting (or any supplement thereto) given by or at the direction of the Board of Directors, (ii) brought before the meeting by the person presiding over the meeting or (iii) otherwise properly requested to be brought before the meeting by a stockholder of the Corporation in accordance with this Section 2(a) of Article I of the By-laws. For business to be properly requested to be brought before an Annual Meeting by a stockholder, the stockholder must (i) be a stockholder of the Corporation of record at the time of the giving of the notice for such Annual Meeting, (ii) be entitled to vote at such Annual Meeting, (iii) have given Timely Notice (as defined below) thereof in writing to the Secretary of the Corporation, (iv) have provided any updates or supplements to such notice at the times and in the forms required by these By-laws and (v) together with the beneficial owner(s), if any, on whose behalf the nomination or business proposal is made, have acted in accordance with the representations set forth in the Solicitation Statement (as defined below) required by these By-laws.

> To be timely, a stockholder's written notice shall be received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the ninetieth (90th) day nor earlier than the close of business on the one hundred twentieth (120th) day prior to the one-year anniversary of the preceding year's Annual Meeting[.]

35.     Section 2(a)(1) of Cano's Bylaws state that stockholders "must comply with the notice and other procedures set forth" in the Bylaws "to bring such nominations or business properly before an annual meeting," and that the Bylaws set

- 13 -

forth the "exclusive means for a stockholder to bring nominations or business properly before an Annual Meeting."

36. Cano's annual stockholder meeting for 2022 took place on May 16, 2022. Accordingly, written notice of nominations or business to be brought at the Company's 2023 Annual Meeting was due no later than ninety days prior to May 16, 2022, on or before February 15, 2023.

### Cano's Policies Concerning Related-Party Transactions and Conflicts of Interest

37. Cano has in place certain policies designed to identify and address potential conflicts of interest that may impact the performance and decisions of its officers and directors. These policies largely require the officer or director to self-report, so that the conflict of interest can be reviewed, as appropriate, by the Board's Audit Committee or NCGC.

38. These policies include an anti-pledging policy, a policy concerning related-party transactions and, more broadly, conflicts of interest.

39. Cano has in place a broad policy governing conflicts of interest, which is set forth in its Code of Business Conduct and Ethics. The policy defines a conflict of interest as "any personal or business activity or relationship, whether for-profit, volunteer or charitable, that could be viewed or interpreted by the Company as actually or potentially inconsistent with or opposed to the Company's best interests,

or that creates or gives the appearance of impropriety or divided loyalty as determined by the Company."

40.     The policy places the burden on officers and directors to self-report potential and actual conflicts of interest.  For Dr. Hernandez and other executive officers, the proper line of reporting was to the Chief Compliance Officer and Corporate Secretary, who are in turn to notify the Chair of the NCGC for review by the full committee.

41.     According to Cano's 2022 proxy filed with the SEC on May 6, 2022, the anti-pledging policy is as follows:

> We also have an anti-pledging policy whereby **no executive officer or director may pledge the Company's securities as collateral for a loan (or modify an existing pledge) unless the pledge has been approved by the Audit Committee and the amount borrowed by such executive officer or director does not exceed more than 25% of the total value of such person's holdings of the Company's securities**. As described earlier in this CD&A, we have a pay-for-performance compensation philosophy under which compensation is predominantly earned and delivered in the form of equity. Given that our executive compensation program is heavily weighted towards equity and as a newly public company, we believe permitting **a limited amount of pledging is necessary and appropriate because it mitigates the need for executives to sell Company shares** to address unanticipated or urgent personal and family liquidity needs. As part of its risk oversight function, the Audit Committee will regularly review any share pledges to assess whether such pledging poses an undue risk to the Company.

(emphasis added.)

42.    Cano's board has also adopted a Related Person Transaction Policy that requires review and oversight by the Audit Committee of related person transactions involving its officers and directors.  Such transactions must be elevated to the Audit Committee, with the requirement that all material information be disclosed:

> The Company's Audit Committee shall review the material facts of all related person transactions. The Company shall provide the Audit Committee with all material information regarding the related person transaction, the interest of the related person and any potential disclosure obligations of the Company in connection with such related person transaction. **To identify related person transactions in advance, the Company will rely on information supplied by the Company's executive officers, directors and certain significant stockholders**. In considering related person transactions, the Company's Audit Committee will take into account among other factors that it deems appropriate, whether the related person transaction is on terms no less favorable to the Company than terms generally available in a transaction with an unaffiliated third-party under the same or similar circumstances and the extent of the related person's interest in the related person transaction.

(emphasis added.)

43.    The Company also requires members of the Board of Directors and its Officers to fill out detailed questionnaires in connection with the proxy statement for annual meetings and the Form 10-K Annual Report. The Directors and Officers questionnaires contain multiple questions that require disclosure on related party

- 16 -

transactions and loans, and required broad disclosure on any material relationships and any payment and compensation received.

**Plaintiffs Learn Material Information Regarding Dr. Hernandez's Related-Party Transactions after the Nomination Window Closes**

44.     In January 2023, as the Company was preparing its annual report on Form 10-K and its audit, Cano's Chief Financial Officer ("CFO") and Chief Accounting Officer ("CAO") notified members of the Board that they were concerned about whether related party issues and conflicts of interest involving a loan to Dr. Hernandez and his pledging of stock needed to be reported.

45.     At the time, the primary question was whether the Company had met all applicable disclosure requirements.   The CFO and CAO were particularly concerned that they had discovered that COO Camerlinck had made a loan to Dr. Hernandez, which had never been disclosed.

46.     Cano's CFO and CAO expressed their unwillingness to sign the Form 10-K, which was due to be filed on March 1, 2023, until they received a legal opinion on the topic.

47.     In January or early February 2023, the Company retained Weil, on behalf of the Board to investigate certain of Hernandez's related-party transactions, with a focus on certain borrowing and pledging activities.

48.     Of note, between September 2021 and December 2022, Dr. Hernandez had made a series of filings that contained the following disclosures regarding related-party transactions:

- Dr. Hernandez had disclosed in his initial Schedule 13D filed with the SEC on September 27, 2021, that his wholly-owned entity, Hernandez Borrower Holdings, LLC ("HBH"), had pledged all 22,034,622 shares of its Class B common stock as security for a margin loan agreement.

- In a prospectus supplement filed on October 4, 2021, the Company also disclosed that HBH and corporate affiliates of key Cano executives, Dr. Richard Aguilar, the Company's Chief Clinical Officer, Jason Conger, the Chief Growth Officer, and Rick Sanchez, the former Chief Marketing Officer, had each pledged all of their shares "to a certain lender in connection with a financing arrangement," (note that there was no suggestion that these pledges were related to each other).

- On May 31, 2022, Dr. Hernandez filed Amendment No. 1 to the 13D, in which he disclosed that HBH had "pledged all 22,034,622 shares of Class A and Class B common Stock it holds in connection with a financing arrangement," and "had borrowings totaling approximately $2.4 million in aggregate principal amount under the financing arrangement."

- On December 16, 2022, Dr. Hernandez filed Amendment No. 2 to his Schedule 13D, which stated that "the Margin Loan Agreement, dated as of August 25, 2021. . . was terminated on December 12, 2022," and no longer included the language about HBH's pledged shares.  This implied that his stock was no longer pledged.

49.     Following its preliminary investigation, Weil provided an oral report to the Board of its findings at a March 7, 2023, Board meeting.

50.     Weil reported that its investigation revealed that Dr. Hernandez's May 31, 2022 and December 16, 2022 Schedule 13D/As were, at a minimum, misleading,

and that Dr. Hernandez had engaged in multiple other troubling undisclosed loan transactions (that have never been disclosed).

51.     With respect to the loan made by Mr. Camerlinck, the Board learned that, although the margin loan agreement referenced in Dr. Hernandez's September 27, 2021, 13D had apparently terminated, in February 2022, Dr. Hernandez and his affiliated companies had received a $30 million loan from Robert Camerlinck, Cano's current Chief Operating Officer.  The loan was secured by a Promissory Note, secured by his personal assets, to Mr. Camerlinck, as had the corporate affiliates of Dr. Aguilar, Mr. Conger and Mr. Sanchez, who served as Dr. Hernandez's guarantors.

52.     Weil's report at the March 7 meeting was the first time Plaintiffs learned that the loan was for $30 million dollars, and that Dr. Hernandez and other Company officers had pledged their personal assets which included millions of shares to Mr. Camerlinck.

53.     This information was deeply disturbing on many levels.

54.     First, Mr. Camerlinck was not COO in February 2022, when he loaned $30 million dollars to Dr. Hernandez.  Rather, Mr. Camerlinck was president of a portfolio company Cano had purchased.  Mr. Camerlinck was promoted to COO a few months after making this sizeable loan to Dr. Hernandez.  In his new role, Mr. Camerlinck reports directly to Dr. Hernandez.

- 19 -

55.     Second, Dr. Hernandez's $30 million indebtedness to Mr. Camerlinck was not disclosed in the Company's Form 8-K announcing Mr. Camerlinck's promotion to COO.

56.     Third, Mr. Camerlinck has had extensive business dealings with the Company and is affiliated with a company critical to Cano's business operations. Mr. Camerlinck owns 20% of MedCloud Depot, LLC ("MedCloud"), a Florida-based software development firm that specializes in health information technology and data warehousing.  Cano has a non-exclusive licensing agreement with MedCloud, whose technology is mission critical to the Company's conduct of its business.  Because MedCloud is critical to Cano's business operations, Mr. Camerlinck's ownership interest in MedCloud positions him to be able to exert leverage over the Company, should he choose to do so.

57.     The Promissory Note violated the Company's policies and code of conduct, and it was neither disclosed to nor approved by Plaintiffs, including Dr. Lewis Gold, a former member of Cano's Audit Committee.  Dr. Hernandez also likely violated federal securities laws by failing to promptly disclose the Promissory Note in February 2022, and filing a misleading 13D/A in December 2022 implying that he had paid off his debt.

58.     At the March 7, 2023 Board meeting, Plaintiffs also learned of three other troubling, undisclosed loans.  For example, Weil reported that Dr. Hernandez

- 20 -

had borrowed approximately $4 million and $4.7 million from individuals whose families had sold businesses to Cano, and that these loans were in or near default. To Plaintiffs' knowledge, these loans were not vetted by the Audit Committee, on which Dr. Gold sat, nor the NCGC, on which Mr. Sternlicht sat.

59.    At the March 7, 2023 meeting, Weil stated that it found Dr. Hernandez' borrowing and pledging activities to be "egregious violations of the Company's code of conduct" and that Dr. Hernandez's borrowing and pledging activities required remediation.

60.    Despite the egregious nature of these violations, the Company's Form 10-K was filed on March 15, 2023 without disclosing them based on guidance that was provided by Weil.

61.     Despite Weil's finding that Dr. Hernandez had engaged in egregious misconduct, Defendants Morales, Guichelaar, Muney, Rivera and Trujillo decided that Dr. Hernandez should continue as CEO, and stated that they would not consider recommending any meaningful disciplinary action against Dr. Hernandez.

### Defendants Retaliate Against Plaintiffs and Form a Sham Special Committee

62.    Almost immediately after Weil's March 7 oral report to the Board, it became clear that the Defendants were purposefully excluding Plaintiffs from material discussions and decision-making on critical topics, and denying Plaintiffs

- 21 -

access to the full information, discussion and debate to which they were entitled as directors.

63.     Specifically, after the March 7, 2023, meeting, at Dr. Gold's insistence, the Board directed Weil to investigate related party transactions at Cano that were discovered during the course of the loan investigation, starting with those involving Dr. Hernandez father, Jose Hernandez.  But the Defendants then immediately took actions to retaliate against all three Plaintiffs for demanding that the Board perform further investigation and to insulate Dr. Hernandez from accountability.

64.     While Weil's review was underway, the Board called a video meeting on March 17, 2023.  Over Mr. Cooperstone's and Dr. Gold's objections, Defendants Morales, Guichelaar, Muney, Rivera and Trujillo announced that they had formed a Special Committee.  Defendants contended that forming a Special Committee was necessary in anticipation of a potential resignation from the Board by Barry Sternlicht.  Mr. Sternlicht had previously indicated that he was considering resignation because of the Company's disastrous performance under Dr. Hernandez's leadership and the Board's refusal to call Dr. Hernandez to account.  In other words, the purpose of this Special Committee was *explicitly* to sideline a director favoring oversight.

65.     This was an obvious pretext.  The Special Committee did not just exclude Mr. Sternlicht.  The Special Committee also excluded Dr. Gold and Mr.

- 22 -

Cooperstone, such that the "Special Committee" consisted of all Board members *other* than Plaintiffs.

66.    Further, according to the Special Committee's Charter, which upon information and belief had been prepared secretly by Defendants in advance of the March 17 meeting, contained a mandate that stretched broadly into corporate governance and operational matters not in any way relevant to Sternlicht's potential resignation:

> The Committee is responsible for (i) ensuring the Company has the proper readiness planning in place to effectively consider, explore, review, analyze and evaluate the strategic positioning of the Company, including, without limitation, how the current composition of the Board may positively or negatively affect the Company's positioning; (ii) investigating, reviewing, and evaluating the relationships among the Board and employees and officers of the Company and how those relationships have fostered or hindered the Company's ability to increase and sustain shareholder value; (iii) investigating, reviewing, and evaluating any potential conflicts of interest currently possessed by any members of the Board ("Conflict Matters"), including, without limitation, analysis of the materiality of any such conflicts and how any such conflicts may be directly or indirectly adversely affecting the operational and/or financial performance of the Company, and (iv) taking other such actions as are advisable and in the best interests of the Company and its stockholder in connection with the foregoing (i)-(iv), the "Purpose of the Committee").

67.   Defendants thereafter used the Special Committee as a means of excluding each of the Plaintiffs from deliberations and decisions that should have been the province of the full Board.

68.   And incredibly, even though the Special Committee's mandate purported to include "investigating, reviewing, and evaluating any potential conflicts of interest," the Special Committee permitted Dr. Hernandez to serve as an "observer."

69.   The Special Committee's actions reflect that Defendants Morales, Guichelaar, Muney, Rivera and Trujillo lack independence from Dr. Hernandez, and are effectively controlled and dominated by him.   They improperly insulated governance decisions from Plaintiffs, invited the subject of their investigation to observe their deliberations, made the determination to retain Dr. Hernandez fully knowing that an investigation by outside counsel remained incomplete, and failed to meaningfully discipline Dr. Hernandez in any way after findings of "egregious" behavior.

**Defendants Cut Short Any Meaningful Investigation
of Related Party Transactions, Making
<u>Plaintiffs' Continued Board Service Untenable</u>**

70.   On March 30, 2023, after approximately one week of investigation, Weil delivered to the Board an interim oral report concerning transactions between Cano and Dr. Hernandez's father, Jose Hernandez.   Although the Company had

- 24 -

disclosed in the Form 10-K filed on March 15, 2023 that Jose Hernandez's company had been paid over $23 million in the past three fiscal years for leasehold improvements and repairs and maintenance, the Board received information that Jose Hernandez was involved in other, undisclosed marketing and media activities. Weil further reported that they had discovered facts indicating that there were yet other related-party transactions that required further investigation.

71.     Plaintiffs were deeply disturbed by Weil's conclusions. Dr. Hernandez had previously denied that his father was involved in any paid marketing and media activities, and the facts uncovered by Weil demonstrated that Dr. Hernandez had misled Plaintiffs. In Plaintiffs' view, immediate action was appropriate in response to the results of the interim report.

72.     But, yet again, Defendants refused to discipline Dr. Hernandez, and instead determined to retain him. Incredibly, Dr. Alan Muney, who chaired the Special Committee, announced immediately after the Weil report concluded and with no discussion that the Special Committee had made the decision that they had heard enough and that Dr. Hernandez would remain CEO, and that they were "moving on."

73.     Dr. Gold resigned during the Board meeting; Mr. Sternlicht and Mr. Cooperstone resigned immediately following the meeting. Plaintiffs resigned as directors because of Defendants' brazen fealty to Dr. Hernandez in the face of his

- 25 -

egregious malfeasance, and because Defendants' conduct prevented Plaintiffs from exercising their fiduciary obligations.

74.     Plaintiffs do not know whether Defendants have permitted Weil's investigation to continue, or whether they have impeded or redirected Weil's investigation.  No public disclosures have been made on that issue.

75.     Upon their resignations, Plaintiffs formed a group pursuant to which they agreed to act together to pursue changes at Cano to enhance stockholder value. Each Plaintiff filed a Schedule 13D to which they attached their respective letters of resignation from the Board as required by Section 13(d) of the Securities Act of 1934 and the rules thereunder.

76.     Cano immediately tried to silence Plaintiffs, sending a letter that threatened them with legal action for allegedly disclosing confidential company information and allegedly privileged information learned during the Weil investigation.

### Additional Related and Conflicted Transactions Come to Light after Plaintiffs' Resignations

77.     Since Plaintiffs' resignations (and after the February 15, 2023 advance notice window closed), additional extraordinary facts regarding Dr. Hernandez's conflicted transactions have been revealed.  On or around April 6, 2023, Hernandez publicly disclosed for the first time his *$30 million* loan from COO Camerlinck and

that Chief Clinical Officer Aguilar, Chief Growth Officer Conger, and former Chief Marketing Officer Sanchez had guaranteed the loan.  The April 6 disclosure further disclosed that on April 5, 2023, the loan had purportedly been repaid by Dr. Hernandez and the guarantors through the transfer of 20,000,000 shares of Company stock from them to Mr. Camerlinck pursuant to the Repayment Agreement.  The Repayment Agreement also conferred upon Dr. Hernandez and the guarantors the option to re-acquire transferred shares at $3.00 per share.

78.    While Plaintiffs had learned some of the details of the related-party loan at the March 7 Board meeting (well after the advance notice window had closed), the Repayment Agreement and transfer of shares was yet another new material transaction that could not have been known at the time the nomination window was open.

79.    Then, on April 17, 2023, Cano announced that Dr. Hernandez would no longer serve as Chairman of Cano's Board and named Defendant Trujillo as the Chairman.  This was done to purportedly to "enhance[e] the Company's governance structure and Board Oversight." But Mr. Trujillo, like the other Defendants, had refused to hold Dr. Hernandez accountable after the March 7 and March 30 Board meetings and, as Plaintiffs have recently discovered, has also engaged in self-interested transactions with the Company.

80.     Of particular concern, Cano, a company in dire financial shape, recently spent hundreds of thousands of dollars sponsoring a 2022 conference put on by L'Attitude, LLC, where Mr. Trujillo is a Founder and Managing Partner. These sponsorship expenditures—which appear to provide limited relevant business benefits to Cano—came at a time when the Company was hemorrhaging cash and planning to terminate hundreds of employees.  None of Cano's sponsorship payments to Mr. Trujillo's organization L'Attitude have been disclosed in the Company's filings as a related-party transaction, and to Plaintiffs' knowledge, the sponsorship was not vetted by the Audit Committee, the NCGC or full Board.

81.     Mr. Trujillo is involved in other transactions that should have been vetted for conflicts of interest because they raise questions regarding his independence.  For example, Encantos, an education technology company chaired by Mr. Trujillo, received funding in 2022 from Morales Capital, a firm owned by Cano Board member and Audit Committee Chair Angel Morales.  Mr. Trujillo is also a business partner of Dr. Hernandez's guarantor, Rick Sanchez, in the company Agua Media.

82.     The foregoing revelations regarding Dr. Hernandez's conflicted transactions and the Defendants' refusal to properly investigate them arrive at a critical point for the Company.  Cano's financial status continues to deteriorate, and Cano's performance under Hernandez's leadership has been dismal.  As of March

30, 2023, Cano's total return to stockholders was -83% over the prior 12 months and -92.5% since going public in 2021.  As of yesterday, Cano's stock price closed at $1.12 per share.

83.    Under Cano's Bylaws, Cano's stockholders cannot submit any proposals to be considered at Cano's annual stockholder meeting, because the advance notice window closed on or around February 15, 2023.  Thus, as it stands, Cano's stockholders may miss their only meaningful opportunity to correct the disastrous course that Cano's management has set.

**The Board Wrongfully Refuses to Reopen the Window**

84.    On April 14, 2023, Plaintiffs sent a letter to Company counsel advising that the recent disclosures by Dr. Hernandez and the Company and the significant changes at the Company that have occurred following the expiration of the nomination window constitute material changes that required the Board to immediately re-open the window for nominations and proposals.  Plaintiffs noted that the Board's fiduciary duties mandate that it act immediately to re-open the window, and demanded that the Board issue a press release reopening the nomination and proposal window for 30 days following the press release.

85.    Plaintiffs also stated in their April 14th letter that upon the reopening of the window, they are prepared to immediately submit a notice including a

proposal for the removal of one or more directors for cause pursuant to 8 *Del. C.* § 141(k) and a nomination of directors at the Annual Meeting.

86.     To date, the Company has failed to respond to Plaintiffs' request.

87.     Defendants' refusal to waive or adjust the timing of the Advance Notice Bylaw is, under the circumstances, a breach of their fiduciary duties to the Company's stockholders.  Their inequitable conduct violates the fundamental right of Cano's stockholders to exercise their franchise.

88.     Plaintiffs therefore seek declaratory and injunctive relief preventing Defendants from enforcing the Nomination Deadline in connection with the 2023 Annual Meeting.

**COUNT I:**
**(Breach of Fiduciary Duty)**

89.     Plaintiffs repeat, reallege and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     Defendants owe Cano's stockholders, including Plaintiffs, the fiduciary duties of loyalty and good faith.

91.     Defendants created or revealed material changes in circumstances after the expiration of the Nomination Deadline.

92.     Under the circumstances, Defendants had a fiduciary duty to extend the Nomination Deadline to afford stockholders a fair opportunity to nominate directors

- 30 -

and bring other proposals forth, including the removal of one or more directors for cause pursuant to 8 *Del. C.* § 141(k) at the Annual Meeting.

93.    Defendants breached that fiduciary duty by refusing to waive or extend the Nomination Deadline to permit Plaintiffs and other stockholders a fair opportunity to vote on Plaintiffs' Section 141(k) proposal and to nominate candidates for election at the Annual Meeting.

94.    In breach of their fiduciary obligations, Defendants have acted for the disloyal and inequitable purpose of preventing stockholders from taking action that would threaten the Defendants' positions as directors, including by making other stockholder proposals or nominating new directors at the Annual Meeting.

95.    Cano's deteriorating financial condition means that, if Cano's stockholders are not given an opportunity to vote at the Annual Meeting, they may be unable to meaningfully exercise their franchise to fully investigate Dr. Hernandez's and the Board's conduct.

96.    Plaintiffs will be irreparably harmed if they are not entitled to exercise their franchise rights by electing two new directors and seeking the removal of Dr. Hernandez and Mr. Trujillo for cause.

97.    Plaintiffs have no adequate remedy at law, and equity dictates that Defendants must be enjoined from enforcing the advance notice bylaw in connection

with the Annual Meeting, or alternatively that a new deadline must be set for stockholder nominations and proposals.

98.   Plaintiffs are entitled to injunctive and declaratory relief to remedy Defendants' breaches of fiduciary duty.

WHEREFORE, Plaintiffs respectfully request that the Court:

(a)    Declare that the Nomination Deadline is unenforceable under the circumstances, that the Defendants have breached their fiduciary duties to Cano's stockholders, including Plaintiffs, that Defendants have acted inequitably by refusing to waive the Nomination Deadline in connection with the Annual Meeting, and that Defendants may not reject Plaintiffs' forthcoming Section 141(k) proposal and nomination notice on the basis that it was delivered after the nomination deadline;

(b)    Permanently enjoin Cano from enforcing the Nomination Deadline in connection with the 2023 Annual Meeting or, in the alternative, set a new date by which stockholders may provide timely notice of nominations or other business to be presented at the Annual Meeting;

(c)    If necessary, adjourn the 2023 Annual Meeting to allow the Court sufficient time to consider and render its ruling and allow Plaintiffs sufficient time to submit their stockholder proposal(s) and director nominations and solicit proxies;

(d)    Find that Cano's directors have breached their duty of loyalty to the Company and its stockholders by refusing to waive the advance notice bylaw;

(e)    Award to Plaintiffs their attorneys' fees, costs and expenses incurred in connection with bringing this action;

(f)    Grant such other and further relief as the Court deems just and proper.

OF COUNSEL:

Lori Marks-Esterman (*pro hac vice forthcoming*)
Adrienne M. Ward (*pro hac vice forthcoming*)
Daniel M. Stone (*pro hac vice forthcoming*)
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, NY 10019
(212) 451-2300

*Counsel for Elliot Cooperstone and Lewis Gold*

Tariq Mundiya (*pro hac vice forthcoming*)
Richard Li (#6051)
WILLKIE FARR &
   GALLAGHER LLP
787 7th Avenue
New York, NY 10019
(212) 728-8000

*Counsel for Barry S. Sternlicht*

Dated:  April 28, 2023

/s/ John M. Seaman
John M. Seaman (#3868)
April M. Ferraro (#6152)
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807
(302) 778-1000

*Counsel for Plaintiffs*