**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:22-CV-20827-WILLIAMS/SANCHEZ**

ALBERTO GONZALEZ, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

    v.

CANO HEALTH, INC. f/k/a JAWS
ACQUISITION CORP., MARLOW
HERNANDEZ, and BRIAN D. KOPPY

        Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................................... 1

ARGUMENT .................................................................................................................................... 3

I.  THE AC DOES NOT RAISE ANY INFERENCE OF SCIENTER. ................................. 3

    A.  Speculation Does Not Overcome Unrebutted Non-Fraudulent Inferences............. 3

    B.  A GAAP Violation Is Not a Basis for Scienter Absent Allegations of Knowledge or Severe Recklessness, Regardless of Its Magnitude. ........................................... 5

    C.  Plaintiff Has Failed to Plead Motive....................................................................... 8

    D.  The Core Operations Doctrine and Corporate Scienter Cannot Salvage Plaintiff's Claims. ...................................................................................................................... 9

    E.  New Allegations Improperly Added From an Unrelated Complaint Cannot Supply a Strong Inference of Scienter................................................................................. 11

II.  THE AC DOES NOT ALLEGE LOSS CAUSATION....................................................... 13

III.  PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND. ...................................... 15

CONCLUSION............................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re AFC Enters., Inc.*,
  348 F. Supp. 2d 1363 (N.D. Ga. 2004) ......................................................................................3

*Amorosa v. Gen. Elec. Co.*,
  2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) ........................................................................13

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)....................................................................................7

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004)....................................................................................10

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) ...............................................................................................8

*In re Buca Inc. Sec. Litig.*,
  2006 WL 3030886 (D. Minn. Oct. 16, 2006) ...................................................................13, 14

*Burgess v. Religious Tech. Ctr., Inc.*,
  600 F. App'x 657 (11th Cir. 2015) .........................................................................................11

*Carley Cap. Grp. v. Deloitte & Touche*,
  27 F. Supp. 2d 1324 (N.D. Ga. 1998).......................................................................................7

*Carvelli v. Ocwen Fin. Corp.*,
  2018 WL 4941110 (S.D. Fla. Apr. 30, 2018),
  *aff'd*, 934 F.3d 1307 (11th Cir. 2019)...................................................................................15

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d 240 (8th Cir. 2008) ...................................................................................................4

*Chalverus v. Pegasystems, Inc.*,
  59 F. Supp. 2d 226 (D. Mass. 1999) .........................................................................................7

*Cheney v. Cyberguard Corp.*,
  2000 WL 1140306 (S.D. Fla. Jul. 31, 2000)............................................................................8

*Crayton v. Opa-Locka Police Dep't*,
  2023 WL 3353927 (S.D. Fla. Apr. 22, 2023) ........................................................................11

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ..................................................................................................10

*Druskin v. Answerthink*,
299 F. Supp. 2d 1307 (S.D. Fla. 2004) ...............................................................................2, 14

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................................3, 14

*In re Eagle Bldg. Techs., Inc., Sec. Litig.*,
319 F. Supp. 2d 1318 (S.D. Fla. 2004) ....................................................................................7

*Faro Techs. Sec. Litig.*,
534 F. Supp. 2d 1248 (M.D. Fla. 2007)..................................................................................11

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) ...............................................................................................4

*Janbay v. Canadian Solar, Inc.*,
2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ......................................................................15

*Kinnett v. Strayer Educ., Inc.*,
2012 WL 933285 (M.D. Fla. Jan. 3, 2012),
*aff'd*, 501 F. App'x 890 (11th Cir. 2012).................................................................................4

*In re KLX, Inc. Sec. Litig.*,
232 F. Supp. 3d 1269 (S.D. Fla. 2017) .................................................................................1, 5

*Lemen v. Redwire Corp.*,
2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) ........................................................................8

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) ...............................................................................................15

*Maxim Integrated Prods., Inc. Sec. Litig.*,
639 F. Supp. 2d 1038 (N.D. Cal. 2009) .................................................................................15

*In re MicroStrategy, Inc. Sec. Litig.*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ......................................................................................7

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ...............................................................................1, 2, 5, 11

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.*,
2005 WL 4161977 (D. Colo. Oct. 20, 2005) ...........................................................................5

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) .........................................................................7

*In re Paincare Holdings Sec. Litig.*,
541 F. Supp. 2d 1283 (M.D. Fla. 2008).................................................................................6

iii

*Phillips v. Scientific-Atlanta, Inc.*,
374 F.3d 1015 (11th Cir. 2004) .................................................................................10

*Plymouth Cnty. Ret. Sys. v. Carter's Inc.*,
2011 WL 13124501 (N.D. Ga. Mar. 17, 2011).........................................................10

*Pub. Emps.' Ret. Sys. of Mississippi v. Mohawk Indus.*,
564 F. Supp. 3d 1272 (N.D. Ga. 2021) .......................................................................7

*In re Royal Caribbean Cruises, Ltd. Sec. Litig.*,
2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) ...............................................3, 10, 15

*In re Spectrum Brands, Inc. Sec. Litig.*,
461 F. Supp. 2d 1297 (N.D. Ga. 2006) .......................................................................5

*In re Sportsline.com Sec. Litig.*,
366 F. Supp. 2d 1159 (S.D. Fla. 2004) .......................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...............................................................................................1, 2, 4

*Thompson v. RelationServe Media, Inc.*,
610 F.3d 628 (11th Cir. 2010) ..................................................................................11

*Thor Power Tool Co. v. C.I.R.*,
439 U.S. 522 (1979)....................................................................................................4

*Union Cent. Life Ins. Co. v. Ally Fin., Inc.*,
2013 WL 2154220 (S.D.N.Y. Mar. 29, 2013) .........................................................12

*Waterford T'ship Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*,
2010 WL 1332574 (S.D. Fla. Mar. 30, 2010)..........................................................2, 4

*Wilson v. Chattem, Inc.*,
2009 WL 10667847 (S.D. Fla. Sept. 17, 2009) .......................................................11

*Ziemba v. Cascade Int'l, Inc.*,
256 F.3d 1194 (11th Cir. 2001) ...............................................................................2, 5

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) .....................................................................................2

**Statutes, Rules and Other Authorities**

Federal Rule of Civil Procedure 9(b)......................................................................5, 13

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* ........................ *passim*

Speech by SEC Staff, 2003 WL 23537969 (Dec. 11, 2003)........................................6

Plaintiff's Opposition (D.E. No. 57) ("Opp.") underscores why the AC[1] must be dismissed in its entirety. Rather than "stat[ing] with particularity *facts* giving rise to a ***strong inference***" of scienter, as he must (*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) (emphasis added)), Plaintiff resorts to (i) blatant speculation and (ii) reliance upon an entirely unrelated complaint in other litigation[2], none of which, together or independently, meets the PSLRA's heightened pleading standard for scienter. These tactics are a last-ditch attempt to make up for the absence of ***any*** of the types of factual allegations that survive a motion to dismiss in this Circuit, such as allegations of insider trading or allegations attributed to confidential witnesses, internal reports, emails, or other documents. *See In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1279 (S.D. Fla. 2017). Plaintiff provides the Court zero facts about the Individual Defendants' state of mind, much less the required strong inference of scienter.

Plaintiff's Opposition fails to meaningfully address Defendants' competing, non-fraudulent inferences, which far outweigh any inferences of scienter in the Court's mandatory *Tellabs* balancing. In particular, Plaintiff has no answer to the undisputed facts, of which this Court can take judicial notice, that Cano Health's SEC filings disclosed that its independent auditor had previously given a clean audit opinion of its financial statements, which financial statements reflected the Company's disclosed methodology for applying ASC 606 to revenue recognition of Medicare risk adjustments, and that as soon as Cano Health and its independent auditor determined in February 2022 that a change to that methodology should be made, Cano Health disclosed that

---

[1] This reply uses the defined terms in Defendants' Motion to Dismiss the Amended Complaint and Supporting Memorandum of Law (D.E. No. 54), and it refers to that Memorandum as "Opening Brief" or "Br." The term "Defendants" now refers only to Cano Health, Dr. Hernandez, and Mr. Koppy. Plaintiff dismissed Mr. Racich and Mr. Dowling from the case. D.E. Nos. 58–59.

[2] Defendants have separately moved to strike the portions of the Opposition that refer to the allegations in that complaint on the grounds that Plaintiff cannot plead new allegations in opposition to a motion to dismiss. D.E. No. 60.

to investors within a week. Br. at 8–10. In response, Plaintiff merely speculates, "This story makes no sense as auditors do not just completely change their tune for no reason." Opp. at 22. But Plaintiff's conjecture or opinion regarding routine auditor behavior or the plausibility of Defendants' disclosures cannot support a strong inference of scienter. *See Waterford T'ship Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*, 2010 WL 1332574, *14 (S.D. Fla. Mar. 30, 2010) (granting dismissal where plaintiffs "ask this Court to fill in the factual gaps with conjecture and speculation"). Accounting errors happen and they are corrected; they are not automatically securities fraud. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) ("the mere publication of a restatement is not enough to create a strong inference of scienter").

Conceding that the AC's allegations do not provide an "overwhelming" inference of scienter, Plaintiff instead argues that, at best, the AC pleads an "inference of scienter [that] is equal to the inference of non-fraudulent intent." Opp. at 21. But, Plaintiff attempts to barely clear his *Tellabs* pleading hurdle by stringing together a series of theories that have been rejected as legally insufficient under the PSLRA without additional, particularized factual allegations of knowledge or severe recklessness that are entirely absent here:

- GAAP violations, without particularized facts regarding Defendants' knowledge, are insufficient to plead a strong inference of scienter. *See, e.g.*, *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1208–10 (11th Cir. 2001). Plaintiff's cases concern fundamentally different types of restatements and/or have additional particularized factual allegations, such as auditor misconduct, insider trading, or other red flags not present here.

- Plaintiff's "motive" allegations rely upon patently insufficient, pre-class period, generalized corporate incentives that courts routinely reject (*see, e.g.*, *Druskin v. Answerthink*, 299 F. Supp. 2d 1307, 1335 (S.D. Fla. 2004)), and the hearsay speculation of unidentified investors referenced in an analyst report is precisely the sort of allegation that the PSLRA prohibits. *Mizzaro*, 544 F.3d at 1240.

- The so-called "core operations" doctrine, which has not been recognized by the Eleventh Circuit, has also been rejected specifically in the context of accounting violations due to the complexity and potential differing interpretations of GAAP's provisions, and the doctrine is particularly tenuous where the Company depends upon an outside accounting firm to audit its financials, as EY and its predecessor did here.

2

*In re AFC Enters., Inc.*, 348 F. Supp. 2d 1363, 1374 (N.D. Ga. 2004).

- For the same reasons that Plaintiff cannot impute knowledge to the Individual Defendants, Plaintiff similarly cannot impute knowledge to Cano Health to plead the rare "corporate scienter." *See In re Royal Caribbean Cruises, Ltd. Sec. Litig.*, 2013 WL 3295951, at *19 (S.D. Fla. Apr. 19, 2013).

Zero plus zero equals zero when the AC is viewed "holistically," as Plaintiff insists it must be.

Plaintiff's inability to plead the required strong inference of scienter, contrasted with Defendants' unrebutted non-fraudulent inferences, is by itself a sufficient ground to dismiss this case in its entirety and with prejudice. But the Court should also dismiss the AC on the independent ground that Plaintiff has not met his burden to allege loss causation. Plaintiff has contrived the alleged "partial" corrective disclosure because when the actual financial impact of the change in Cano Health's ASC 606 accounting methodology was announced, Cano Health's stock price *increased*. The stock price drop on which Plaintiff's claims are based did not reveal an alleged fraud and was part of a continuing trend downward in Cano Health's stock price. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347–48 (2005) (no loss causation where complaint "fail[ed] to claim that . . . share price fell significantly after the truth became known").

For these reasons, as well as those in the Opening Brief and the Motion to Strike, Plaintiff's claims should be dismissed in their entirety against all remaining Defendants, with prejudice.[3]

## ARGUMENT

**I.    THE AC DOES NOT RAISE ANY INFERENCE OF SCIENTER.**

**A.    Speculation Does Not Overcome Unrebutted Non-Fraudulent Inferences.**

Plaintiff has offered no meaningful rebuttal to the non-fraudulent inference that Cano

---

[3] Plaintiff's assertion that "any challenge to the remaining elements [aside from scienter and loss causation] is deemed waived" pursuant to Federal Rule of Civil Procedure 12(g) (Opp. at 9 n.3) is legally inaccurate. Rule 12(g) simply provides that Defendants cannot bring a second motion to dismiss as to other elements that they could have made at the time of this motion.

Health and its independent auditors did not determine that the Company had misapplied the highly technical ASC 606 revenue recognition methodology until February 2022 in the context of preparing Cano Health's 2021 annual audit, at which time Cano Health promptly disclosed the misapplication and potential non-cash adjustment that it expected would result. Br. at 14–16.

Instead, Plaintiff makes the factually unsupported assertion that the accounting principles that Defendants misapplied were "simple" in support of his theory that Defendants "were all aware, or were severely reckless in not knowing," that they had misapplied ASC 606. Opp. at 26. Courts reject these types of bald assertions, recognizing that GAAP provisions are "elaborate" and "tolerate a range" of interpretations. *Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 544 (1979); *In re Ceridian Corp. Sec. Litig.*, 542 F. 3d 240, 246 (8th Cir. 2008). Plaintiff's conclusory opinion that "[t]his story makes no sense as auditors do not just completely change their tune for no reason" fails to account for the relatively new and highly complex nature of ASC 606, or for negligence, for which liability is precluded under the fraud Section 10(b). *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1269 (11th Cir. 2006) (affirming dismissal where GAAP violations "merely suggest that either management or the accountant missed something, and may have failed to prepare or review the financial statements in accordance with an accepted standard of reasonable care"). Moreover, Plaintiff's opinion or conjecture as to what does or does not "make [ ] sense" does not supply the particularized facts required to allege a strong inference of scienter under the PSLRA. *Waterford T'ship Gen. Emps. Ret. Sys.*, 2010 WL 1332574 at *14; *see also Kinnett v. Strayer Educ., Inc.*, 2012 WL 933285, at *7 (M.D. Fla. Jan. 3, 2012), *report and rec. adopted*, 2012 WL 933275 (M.D. Fla. Mar. 20, 2012), *aff'd*, 501 F. App'x 890 (11th Cir. 2012) (dismissing complaint, "opinions do not transform non-fraudulent practices . . . into fraudulent or misleading actions").

Confronted with Defendants' far more cogent and compelling non-fraudulent inferences the Court must balance under *Tellabs*, Plaintiff doubles down on his improper reliance on a Credit

4

Suisse analyst report[4] noting that "several investors have raised questions about whether the company was intentionally trying to overstate its financials for the first few quarters post its De-SPAC . . . ." Opp. at 5. This is the sole "fact" underpinning the AC's allegations of scienter. But, it is pure speculation, which cannot satisfy the PSLRA (*In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1311 (N.D. Ga. 2006) (dismissing complaint that "invites speculation and conjecture, precisely that which the PSLRA seeks to avoid")), and it is also hearsay attributed to unidentified investors lacking any indicia of reliability. *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, 2005 WL 4161977, at *13 (D. Colo. Oct. 20, 2005) ("vague information from an unidentified source is not sufficient . . . to support an inference of scienter"). As the Eleventh Circuit counsels, the weight a court should afford a confidential source's account "depends on the particularity of the [confidential source's] allegations made in each case," meaning that ***zero weight*** should be afforded to references to these unidentified investors. *Mizzaro*, 544 F.3d at 1240.

**B.     A GAAP Violation Is Not a Basis for Scienter Absent Allegations of Knowledge or Severe Recklessness, Regardless of Its Magnitude.**

It is the law of this Circuit that "allegations of violations of . . . GAAP, standing alone, do not satisfy the particularity requirement of Rule 9(b)." *Ziemba*, 256 F.3d at 1208–10; *see also In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1165–70 (S.D. Fla. 2004) ("Violations of GAAP without more, may establish negligence, but can never establish scienter.").

Plaintiff attempts to evade this well-established law by accusing Defendants of scrutinizing Plaintiff's allegation "in isolation" rather than holistically. Opp. at 15. The problem for Plaintiff is

---

[4] Plaintiff's accusation that Defendants seek to "have its [*sic*] cake and eat it too" by citing to other content in the same Credit Suisse analyst report (Opp. at 21 n.11) misses the point of Defendants' argument. Defendants cited the analyst report to demonstrate Plaintiff's selective omission of non-fraudulent inferences in the very sources he cites. Br. at 15–17. Besides, "[i]n analyzing a motion to dismiss in a securities fraud case, the Court may consider the full text of documents incorporated by reference into the complaint . . . ." *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d at 1275.

that GAAP violations "standing alone" are legally insufficient, and there is nothing else in the AC to support a strong inference of scienter. Despite Plaintiff's hollow invocations of motive, core operations, and corporate scienter (*see* pp. 8–11, *infra*; Br. at 21–26), the AC is actually relying entirely on the fact of the restatement itself. Opp. at 2, 19. The AC here bears no resemblance to the allegations from *In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283 (M.D. Fla. 2008), which Plaintiff holds out as an example of his "holistic" approach. Opp. at 21. In *Paincare*, the Court looked not only to the fact and magnitude of the defendant's restatement (which encompassed nearly six years of financial statements, and converted net income to net losses for each reported period), but also to allegations concerning the defendants' motives to increase the stock price in order to fund acquisitions and boost the individual defendants' compensation (allegations not present here) and allegations that the defendant offered a "false rationalization" for its restatement, combined with evidence of knowledge of the improper accounting treatment prior to the restatement, allegations also absent here. 541 F. Supp. 2d at 1287, 1291–92.

Next, Plaintiff argues that the non-fraudulent inference that Defendants and their auditor (who had previously given a clean audit opinion of Cano Health's financial statements) identified the misapplication of GAAP in February 2022 is illogical because of the simplicity of the accounting principle and the fact that Cano Health's peers used a different methodology than Cano Health did during the class period. Opp. 17, 25. As discussed above, Plaintiff has no basis to assert that ASC 606 was "simple," and courts do not credit such conclusory assertions. *See* p. 4, *supra*; *see also* Speech by SEC Staff, 2003 WL 23537969, at \*5 (Dec. 11, 2003) (SEC Chief Accountant describing revenue recognition as the "most complicated area of accounting"). Additionally, GAAP provisions can be interpreted differently, as Credit Suisse acknowledged when it commented that Cano Health's explanation "seems reasonable." D.E. No. 56-5.

6

Finally, Plaintiff argues that the "nature and magnitude" of Cano Health's restatement supports scienter. Concerning the "nature" of the restatement, Plaintiff ignores the fact that the restatement impacted only the timing, not the amount, of revenue recognition. Defendants do not intend to "downplay" the seriousness of the restatement (Opp. at 15), but it is relevant that the adjustments ultimately had a net favorable impact on Cano Health's 2022 revenue guidance because of the shifting forward in time of revenues previously recognized in 2021. D.E. No. 56-7 at 7; *see Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *32 (C.D. Cal. Apr. 14, 2015) (rejecting magnitude of restatement allegations where "GAAP violations merely shifted earnings from present to future periods; overall revenues were not impacted"). Of Plaintiff's cases that concern adjustments to **the timing** of revenue recognition, *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 628, 638 (E.D. Va. 2000) involved alleged misconduct by auditors (who were named as defendants) and other allegations such as insider trading not present in the AC; *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 712–13, 721–22 (W.D. Tex. 2010), the defendants ignored "red flags," including an accusation in the financial media that accounting improprieties were occurring; and in *Chalverus v. Pegasystems, Inc.*, 59 F. Supp. 2d 226, 234 (D. Mass. 1999), EY resigned as the defendant's outside auditor due to its concerns about the defendant's proposed approach to revenue recognition. Regarding the "magnitude" of the restatement, as Plaintiff's cases illustrate, courts never consider magnitude as supporting a strong inference of scienter absent other particularized allegations.[5] *Cheney v. Cyberguard Corp.* is

---

[5] *See also, e.g.*, *Pub. Emps.' Ret. Sys. of Mississippi v. Mohawk Indus., Inc.*, 564 F. Supp. 3d 1272, 1304–05 (N.D. Ga. 2021) (allegations that defendant received daily financial reports showing the "conspicuous spikes in sales" and "subsequent returns" at the end of each quarter); *In re Eagle Bldg. Techs., Inc., Sec. Litig.*, 319 F. Supp. 2d 1318, 1326-28 (S.D. Fla. 2004) (allegations of numerous red flags, it did not appear the company conducted "any type of audit whatsoever," and restatement involved one fictitious transaction, making up over 74% of company's revenue); *Carley Cap. Grp. v. Deloitte & Touche*, 27 F. Supp. 2d 1324, 1339–40 (N.D. Ga. 1998) (allegations that defendant auditor "was heavily involved in the management of [the company]").

illustrative: the court dismissed claims against the CFO defendants where, like the allegations here, "plaintiffs' allegations are devoid of any suggestion that [the CFO defendants] had actual knowledge or were directly informed of the GAAP or GAAS violations," ***despite the magnitude of the restatement***, but denied dismissal as to the CEO who was allegedly informed of improper accounting practices and fired the informant, telling him that the accounting practices were "none of [informant's] business." 2000 WL 1140306, at *5, *8–9 (S.D. Fla. Jul. 31, 2000). The AC comes nowhere close to the allegations against the CEO in *Cheney*. Indeed, Defendants are unaware of any complaint concerning a restatement resting on such threadbare allegations as the AC that has survived a motion to dismiss.

### C.    Plaintiff Has Failed to Plead Motive.

Plaintiff continues to half-heartedly advance two legally insufficient and illogical theories of the Individual Defendants' motive to commit fraud. Motive alone is insufficient to plead a strong inference of scienter absent allegations of the individual defendants' knowledge or severe recklessness (*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1285 (11th Cir. 1999)), which automatically distinguishes this case (in which such allegations are lacking) from the *Lemen v. Redwire Corp.*, 2023 WL 2598402, at *4 (M.D. Fla. Mar. 22, 2023) case on which Plaintiff relies. Opp. at 20. In *Lemen*, the plaintiff alleged that the individual defendants were aware of the "tone at the top" problems the company allegedly failed to disclose because the company's disclosures identified those defendants as the primary perpetrators. 2023 WL 2598402, at *4.

Plaintiff first alleges that the Individual Defendants "were motivated to consummate the Business Combination, and the incorrect accounting method enabled them to report increased revenue in the short-term to make PCIH appear as a more appealing acquisition target." Opp. at 20. But, aside from his own say-so, Plaintiff offers not a single case to support his argument that these are anything other than general corporate incentives insufficient to establish scienter. *See* Br.

at 24–25. Plaintiff also has no answer to the fact that EY did not find the adjustments to Cano Health's financial statements prior to the Business Combination to be material.[6] *See* Br. at 24.

Second, the only class period motive alleged by Plaintiff is the motive to "intentionally try[] to overstate [Cano Health's] financials for the first few quarters post its De-SPAC." AC ¶ 51. This allegation arises entirely from the speculative hearsay of unidentified "investors" in the Credit Suisse analyst report, which cannot support scienter allegations under the PSLRA. *See* p. 5, *supra*. Moreover, Plaintiff fails to allege any reason why the Individual Defendants would be motivated to intentionally overstate financials for a few quarters. There is no alleged "motive" at all.

**D.      The Core Operations Doctrine and Corporate Scienter Cannot Salvage Plaintiff's Claims.**

Faced with no facts, let alone particularized ones, that Defendants Hernandez and Koppy knew or were severely reckless in not knowing of the misapplication of ASC 606, Plaintiff resorts to trying to impute knowledge to them based upon the core operations doctrine, and then to impute their non-existent knowledge to Cano Health under the corporate scienter doctrine. Plaintiff claims that this is a "holistic" way to view the AC, but it is just circular reasoning that gets him nowhere.

Plaintiff asks the Court to find that the importance of Medicare contracts and the high percentage of Cano Health's revenue from those contracts supports an inference of scienter. Opp. at 19–20. Defendants do not dispute the importance of the Medicare contracts, but to support an inference of scienter, even in circuits where the courts accept this doctrine, it requires Plaintiff to allege more. Specifically, courts that recognize and apply the core operations doctrine (as opposed to courts in this district who reject it, *see* Br. at 21–22) require that "there must be other, individualized allegations that further suggest that the officer had knowledge of the fact in

---

[6] The AC acknowledges that Mr. Koppy did not join PCIH until April 2021, more than four months after the agreement to consummate a business transaction. AC ¶¶ 16, 27. Mr. Koppy, therefore, could not have possessed a motive to consummate the business transaction by inflating revenue.

question," particularly when the allegations concern accounting practices. *Plymouth Cnty. Ret. Sys. v. Carter's Inc.*, 2011 WL 13124501, at *17 (N.D. Ga. Mar. 17, 2011). The out-of-district case cited by Plaintiff is consistent with this requirement. *See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489–91 (S.D.N.Y. 2004) (identifying at least three particularized contradictory facts of which company officers were aware at the time of the alleged misstatements).[7] Here, rather than pleading specific contradictory facts that were "apparent, or should have been apparent," *id*. at 489, to Defendants, Plaintiff simply asserts that it is "illogical" that Defendants "would not be aware of the accounting treatment used and its impact on financial results that accounted for more than 70% of the Company's revenue." Opp. at 19. Defendants have never argued they were unaware of Cano Health's accounting treatment of Medicare risk adjustments—its interpretation and application of ASC 606 were disclosed in detail in each of the Company's Forms 10-Q during the class period. *See* Br. at 7–10; *see also* Opp. at 5 (noting that Cano Health disclosed its ASC 606 methodology to the SEC). But Plaintiff has failed to allege that Defendants knew or were severely reckless in not knowing that such accounting treatment was incorrect, particularly in light of EY's clean audit opinion.

Without any particularized factual allegation that any Individual Defendant (or anyone else at Cano Health) knew or was severely reckless in not knowing of the misapplication of ASC 606, Plaintiff's invocation of "corporate scienter" is a non-starter. *In re Royal Caribbean Cruises*, 2013 WL 3295951, at *19. The cases Plaintiff cites are inapposite or illustrate the shortcomings of the AC. In *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1019 n.10 (11th Cir. 2004), the court is commenting, *in dicta*, on the group pleading doctrine, which is a way to attribute corporate statements or actions to individuals, rather than the other way around. In *Faro Techs. Sec. Litig.*,

---

[7] The other case cited by Plaintiff, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 342 (5th Cir. 2008), concerns claims of Texas common law fraud not governed by the PSLRA.

534 F. Supp. 2d 1248, 1262 (M.D. Fla. 2007), the court recognized "generally accepted agency principles" that corporate scienter can be derived only from the employee actually making the alleged misrepresentation or a high-level corporate officer. *Faro* does not suggest that corporate scienter is successfully pleaded simply because a defendant is a high-level corporate officer. Finally, Plaintiff's invocations of *Mizzaro*, 544 F.3d at 1254, and *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 634–35 (11th Cir. 2010), make no sense. Opp. at 26. In both cases, the Eleventh Circuit affirmed dismissal, concluding that the plaintiffs had not sufficiently alleged corporate scienter because, as in this case, the complaints failed to allege scienter as to the individual defendants or anyone else responsible for the companies' financial statements.

E.   **New Allegations Improperly Added From an Unrelated Complaint Cannot Supply a Strong Inference of Scienter.**

In an apparent concession that the AC falls far short of the PSLRA's heightened pleading standard, Plaintiff brazenly and improperly attempts to import allegations from a separate lawsuit filed in the Delaware Court of Chancery (the "Delaware Complaint") into his Opposition brief and attached the Delaware Complaint as an exhibit to his Opposition. As a threshold matter, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Crayton v. Opa-Locka Police Dep't*, 2023 WL 3353927, at *4 (S.D. Fla. Apr. 22, 2023), *report and rec. adopted*, 2023 WL 3341629 (S.D. Fla. May 10, 2023); *see also Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss."). Moreover, a document that is not attached to the complaint but that is filed with a later brief may only be considered if (1) the plaintiff referred to the document in the complaint, (2) the document is central to the plaintiff's claim, and (3) its authenticity is not challenged. *Wilson v. Chattem, Inc.*, 2009 WL 10667847, at *2 (S.D. Fla. Sept. 17, 2009). Defendants have moved to strike all references to

11

the Delaware Complaint from the Opposition as well as Sadler Exhibit A because they are not proper for the Court to consider on Defendants' motion to dismiss. *See* D.E. No. 60.

Regardless, the improper new allegations merely serve to underscore the AC's deficiencies. As is obvious from the Opposition, the allegations in the Delaware Complaint have no connection to the alleged misrepresentations in the AC. The Delaware Complaint is a dispute among current and former directors of Cano Health in the context of a proxy contest, in which former Cano Health directors sought injunctive relief to reopen the window to nominate new directors at the Company's annual shareholder meeting. The Delaware Complaint contains allegations that Dr. Hernandez and other members of the Board engaged in certain related-party transactions that the defendants allegedly failed to disclose to the Board of Directors. There are no allegations in the Delaware Complaint concerning (i) revenue recognition of Medicare risk adjustments, (ii) the Company's non-compliance with ASC 606—or any GAAP provision, or (iii) a failure of defendants to disclose information to Cano Health's outside auditor.[8] Opp. at 24. Moreover, the injunctive relief sought by the Delaware plaintiffs has since been denied.

Plaintiff's argument that the Court should disregard the more compelling, non-fraudulent inferences here simply because plaintiffs in another lawsuit have accused Dr. Hernandez and other directors of unrelated "governance failures" (Opp. at 8) should not be countenanced by this Court.[9] *See Union Cent. Life Ins. Co. v. Ally Fin., Inc.*, 2013 WL 2154220, at *2 (S.D.N.Y. Mar. 29, 2013)

---

[8] The Delaware Complaint alleges that the defendants did not make certain disclosures to the Board's Audit Committee—there are no allegations whatsoever about a lack of "forthrightness" with the Company's outside auditor. *See* Opp. at 22. Not only has Plaintiff improperly included these new allegations in his Opposition, he has also misrepresented them.

[9] Plaintiff claims that the Delaware Complaint "only bolster[s] the compelling case of scienter against Defendants Hernandez and Koppy." Opp. at 25. First, it does no such thing. Second, Mr. Koppy is not a defendant in the Delaware Complaint, which instead alleges that he "notified members of the Board that [he was] concerned about" whether the related-party issues needed to be reported.

(granting motions to dismiss and holding, "[p]laintiffs' citation to a number of lawsuits and government investigations involving the . . . Defendants also provides no evidence of scienter"). And even if the allegations in the Delaware Complaint were somehow related to the allegations here, which they are not, they would not constitute particularized factual allegations in this case that would satisfy Rule 9(b) or the PSLRA, as they have nothing to do with the Individual Defendants' knowledge about revenue recognition for Medicare risk adjustments. *See Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at *3 (S.D.N.Y. Aug. 19, 2022) (expressing concern over "lawyers' cribbing uncorroborated allegations . . . from a complaint in another action" and holding that the allegations are "impermissible under Rule 9(b)"). Plaintiff's attempt to import allegations from an unrelated lawsuit fails to meet his pleading burden and should be rejected.

## II.      THE AC DOES NOT ALLEGE LOSS CAUSATION.

Plaintiff has not sufficiently alleged loss causation and has instead contrived a "partial" corrective disclosure and proposed class period that mask the fact that Cano Health's post-class period disclosure of the restatement was followed by an ***increase*** in its stock price. Plaintiff's Opposition describes the alleged February 28, 2022 corrective disclosure as stating that Cano Health's "financial results were inaccurate." Opp. at 10. But, Cano Health did not announce the financial impact of the change in ASC 606 accounting methodology or the restatement until March 14, 2022, weeks after the class period. *Compare* D.E. 56-4, *with* D.E. 56-6, D.E. 56-7. *In re Buca Inc. Sec. Litig.* demonstrates that a plaintiff cannot plead loss causation by artificially cutting off a class period to avoid an increase in stock price following a restatement:

| *In re Buca Inc. Sec. Litig.* | AC |
|---|---|
| Alleged class period corrective disclosures revealed that (i) defendant "incorrectly applied the accounting rules with respect to certain operating lease transactions" and "would restate its previously filed financial statements"; and (ii) defendant would delay the | Alleged class period corrective disclosure revealed that (i) Cano Health and its independent auditor "identified certain potential non-cash adjustments to account for revenue recognition under accounting standard ASC 606"; and (ii) Cano Health would delay |

| | |
|---|---|
| filing of its Form 10-K. 2006 WL 3030886, at *4, *6 (D. Minn. Oct. 16, 2006). | the filing of its Form 10-K. AC ¶ 44. |
| Stock price generally trending downward in class period. *Id.* at *9. | Stock price generally trending downward before alleged corrective disclosure. D.E. No. 56-10. |
| Restatement issued post-class period. *Id.* at *1. | Restatement issued post-class period. D.E. No. 56-6, D.E. No. 56-7. |
| Stock price increased after restatement issued. *Id.* at *8. | Stock price increased after restatement issued. D.E. No. 56-10. |
| Post-class period disclosure allegedly "revealed" the "truth about [defendant's] financial statements." *Id.* | Post-class period disclosure allegedly "revealed" that financial statements "should no longer be relied upon." AC ¶ 46. |

The *Buca* allegations were arguably stronger than Plaintiff's because the alleged February 11, 2005 partial corrective disclosure in *Buca* included that Buca had violated GAAP and would need to remove revenue from its financial statements, *id*. at *3, whereas the alleged partial corrective disclosure here revealed only "***potential*** non-cash adjustments" to the ***timing*** of revenue recognition resulting from the change in ASC 606 accounting methodology.[10] The fact that Buca's stock increased by a few cents per share after the February 11, 2005 disclosure does not sufficiently distinguish these cases where *Buca* also recognized that a stock price decline does not establish loss causation when the "share price was trending downward," as it was in the days leading up to Plaintiff's alleged corrective disclosure here. *Buca*, 2006 WL 3030886, at *9.[11] Plaintiff's argument that "Defendants have failed to provide another explanation for the decline in stock price" (Opp. at 10) is improper burden-shifting. Plaintiff must allege a causal connection between

---

[10] Defendants are not trying to "have their cake and eat it too" by arguing that the February 28, 2022 disclosure both negates scienter and fails to reveal the relevant truth. Opp. at 11 n.5. Defendants' prompt disclosure of the discovery by Cano Health's auditors of the need to change its accounting methodology negates Plaintiff's theory that they misled investors for three quarters.

[11] A similar absence of loss causation where a stock price gradually decreased was also recognized in *Druskin*, 299 F. Supp. 2d at 1339. There is nothing in *Druskin* that contradicts *Dura* as Plaintiff suggests (Opp. at 12–13), and it is still good law in this District. The *Druskin* court found that the plaintiff failed to allege loss causation in light of the gradual decline of the stock price during the class period, regardless of the price rebounds after additional partial disclosures.

a revelation of truth and a corresponding stock drop, and he has failed to do so.[12] The wrongdoing alleged by Plaintiff, the alleged misrepresentation of revenue in each quarterly report from 2021, was not revealed until March 14, 2022, weeks after the class period.[13] Had Cano Health's auditors determined that the change in accounting methodology did not result in material restatements, Plaintiff would not have sued. Plaintiff's contention that disclosure of a "potential" non-cash timing adjustment revealed the fraud is the "specious" argument here. *See* Opp. at 10–11.

### III.   PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND.

Plaintiff's request for leave to replead should be denied, particularly where such request is based on his stated intent to incorporate allegations from the unrelated Delaware Complaint into a new complaint. Permitting Plaintiff a second amended complaint would be futile for the reasons discussed herein and in Defendants' Opening Brief. It is well within this Court's authority and discretion to dismiss this case with prejudice. *Carvelli v. Ocwen Fin. Corp.*, 2018 WL 4941110, at *8 (S.D. Fla. Apr. 30, 2018), *aff'd*, 934 F.3d 1307 (11th Cir. 2019) (dismissing complaint with prejudice because of incurable infirmities); *In re Royal Caribbean Cruises, Ltd. Sec. Litig.*, 2013 WL 3295951, at *19 (determining that further amendment of complaint would be futile).

**CONCLUSION**

For the foregoing reasons, the AC should be dismissed in its entirety with prejudice as to all remaining Defendants.

---

[12] *Lloyd v. CVB Fin. Corp.* (Opp. at 13) applies only to the disclosure of a government investigation followed by a disclosure of wrongdoing. 811 F.3d 1200, 1209–11 (9th Cir. 2016).

[13] For this reason, Plaintiff's allegations are even weaker than *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *15 (S.D.N.Y. Mar. 30, 2012) and *Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp. 2d 1038, 1046–47 (N.D. Cal. 2009) cited by Defendants (Br. at 27) where the alleged disclosures of filing delays did not disclose the fraud that was revealed later (sham sales, *Janbay*; stock options backdating, *Maxim*). *See* Opp. at 11 n.4. Here, no fraud was **ever** announced but rather a restatement. Br. at 14–21.

June 23, 2023

By:   **NELSON MULLINS RILEY & SCARBOROUGH LLP**

*/s/ Peter R. Goldman*
Peter R. Goldman (FBN 860565)
Nina C. Welch (FBN 118900)
Danna Khawam (FBN 1025114)
100 S.E. 3rd Avenue, Suite 2700
Fort Lauderdale, FL 33394
Telephone: (954) 745-5239
Facsimile: (954) 761-8135
peter.goldman@nelsonmullins.com
nina.welch@nelsonmullins.com
danna.khawam@nelsonmullins.com

and

**GOODWIN PROCTER LLP**

*/s/ Deborah S. Birnbach*
Deborah S. Birnbach (*pro hac vice*)
Katherine McKenney (*pro hac vice*)
100 Northern Avenue
Boston, MA 02210
Tel: (617) 570-1000
Fax: (617) 523-1231
dbirnbach@goodwinlaw.com
kmckenney@goodwinlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of June, 2023, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will furnish a copy to all counsel of record.

*/s/ Peter R. Goldman*
Peter R. Goldman

16