## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO. 1:22-CV-20827-WILLIAMS/SANCHEZ

ALBERTO GONZALEZ, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiff,

    v.

CANO HEALTH, INC. f/k/a JAWS
ACQUISITION CORP., MARLOW
HERNANDEZ, and BRIAN D. KOPPY,

      Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 4

I.     CANO HEALTH'S BUSINESS ................................................................................ 4

II.    CANO HEALTH'S FEBRUARY 28, 2022 DISCLOSURE OF THE NEED TO ADJUST THE TIMING OF MRA REVENUE RECOGNITION ...................... 5

III.   CANO HEALTH'S AUGUST 10, 2023 DISCLOSURES REGARDING MRA REVENUE .......................................................................................................... 7

ARGUMENT .................................................................................................................... 8

I.     FUTILITY UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(A)(2) ............ 8

II.    THE SAC IS FUTILE BECAUSE IT FAILS TO PLEAD SCIENTER .................... 9

       A.     The SAC Alleges, At Most, Negligence, But Not Securities Fraud ................ 11

       B.     The SAC's Inclusion Of Confidential Witnesses Fails To Bolster Plaintiff's Allegations of Scienter. .................................................................... 14

       C.     The Delaware Litigation is Irrelevant to Plaintiff's Claims ......................... 17

       D.     The Departures Of Cano Health Executives Do Not Indicate Scienter. ....... 18

III.   THE SAC IS FUTILE BECAUSE IT FAILS TO PLEAD LOSS CAUSATION ................................................................................................ 20

IV.    CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AOL Time Warner, Inc. Sec. Litig.*,
  503 F. Supp. 2d 666 (S.D.N.Y. 2007)......................................................................20

*In re Bristol-Myers Squibb Sec. Litig.*,
  228 F.R.D. 221 (D.N.J. 2005)................................................................................8, 9

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) ...........................................................................6, 10

*Cheney v. Cyberguard Corp.*,
  2000 WL 1140306 (S.D. Fla. Jul. 31, 2000)............................................................11

*City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*,
  649 F. Supp. 3d 1256 (S.D. Fla. 2023) ...............................................................19, 20

*City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*,
  806 F. Supp. 2d 1267 (N.D. Ga. 2011) ....................................................................15

*Climo v. Office Depot, Inc.*,
  2012 WL 13018593 (S.D. Fla. May 24, 2012) ..........................................................16

*Consejo De Defensa Del Estado De La Republica De Chile v. Espirito Santo Bank*,
  2009 WL 10668757 (S.D. Fla. Nov. 12, 2009)...........................................................8

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ...........................................................................3, 14

*Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
  143 F. Supp. 3d 1302 (S.D. Fla. 2015) .....................................................................8

*Hattaway v. Apyx Med. Corp.*,
  2023 WL 4030465 (M.D. Fla. Jun. 15, 2023)...........................................................17

*In re Hertz Glob. Holdings, Inc.*,
  905 F.3d 106 (3d Cir. 2018)................................................................................18, 19

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ...............................................................................20

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ....................................................................... *passim*

*Mogensen v. Body Cent. Corp.*,
15 F. Supp. 3d 1191 (M.D. Fla. 2014) ...................................................................13

*Payne v. DeLuca*,
433 F. Supp. 2d 547 (W.D. Pa. 2006) ....................................................................10

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) ................................................. *passim*

*In re Sportsline.com Sec. Litig.*,
366 F. Supp. 2d 1159 (S.D. Fla. 2004) ...................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) .......................................................................................9, 10, 14

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) ..................................................................................10

*Ziemba v. Cascade Int'l, Inc.*,
256 F.3d 1194 (11th Cir. 2001) ................................................................................8

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................................14, 17

**Statutes and Rules**

Securites Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b) ....................................8, 9, 20

Securities Exchange Act of 1934, Section 20(a), 15 U.S.C. § 78t(a) ........................................20

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 et seq. ...................... *passim*

Fed. R. Civ. P. 9(b) ................................................................................................3, 8, 9

Fed. R. Civ. P. 12(b)(6) ..............................................................................................8

Fed. R. Civ. P. 15(a)(2) ..............................................................................................3, 8

This securities class action was originally filed on the heels of the financial restatement announced by Cano Health, Inc. ("Cano Health" or the "Company") on March 14, 2022, resulting from Cano Health's and its independent auditor's discovery during the year-end 2021 audit process that Cano Health's previously disclosed accounting methodology for recognizing revenue from the Medicare Risk Adjustment (or "MRA") needed to be changed. The change in methodology for applying the relevant standard under generally accepted accounting principles ("GAAP"), ASC 606—a methodology previously blessed by two of Cano Health's outside auditors—resulted in restatements of Cano Health's financial results from the first, second, and third quarters of 2021, shifting revenue recognition forward and into 2022. Against this backdrop, a putative shareholder representative filed a complaint for securities fraud on March 18, 2022, and Plaintiff Gudelio Fundora ("Plaintiff") filed his first amended complaint (D.E. No. 51 or "FAC") eleven months later, on February 21, 2023, after being appointed lead plaintiff.

Defendants moved to dismiss the FAC, which motion was fully briefed as of June 23, 2023. D.E. Nos. 54, 56, 61. As grounds for Defendants' motion, Defendants argued that the FAC should be dismissed for the independently sufficient reasons that it (i) fails to plead with particularity any inference of scienter, let alone the strong inference of scienter required by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (ii) fails to plead that the alleged misstatements caused Plaintiff's losses.

Plaintiff knows that the FAC, which lacks *any* particularized facts of Marlow Hernandez's or Brian Koppy's (the "Individual Defendants") knowledge and instead relies entirely on speculation and inapplicable legal doctrines, is doomed. He first attempted to dodge dismissal by improperly adding allegations not pleaded in the FAC to his opposition to Defendants' motion to dismiss, which Plaintiff lifted from the complaint in an unrelated proxy contest lawsuit that has

1

since been dismissed by the Delaware Court of Chancery (the "Delaware Complaint"). Defendants moved to strike those improper and irrelevant references to the Delaware Complaint from Plaintiff's opposition to Defendants' motion to dismiss. D.E. Nos. 60, 64.[1] Tacitly conceding the procedural impropriety of these improperly added allegations, Plaintiff's opposition to Defendants' motion to strike alternatively asked the Court to grant leave to amend the complaint to add them. D.E. No. 62 at 4–5.

Plaintiff now attempts once again to amend his complaint with the proposed Second Amended Complaint (D.E. No. 65 at Ex. 1 or "SAC"), in which he shifts his theory of liability to incorporate recent events disclosed by Cano Health—none of which relates to the change in accounting methodology announced in February 2022 that prompted this lawsuit. Instead, Plaintiff uses the Company's August 10, 2023 announcement that its actual MRA revenue for Q2 2023 turned out to be "***approximately $58 million lower than previously estimated in the Company's[May 9, 2023] guidance, driven by lower MRA payments received and expected to be received in 2023***" and comments from the Company's CEO regarding improvements in its MRA revenue estimation methodology—none of which has anything to do with GAAP non-compliance or the prior restatement—to once again claim securities fraud. But, these new allegations—which amount to allegations that a less than state-of-the-art back-end process limited Cano Health's ability to accurately estimate future MRA revenue—do not resuscitate Plaintiff's claims.

Plaintiff distorts the import of Cano Health's August 10, 2023 disclosures. The August 10, 2023 Form 10-Q disclosed actual MRA revenue for the second quarter of 2023 ended June 30, 2023, compared to Cano Health's earlier forward-looking estimates for that period. This accurate

---

[1] Defendants refer the Court to their motion to dismiss and motion to strike briefing for a more detailed recitation of the facts and the reasons why those motions should be granted, including dismissal of Plaintiff's claims in their entirety and with prejudice.

reporting of actual versus estimated revenue does not "amount to a restatement" just because Plaintiff says so. This was the first reporting of the Q2 2023 financial results, and not a restatement of prior results. A financial restatement is a revision and re-release of prior financial statements, and Cano Health has not restated anything since March 2022. Regardless, the earnings call statements of Mark Kent, Cano Health's new CEO, that "*we have had several emerging process issues that have affected our ability to project our performance*" does not supply the requisite strong inference of scienter for the Individual Defendants' statements in prior periods. At most, the "process issues" described by Mr. Kent may describe poor business practices, but the securities laws have long distinguished between non-actionable negligence and fraud, particularly in the context of complex accounting matters. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1269 (11th Cir. 2006) (affirming dismissal where GAAP violations "merely suggest that either management or the accountant missed something, and may have failed to prepare or review the financial statements in accordance with an accepted standard of reasonable care"). The SAC also fails for the separate and independently sufficient reason of a failure to plead loss causation; the August 10, 2023 announcement of actual quarterly revenue as compared with prior estimates did not reveal fraud. Companies' financial estimates are not always correct, and every company would be liable for fraud if their estimates turned out to be inaccurate. That is simply not the law.

In light of these glaring deficiencies in the SAC, Plaintiff's motion for leave to amend should be denied as futile. Although Fed. R. Civ. P. 15(a)(2) provides that a party may amend a pleading with "the court's leave," and that such leave should be freely given "when justice so requires," the standard must be applied in the context of a securities fraud claim subject to the heightened pleading requirements of the PSLRA and Rule 9(b). "[J]ustice does not require district courts to waste their time on hopeless cases [and] leave may be denied if a proposed amendment

fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008) (affirming denial of motion to amend securities fraud claim). Despite Plaintiff's efforts over the past few months to cure the inadequacies of the FAC by conjuring any negative inference from unrelated events or locating confidential witnesses willing to speak ill of Defendants, Plaintiff's SAC still falls far short of what this Circuit requires to support a strong inference of scienter or plead loss causation. Allowing Plaintiff a third bite at the apple, especially without curing the deficiencies from the FAC, would run directly counter to the PSLRA's purpose. The Court should reject such an attempt.

## I.       CANO HEALTH'S BUSINESS

Cano Health is one of the largest independent primary care physician groups in the United States. SAC ¶¶ 2; D.E. No. 55-8 (Ex. 8, Form 10-K for year ended Dec. 31, 2021, filed March 14, 2022 ("2021 Form 10-K")) at 6 (cited at SAC ¶¶ 49, 51–52, 128–29, 132). It is a multi-state provider of access to high-quality health care to primarily underserved and dual-eligible Medicare and Medicaid populations. D.E. No. 55-8 (Ex. 8, 2021 Form 10-K) at 6. Cano Health's members receive "value-based" care via the Medicare Advantage program. SAC ¶ 62; D.E. No. 55-8 (Ex. 8, 2021 Form 10-K) at 7.

In Medicare Advantage, the Centers for Medicare & Medicaid Services ("CMS") pays Cano Health a monthly sum per member to manage all of the member's medical expenses pursuant to a contract referred to as a capitation contract. SAC ¶¶ 36–37; D.E. No. 55-8 (Ex. 8, 2021 Form 10-K) at 7. In return, Cano Health is generally responsible for all of its members' health care costs incurred at Cano Health's primary care locations as well as all third-party medical expenses. D.E. No. 55-8 (Ex. 8, 2021 Form 10-K) at 7.

The capitated revenue payments to Cano Health are calculated using CMS's MRA process, a statistical method that adjusts the payments CMS makes based on the expected medical costs of

enrolled members. SAC ¶¶ 37–38; D.E. No. 55-8 (Ex. 8, 2021 Form 10-K) at 84. The risk-adjustment system is prospective, meaning that it uses members' diagnoses and demographic characteristics from one year to calculate a risk adjustment for its monthly payments in the next year. SAC ¶¶ 37–38; D.E. No. 55-8 (Ex. 8, 2021 Form 10-K) at 84. As the Company disclosed, it recognizes capitated revenue in the month it provides services to its members, using GAAP standard ASC 606 to estimate MRA revenue, and those amounts are adjusted in subsequent periods after the final data is compiled by the CMS. SAC ¶ 49.

## II. CANO HEALTH'S FEBRUARY 28, 2022 DISCLOSURE OF THE NEED TO ADJUST THE TIMING OF MRA REVENUE RECOGNITION

Since its adoption of ASC 606 in 2019, Cano Health had engaged two outside, independent accounting firms to audit its year-end financials. D.E. No. 55-1 (Ex. 1, Proxy Statement, filed May 7, 2021 ("Proxy Statement")) at 369, F-25 (cited at SAC ¶¶ 84, 96, 98, 143). The 2019 and 2020 financial statements in the Proxy Statement at the time Cano Health became a publicly traded company were audited by Ernst & Young LLP ("EY"), and were accompanied by EY's clean audit opinion that "the consolidated financial statements present fairly, in all material respects, the financial position of the Company at December 31, 2020 and 2019, and the results of its operations and its cash flows for each of the two years in the period ended December 31, 2020, in conformity with U.S. generally accepted accounting principles." *Id.* at F-25.

On February 28, 2022, Cano Health issued a press release on SEC Form 8-K explaining that, "[l]ast week, in the course of finalizing its audit of the financial statements for the year ended December 31, 2021, the Company and its independent auditor, Ernst & Young LLP, identified certain potential non-cash adjustments to account for revenue recognition under accounting standard ASC 606." D.E. No. 55-4 (Ex. 4, Feb. 28, 2022 Form 8-K) at Ex. 99.1, at 1 (cited at SAC ¶¶ 6, 45, 137). The press release continued, "The adjustments relate to how and when the Company

5

accrues revenue related to Medicare Risk Adjustments. The adjustments are expected to impact the timing of revenue recognition, by delaying recognition of certain amounts related to the Medicare Risk Adjustment to subsequent periods . . . ." *Id.*

Cano Health filed its 2021 Form 10-K on March 14, 2022, reflecting restated financials for the first, second, and third quarters of 2021. D.E. No. 55-8 (Ex. 8, 2021 Form 10-K); *see also* D.E. No. 55-7 (Ex. 7, Mar. 14, 2022 Press Release) at Ex. 99.1, at 2 (quoted at SAC ¶¶ 7, 50). EY determined that the impact of the adjustments on Cano Health's 2019 and 2020 year-end financial statements was not material. D.E. No. 55-7 (Ex. 7, Mar. 14, 2022 Press Release) at Ex. 99.1, at 2. Cano Health also disclosed in the Form 10-K that EY and management determined that Cano Health had material weaknesses in controls that led to the misapplication of GAAP, specifically that Cano Health "did not have a sufficient complement of personnel with an appropriate level of knowledge, experience, and oversight commensurate with its financial reporting requirements to ensure proper selection and application of [GAAP]." D.E. No. 55-8 (Ex. 8, 2021 Form 10-K) at 63–64.[2] While the adjustments resulted in 2021 revenues being revised lower, the adjustments had a net favorable impact on Cano Health's 2022 revenue guidance because of the shifting forward in time of revenues previously recognized in 2021. D.E. No. 55-7 (Ex. 7, Mar. 14, 2022 Press

---

[2] In its Form 10-K for fiscal year 2022, Cano Health disclosed that this particular material weakness in internal controls had been "remediated" (SAC ¶ 133), and EY affirmed in the same Form 10-K that "[w]e have audited Cano Health, Inc.['s] internal control over financial reporting as of December 31, 2022. . . . In our opinion, Cano Health, Inc. (the Company) maintained, in all material respects, effective internal control over financial reporting as of December 31, 2022. . . ." (McKenney Decl. Ex. 1, Form 10-K for year ended Dec. 31, 2022, filed March 15, 2023 ("2022 Form 10-K") at 147). "McKenney Decl. Ex." refers to exhibits to the Declaration of Katherine McKenney in support of Defendants' Opposition to Plaintiff's Motion for Leave to Amend (D.E. No. 67 or "McKenney Decl."). The Court may consider the exhibits attached to the McKenney Declaration which are referenced in the SAC, filed with the SEC, and/or publicly available. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999) (the court may consider documents "publicly filed with the SEC at the motion to dismiss stage").

Release) at Ex. 99.1, at 2. Upon Cano Health's issuance of the restatement after the close of trading on March 14, 2022, Cano Health's stock price rose from $5.31 per share to $6.03 per share at the close of trading on March 15, 2022. D.E. No. 55-10 (Ex. 10, CANO Stock Price Chart).

## III.   CANO HEALTH'S AUGUST 10, 2023 DISCLOSURES REGARDING MRA REVENUE

On August 10, 2023, Cano Health issued its Form 10-Q reporting second quarter financial results. In its accompanying press release filed with the SEC on Form 8-K, Cano Health disclosed:

> During the second quarter of 2023, the ***MRA revenue was approximately $58 million lower than previously estimated in the Company's guidance***, driven by lower MRA payments received and expected to be received in 2023. Approximately $44 million of lower-than-expected MRA revenue was related to out-of-period items, which are not expected to reoccur.

SAC ¶ 10; McKenney Decl. Ex. 2 (Form 8-K, filed Aug. 10, 2023, at Ex. 99.1, at 1) (cited at SAC ¶¶ 10, 58). The Company further elaborated on this lower-than-estimated MRA revenue in its quarterly earnings call ("Q2 2023 Earnings Call"), explaining, "This lower MRA revenue reflects our updated view of the final 2022 and mid-year 2023 MRA revenue estimates of the approximate $58 million shortfall versus our expectations." SAC ¶ 60; McKenney Decl. Ex. 3 (Cano Health Earnings Call Transcript, Aug. 10, 2023 ("Q2 2023 Transcript")), at 11 (cited at SAC ¶¶ 59–64). The $44 million attributed to prior periods in 2022 and the first half of 2023 is consistent with Cano Health's disclosed process for recognizing MRA revenue in the month services are performed, and then those "amounts are adjusted in subsequent periods after the final data is compiled by the CMS." SAC ¶ 49. Cano Health did not need to restate any of its prior financial statements as a result of these periodic adjustments of estimated MRA revenue to actual revenue.

On the same call, Mr. Kent talked about improvements that the Company had made in recent months to improve Cano Health's estimates of MRA revenue going forward:

> Our review found that while our clinical documentation, billing and coding followed by nearly all internal policies, ***we have clear opportunities to implement simpler, scalable***

***and more effective protocols designed to enhance our performance***. The largest gap we found was attributable to back-end processes and the ways that data from those processes inform our MRA estimates. The ***prior processes were overly manual***, and our back testing analysis demonstrated that they provided limited predictive power.

SAC ¶ 61; McKenney Decl. Ex. 3 (Q2 2023 Transcript) at 6.

## ARGUMENT

### I.    FUTILITY UNDER FEDERAL RULE OF CIVIL PROCEDURE 15(A)(2)

While Fed. R. Civ. P. 15(a)(2) provides that a party may amend a pleading with "the court's leave," and that such leave should be freely given "when justice so requires," "leave to amend is by no means automatic." *Consejo De Defensa Del Estado De La Republica De Chile v. Espirito Santo Bank*, 2009 WL 10668757, at *1 (S.D. Fla. Nov. 12, 2009). This Court may deny a motion to amend for any number of reasons, including "futility of amendment" and "bad faith or dilatory motive." *Id.* "The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 143 F. Supp. 3d 1302, 1311 (S.D. Fla. 2015) (quotations omitted).

When a Rule 15(a)(2) motion is filed in a securities fraud class action, such as this one, the Court must examine the proposed amendments under the more "stringent test" imposed by the PSLRA, Rule 9(b), and this Circuit's "substantive scienter case law" that applies to Plaintiff's Section 10(b) claims. *See Mizzaro*, 544 F.3d at 1238, 1257 (affirming denial of motion for leave to amend securities fraud complaint); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1212–13 (11th Cir. 2001) (same). Consideration of the PSLRA's pleading requirements when deciding a motion to amend is necessary to ensure that the PSLRA retains force and meaning. *See In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 229 (D.N.J. 2005) ("if leave to amend complaints alleging securities fraud is liberally granted, then the [PSLRA] has no vitality" and "the [PSLRA] would

be meaningless if judges liberally granted leave to amend on a limitless basis").

Plaintiff's proposed amendments are futile because even with the new allegations, the SAC still fails to plead scienter or loss causation.[3] Defendants' motion to dismiss the FAC is fully briefed and ripe for decision. Thus, Plaintiff's plea for "streamlin[ing] this case to avoid unnecessary motion practice," D.E. 65 at 1, is a fiction. The Court can dismiss this case in its entirety now by granting the motion to dismiss and denying Plaintiff leave to amend on the same grounds.[4] *See In re Bristol-Myers Squibb*, 228 F.R.D. at 229 ("[P]ermitting Plaintiff to amend the Complaint would allow it to make an end run around the requirements of the [PSLRA].").

## II.    THE SAC IS FUTILE BECAUSE IT FAILS TO PLEAD SCIENTER

To state a claim for securities fraud under Section 10(b), a complaint must satisfy the heightened pleading requirements of Rule 9(b) and the PSLRA. *Mizzaro*, 544 F.3d at 1237–38. This Circuit has recognized that the pleading requirements of the PSLRA serve "[a]s a check against abusive litigation by private parties." *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)). "[I]mportantly, the PSLRA raised the standard for pleading scienter. . . . [T]he complaint shall, with respect to each act or omission alleged . . . , *state with particularity facts giving rise to a strong inference that the defendant acted with the required state*

---

[3] The elements of a securities fraud claim that Plaintiff must plead are: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro*, 544 F.3d at 1236–37.

[4] Although Defendants moved to dismiss Plaintiff's FAC only on the elements of scienter and loss causation—which deficiencies are also fatal to the SAC—Defendants also dispute that Plaintiff has adequately pleaded that any of the new alleged misstatements added to the SAC were materially false or misleading when made, or that the FAC's alleged misstatements were materially false or misleading for the additional reasons now alleged in the SAC. Defendants reserve the right, should the Court grant Plaintiff's motion, to move to dismiss on the additional grounds that the statements were not materially false and are otherwise non-actionable under the securities laws.

*of mind*." *Id.* at 1238.

Scienter is defined as an intent to deceive, manipulate, or defraud or severe recklessness, and "[s]evere recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but ***an extreme departure*** from the standards of ordinary care . . . ." *Bryant*, 187 F.3d at 1282 & n.18 (emphasis added). A "plaintiff cannot satisfy the reckless behavior prong of showing scienter where the disputed 'items involve complex issues of accounting as to which reasonable accountants could reach different conclusions.'" *Payne v. DeLuca*, 433 F. Supp. 2d 547, 580 (W.D. Pa. 2006) (quoting *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994)).

An inference of scienter is only strong if it is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Mizzaro*, 544 F.3d at 1238 (quoting *Tellabs*, 551 U.S. at 324). "Because the strong-inference inquiry asks 'whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard,' 'courts must consider the complaint in its entirety,' and '***omissions and ambiguities count against inferring scienter***.'" *Id.* at 1238–39 (emphasis added) (quoting *Tellabs*, 551 U.S. at 322–23, 326). And the "complaint must allege facts supporting a strong inference of scienter for each defendant with respect to each violation." *Id.* at 1238. "In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Tellabs*, 551 U.S. at 326.

The answer for the FAC, and now for the SAC, is no. The FAC did not contain any type of particularized factual allegation to suggest that any Defendant knew, or was severely reckless in not knowing, that Cano Health had incorrectly applied complex technical accounting guidance

10

concerning the timing of MRA revenue recognition. D.E. No. 54 at 14–17; D.E. No. 61 at 3–5. Instead, the non-fraudulent inference is that Defendants and their outside auditor, EY—which had previously given Cano Health a clean audit opinion despite knowing the openly disclosed prior methodology—discovered the issue in the course of preparing Cano Health's year-end 2021 financial statements and immediately alerted investors before issuing a restatement of Cano Health's quarterly financials from the first, second, and third quarters of 2021. D.E. No. 54 at 14–17; D.E. No. 61 at 3–5. GAAP violations categorically fail to plead securities fraud in the absence of additional "red flag" allegations regarding Defendants' knowledge, and therefore, the non-fraudulent inferences in the FAC clearly outweigh any inference of fraud, requiring dismissal of the FAC. *Cheney v. Cyberguard Corp.*, 2000 WL 1140306, at *8–9 (S.D. Fla. Jul. 31, 2000) (complaint insufficient where "plaintiffs' allegations are devoid of any suggestion that [defendants] had actual knowledge or were directly informed of the GAAP or GAAS violations"). *See also* D.E. No. 54 at 17–21; D.E. No. 61 at 5–8. Plaintiff's new allegations proposed in the SAC fare no better and do not salvage Plaintiff's claims.

> **A.      The SAC Alleges, At Most, Negligence, But Not Securities Fraud.**

During the Q2 2023 Earnings Call, Mr. Kent explained information and updates related to MRA estimates, including that reconciliations of the "actual and estimated MRA revenue" from CMS for the Company's members resulted in a reduction to the Company's final 2022 and mid-year 2023 estimates. SAC ¶ 59; McKenney Decl. Ex. 3 (Q2 2023 Transcript) at 6. Mr. Kent further explained that the estimates were the result of a "very tedious and manual process" that "can be fraught with all kinds of errors" and that the Company had since implemented a more automated process to enhance the "predictive power" of its MRA revenue estimates. *See* SAC ¶¶ 11, 61; McKenney Decl. Ex. 3 (Q2 2023 Transcript) at 6, 20. Neither the estimated versus actual MRA revenue amounts, nor Mr. Kent's commentary on improvements to the Company's billing and

coding processes, is remotely sufficient to plead scienter for securities fraud.

Although Plaintiff now attempts to allege that the statements made on the Q2 2023 Earnings Call support an inference of scienter, *see, e.g.*, SAC ¶ 142, the PSLRA requires a "strong inference" of scienter, not just a reasonable one. *See In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL 3295951, at *10 (S.D. Fla. Apr. 19, 2013) (Williams, J.). There remains a glaring absence in the SAC of any particularized facts that any Individual Defendant knew, or was severely reckless in not knowing, that Cano Health's "tedious and manual" process led to allegedly materially inaccurate MRA revenue estimates at any time prior to the second quarter of 2023. Indeed, the Q2 2023 Transcript quoted in the SAC undermines Plaintiff's theory entirely because Mr. Kent explains that Cano Health did not conduct the back-testing analysis of its MRA revenue estimation process (that led to the conclusion the process lacked "predictive power") until ***after*** Mr. Kent joined the Company as Chief Strategy Officer in April 2023. McKenney Decl. Ex. 3, at 6. Further, the SAC is still entirely lacking any factual allegation that either of the Individual Defendants participated in any of the "back-end" billing and coding practices that allegedly led to inaccurate MRA revenue estimates or that they were severely reckless in not knowing that such practices led to allegedly materially inaccurate MRA revenue estimates.

Further, the SAC's allegation that the Company falsely reported that it had "remediated" the material weaknesses in its internal controls in light of the issues Mr. Kent identified (SAC ¶¶ 132–34) inaccurately conflates the earlier ASC 606 compliance issue of MRA revenue recognition timing that led to the Company's March 2022 restatement and prompted this lawsuit with the issues of "manual" coding and billing practices that allegedly led to the MRA revenue disclosure on August 10, 2023. Specifically, the weaknesses in internal controls disclosed by Cano Health related to the earlier issue of proper interpretation of ASC 606 and application of GAAP

12

more generally by Cano Health's accounting personnel (*i.e.*, "The material weaknesses pertain to . . . our failure to have a sufficient complement of personnel with an appropriate level of knowledge, experience and oversight commensurate with their financial reporting requirements to ensure proper selection and ***application of GAAP***, SAC ¶ 132 (emphasis added))—not to the entirely separate issue Plaintiff raises for the first time in the SAC that the data inputs from the "back-end" billing and coding processes (SAC ¶¶ 11, 71) were unreliable. Cano Health has not disclosed any non-compliance with ASC 606 since the March 2022 restatement. The ASC 606 compliance matter and the allegedly inaccurate MRA revenue estimates are separate issues, and one does not bolster the inference of scienter as to the other, particularly where such inference is entirely lacking.

In light of these deficiencies, the non-fraudulent inferences to be drawn from the SAC and documents incorporated by reference therein are far more cogent and compelling than any fraudulent inferences. The more compelling inference is that Cano Health—which grew rapidly during the Class Period[5]—did not have back-end billing and coding processes that kept pace with its increasing size and that those practices left something to be desired. But alleged mismanagement and negligence are not actionable under the securities laws. *See, e.g.*, *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1210, 1217–18, 1223–24 (M.D. Fla. 2014) ("Even reasonable and plausible fraud cases will be dismissed if an inference of poor business judgment— and even negligence or mismanagement—flows even slightly more naturally from the well-pled factual allegations than does an inference of scienter."). As the Court explained in *Garfield v. NDC Health Corporation*, allegations such as those in the SAC "merely suggest that either management

---

[5] *Compare* D.E. No. 55-7 (Ex. 7, Mar. 14, 2022 Press Release) at 23 (graph noting 156,000 members as of the second quarter of 2021), *with* McKenney Decl. Ex. 1 (2022 Form 10-K) at 31 (reporting 309,590 members as of December 31, 2022).

or the accountant missed something, and may have failed to prepare or review the financial statements in accordance with an accepted standard of reasonable care." 466 F.3d at 1269. Here, there is similarly no allegation that the Individual Defendants—or anyone else responsible for the Company's financial reporting—knew that its back-end, "manual" processes would lead to allegedly materially inaccurate MRA revenue estimates. The more compelling inference is that, just as warned of in the Company's risk factors (SAC ¶¶ 98, 102, 106, 128-129), things were missed. Indeed, in further support of these non-fraudulent inferences, EY, after resolution of the Company's ASC 606 compliance issues, concluded at year-end 2022, that "In our opinion, Cano Health, Inc. (the Company) maintained, in all material respects, effective internal control over financial reporting as of December 31, 2022." The *Tellabs* balancing test would readily compel dismissal of the SAC as it does the FAC.

### B. The SAC's Inclusion Of Confidential Witnesses Fails To Bolster Plaintiff's Allegations of Scienter.

Because the SAC still lacks any evidence of emails, reports, or other documents evidencing any Individual Defendant's scienter, Plaintiff attempts to bolster its deficient allegations through the purported statements of three confidential witnesses ("FE 1", "FE 2," and "FE 3"), all purportedly former employees of Cano Health who describe in very general terms alleged outdated and "unorganized" processes in various departments at the company related to billing and coding. SAC ¶¶ 69–80. "[T]he Eleventh Circuit has instructed that courts may be wary of confidential sources" and requires that "the complaint unambiguously provides in a cognizable and detailed way the basis of the whistleblower's knowledge.'" *In re Royal Caribbean Cruises*, 2013 WL 3295951, at \*18 (quoting *Mizzaro*, 544 F.3d at 1239–40). The PSLRA requires that confidential witnesses "must be described with sufficient particularity to establish their reliability and personal knowledge" and their statements "must themselves be indicative of scienter." *Zucco Partners, LLC*

14

*v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009); *see also City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*, 806 F. Supp. 2d 1267, 1296–97 (N.D. Ga. 2011) (the court must determine whether the confidential witness has "reliable first-hand knowledge"). "[T]he weight to be afforded to allegations based on statements proffered by a confidential source depends on the particularity of the allegations made in each case . . ." *In re Royal Caribbean Cruises*, 2013 WL 3295951, at *18 (quoting *Mizzaro*, 544 F.3d at 1239–40). Here, the Court should afford no weight to the FE allegations because they fail to specify "the foundation or basis of the confidential witness[es'] knowledge" or "the proximity to the offending conduct" as required by the PSLRA (*Mizzaro*, 544 F.3d at 1240) for at least the following reasons:

*First*, none of the FEs is alleged to have had any direct communication or interaction with either of the Individual Defendants regarding the subject matter of the alleged misstatements, let alone any basis from which the Court can infer the Individual Defendants' knowledge or states of mind. Among the FEs, only one allegedly reported to either of the Individual Defendants,[6] and none even mentions either of the Individual Defendants at all. SAC ¶¶ 69–80; *see In re Royal Caribbean Cruises*, 2013 WL 3295951, at *18 (no scienter where "none of these witnesses allege that they spoke to the individual Defendants, that the individual Defendants had *actual* knowledge of this data"). This deficiency alone renders all of the FEs' statements incapable of salvaging the non-existent scienter allegations of the SAC. *See Mizzaro*, 544 F.3d at 1247–48 ("[N]or do any of the confidential witnesses say that any one of the individual defendants ever discussed the alleged fraud or even knew about it. Indeed, none of the confidential witnesses even claims to know or have so much as ever met any of the six individual defendants.").

---

[6] Although FE 1 is described as a "chief administration officer" who reported directly to Dr. Hernandez, FE 1 does not describe any communications with, reports delivered to, or any information connecting Dr. Hernandez to any of the allegations. SAC ¶¶ 69–70, 73, 76–77.

*Second*, none of the statements attributed to the FEs concerns the Company's financial reporting or SEC filings. None of the FEs is even alleged to have worked in Cano Health's accounting department. FE 1 was a "chief administration officer," and FE 2 and FE 3 were employees in billing and coding. SAC ¶¶ 69 n.8, 71 n.11, 73 n.12. Therefore, despite the SAC's broad-sweeping generalizations that the Company was "just very unorganized with coding and billing," "documentation is not up to par," and "everything was manual" (SAC ¶¶ 69, 71–72), the allegations lack any link to the allegedly misleading statements in Cano Health's publicly reported financial statements. *See Climo v. Office Depot, Inc.*, 2012 WL 13018593, at *17 (S.D. Fla. May 24, 2012) ("The information attributed to the Confidential Witnesses is vague, irrelevant and fails to link the Individual Defendants to any fraud."). In fact, FE 1 admits that they had no visibility into publicly reported financials, alleging that "[d]ata analytics and predictive analytics flowed through one person, Pedro Cordero" and the "[f]inancial output of our operations" was "accessible only through Cordero." SAC ¶ 70. At best, the FEs' alleged statements are their own opinions that Cano Health's billing and coding procedures were sub-par and are not sufficiently tethered to publicly reported MRA revenue. SAC ¶¶ 69, 71. Such "conclusory opinions" as these "do not give rise to an inference of scienter." *In re Royal Caribbean Cruises*, 2013 WL 3295951, at *18.[7]

*Third*, the FEs' statements do not even clearly pertain to the class period. FE 3 did not even work at Cano Health when it went public, and thus, did not work at Cano Health during the class period. *Compare* SAC ¶ 72 n.12 (alleging that FE 3 "was a medical coder from January 2020 through March 2021"), *with* SAC ¶ 1 (class period commencing on May 7, 2021). For this reason

---

[7] Regarding the alleged "upcoding" and other coding practices at Cano Health, SAC ¶¶ 73–79, the SAC has failed to allege how such vaguely described practices caused Cano Health to "overestimate[] the MRA estimate," *see id.* ¶ 80. Further, none of the FEs alleges that the Individual Defendants instructed them to engage in any upcoding or other improper practices.

16

alone, the allegations attributed to FE 3 should be disregarded entirely. *Hattaway v. Apyx Med. Corp.*, 2023 WL 4030465, at \*11 (M.D. Fla. Jun. 15, 2023) (confidential witness not employed by company during class period lacked insight into company's class period operations). FE 2 worked at Cano Health for only four months very early in the class period, from August 2021 to November 2021. SAC ¶ 71 n.11. And although FE 1 worked at Cano Health until December 2022, FE 1 only vaguely alleges that processes were manual for some unspecified portion of the class period and admits that the Company's accounting department had adopted Oracle accounting software before FE 1's departure. SAC ¶ 69 (alleging, "It changed, possibly in the last year I was there. I know accounts payable implemented Oracle."). The FEs' statements lack the "personal knowledge" and "reliability" that the PSLRA requires, and the allegations attributed to them do not contribute to a strong inference of scienter. *Zucco Partners, LLC*, 552 F.3d at 995.

      **C.**      **The Delaware Litigation is Irrelevant to Plaintiff's Claims.**

Plaintiff continues to attempt to tie the Delaware Complaint, which involves completely different issues, to the allegations at hand. *See, e.g.*, SAC ¶¶ 53–54.[8] However, as explained in Defendants' Motion to Strike, DE. No. 60, and Reply Memorandum in Support of Defendants' Motion to Dismiss, D.E. No. 61, the Delaware Complaint was a now-dismissed dispute among current and former directors of Cano Health in the context of a proxy contest, in which a faction of Cano Health's then-directors alleged breaches of fiduciary duty relating to certain allegedly undisclosed related-party transactions involving Dr. Hernandez. D.E. No. 61 at 12. The Delaware Complaint is devoid of allegations concerning (i) MRA revenue recognition, (ii) the Company's non-compliance with ASC 606—or any GAAP provision, or (iii) a failure of defendants to disclose

---

[8] The SAC's attempt to incorporate the entirety of the Delaware Complaint and the Vice Chancellor's decision denying Plaintiffs' request for preliminary injunction as Exhibits to the SAC should be disregarded as both improper and irrelevant.

information to Cano Health's outside auditors. *Id.* Plaintiff's incorporation of this entirely unrelated litigation is nothing more than a transparent attempt to disparage Dr. Hernandez generally and also to try to connect his departure to the statements made by his successor on August 10, 2023, which, for the reasons set forth in Section D, *infra*, do not supply the requisite strong inference of scienter that Plaintiff has tried, and failed, to supply.[9]

> **D.      The Departures Of Cano Health Executives Do Not Indicate Scienter.**

Plaintiff attempts to connect the resignations of Defendants Hernandez and Koppy to his allegations in order to manufacture the strong inference of scienter that is otherwise lacking in the SAC. *See* SAC ¶¶ 9, 13, 55, 61 n.7. Plaintiff points to (i) the timing of Dr. Hernandez's resignation as CEO in June 2023, after the unsuccessful proxy contest in Delaware, as prompting a changing of the guard that led to the discovery of deficiencies in Cano Health's accounting processes; and (ii) Mr. Koppy's resignation in September 26, 2023 as indicative of failures in the Company's accounting processes. *Id*. Even if Dr. Hernandez's and Mr. Koppy's resignations are the result of leadership failures (and as to either, Plaintiff cites no such admission in the Company's disclosures[10]), "pleading scienter requires more than pleading a link between bad news and an executive's resignation." *In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 119 (3d Cir. 2018). "Changes in leadership are only to be expected when leadership fails. That is not, in itself, a symbol of fraud. Corporate resignations do not strengthen an inference of scienter, when, as here, the allegations do not cogently suggest that the resignations resulted from the relevant executives'

---

[9] Defendants refer the Court to and incorporate herein their Motion to Strike and reply memorandum in support of that motion detailing more fully why the Court should disregard—and strike—Plaintiff's improper allegations copied from the Delaware litigation. D.E. Nos. 65, 69.

[10] Indeed, as to Mr. Koppy, the SAC itself offers an alternative reason for Mr. Koppy's departure, *i.e.*, that he was replaced by "a Cano employee with a long [12-year] relationship with Kent." SAC ¶ 13 & n.7. Changes in corporate leadership often result in additional promotions and departures.

knowing or reckless involvement in a fraud." *Id.* at 119–20 (resignations close in time to release of "bad news stemming from the Company's accounting problems" did not support scienter).

With respect to Mr. Koppy, his resignation on September 26, 2023 is no indication that Mr. Koppy knew or was severely reckless in not knowing that any of Cano Health's statements was false when made. Similar to in *City of Hollywood Police Officers' Retirement Systems v. Citrix Systems, Inc.*, Plaintiff insinuates that the circumstances of Mr. Koppy's departure "include alleged systemic operational shortcomings due to poor performance, internal company problems, and inaccurate forecasting." 649 F. Supp. 3d 1256, 1275 (S.D. Fla. 2023) (appeal filed Sept. 6, 2023). The *Citrix* court concluded that, "Even assuming that [defendant] caused these adverse consequences due to poor management, this does not amount to intentional or reckless misconduct at the level of fraud." *Id.* at 1276. The same is true here concerning Mr. Koppy.

Moreover, even if Dr. Hernandez's resignation amounted to a recognition that the Company needed a change in leadership, Plaintiff's efforts to malign Dr. Hernandez by attempting to incorporate entirely unrelated matters (SAC ¶¶ 53-56) have nothing to do with the securities fraud alleged in this case—specifically relating to how the Company has historically accounted for and estimated MRA revenue. There has never been any (and still is no) allegation that Dr. Hernandez had any involvement with those processes. *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1172 (S.D. Fla. 2004) (complaint "fails to plead any connection between the resignation of these two employees and the accounting errors that led SportsLine to restate its financial statements" and plaintiffs do not "allege that the employees who resigned were part of the alleged fraud or that they knew about or approved of any misconduct on the part of other employees."). *See also Hertz Glob. Holdings, Inc.*, 905 F.3d at 118 (no scienter where "the FAC lacks allegations that those resignations were a result of the Individual Defendants' involvement

19

in a systemic fraud"). Therefore, the resignations of Mr. Koppy and Dr. Hernandez add nothing to Plaintiff's futile efforts to plead scienter. *See Citrix Sys.*, 649 F. Supp. 1275–76.

## III.   THE SAC IS FUTILE BECAUSE IT FAILS TO PLEAD LOSS CAUSATION

The SAC is also futile for failure to plead the independent element of loss causation. Just as no fraud was revealed in the alleged "partial" February 28, 2022 corrective disclosure in the FAC, which revealed only delay in filing the Form 10-K and the need for an adjustment to Cano Health's accounting methodology for MRA revenue (SAC ¶ 137; *see also* D.E. No. 54 at 26–28; D.E. No. 61 at 13–15), no fraud was revealed on August 10, 2023. The disclosure that Cano Health's actual 2Q 2023 MRA revenue was lower than previous estimates is not a revelation "to the market [of] the pertinent truth," that the law requires. *See Meyer v. Greene*, 710 F.3d 1189, 1196–97 (11th Cir. 2013) (affirming dismissal). Courts have rejected the theory that a failure to meet financial forecasts pleads loss causation. *See, e.g.*, *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 678–79 (S.D.N.Y. 2007) ("[T]he mere failure to meet earnings forecasts is insufficient to establish loss causation."). The Court here should reach the same conclusion.[11]

## IV.   CONCLUSION

For each of the foregoing reasons, as well as those set forth in Defendants' Motion to Dismiss the Amended Complaint and Reply in support thereof (D.E. Nos. 54, 56, 61) and Defendants' Motion to Strike and Reply in support thereof (D.E. Nos. 60, 64) incorporated by reference herein, Plaintiff's motion for leave to amend should be denied and this case dismissed with prejudice. *Mizzaro*, 544 F.3d at 1255.

---

[11] Because the SAC fails to allege a violation of Section 10(b), Plaintiff's Section 20(a) control person claim also should be dismissed. *In re Royal Caribbean Cruises*, 2013 WL 3295951, at *9.

Dated: November 8, 2023

Respectfully submitted,

By: */s/ Peter R. Goldman*
Peter R. Goldman (FBN 860565)
Nina C. Welch (FBN 118900)
Danna Khawam (FBN 1025114)
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
100 S.E. 3rd Avenue, Suite 2700
Fort Lauderdale, FL 33394
Telephone: (954) 745-5239
Facsimile: (954) 761-8135
peter.goldman@nelsonmullins.com
nina.welch@nelsonmullins.com
danna.khawam@nelsonmullins.com

By: */s/ Deborah S. Birnbach*
**GOODWIN PROCTER LLP**
Deborah S. Birnbach (*pro hac vice*)
Katherine McKenney (*pro hac vice*)
100 Northern Avenue
Boston, MA 02210
Tel: (617) 570-1000
Fax: (617) 523-1231
dbirnbach@goodwinlaw.com
kmckenney@goodwinlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November, 2023, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will furnish a copy to all counsel of record.

*/s/ Peter R. Goldman*
Peter R. Goldman

21