**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-20827-CIV-WILLIAMS/SANCHEZ**

ALBERTO GONZALEZ, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

      v.

CANO HEALTH, INC. f/k/a JAWS
ACQUISITION CORP., MARLOW
HERNANDEZ, and BRIAN D. KOPPY,

        Defendants,

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR LEAVE
TO AMEND THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.       THE SAC ADEQUATELY PLEADS SCIENTER ................................................. 2

           A.     The Multiple, Systemic Accounting Improprieties Evidence, At a Minimum, Severe Recklessness ................................................................. 3

           B.     The Confidential Witnesses' Accounts Bolster A Strong Inference of Scienter By Confirming Defendants' Own Admissions ............................ 6

           C.     The Delaware Litigation Supports That Defendant Hernandez Acted With Scienter ...................................................................................................... 8

           D.     The Individual Defendants' Departures Soon After The Truth Emerged Supports An Inference of Scienter .............................................................. 8

    II.      THE SAC ADEQUATELY PLEADS LOSS CAUSATION ................................. 9

CONCLUSION ................................................................................................................. 10

i

## TABLE OF AUTHORITIES

CASES

*Brophy v. Jiangbo Pharm., Inc.*,
  781 F.3d 1296 (11th Cir. 2015) .............................................................................. 8

*City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*,
  2023 WL 1998174 (S.D. Fla. Feb. 13, 2023) .......................................................... 4

*City Pension Fund for Firefighters and Police Officers in City of Miami Beach v. AraCruz Cellulose S.A.*,
  41 F. Supp. 3d 1369 (S.D. Fla. 2011) .................................................................. 8, 9

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).................................................................................................. 9

*FindWhat Inv'r Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) .................................................................... 2, 9, 10

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) .............................................................................. 6

*George v. China Auto. Sys., Inc.*,
  2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012)........................................................... 5

*Hall v. The Children's Place Retail Stores, Inc.*,
  580 F. Supp. 2d 212 (S.D.N.Y. 2008)..................................................................... 8

*Hattaway v. Apyx Med. Corp.*,
  2023 WL 4030465 (M.D. Fla. June 15, 2023)......................................................... 7

*In re AFC Enterprises, Inc. Sec. Litig.*,
  348 F. Supp. 2d 1363 (N.D. Ga. 2004) .................................................................... 3

*In re AOL Time Warner, Inc. Sec. Litig.*,
  503 F. Supp. 2d 666 (S.D.N.Y. 2007)................................................................... 10

*In re Cannavest Corp. Sec. Litig.*,
  307 F. Supp. 3d 222 (S.D.N.Y. 2018)..................................................................... 5

*In re Catalina Mktg. Corp. Sec. Litig.*,
  390 F. Supp. 2d 1110 (M.D. Fla. 2005).................................................................. 3

*In re Equifax Inc. Sec. Litig.*,
  357 F. Supp. 3d 1189 (N.D. Ga. 2019)................................................................... 9

*In re Fleming Cos. Inc. Sec. & Deriv. Litig.*,
  2004 WL 5278716 (E.D. Tex. June 16, 2004)................................................................ 4

*In re Hamilton Bankcorp., Inc. Sec. Litig.*,
  194 F. Supp. 2d 1353 (S.D. Fla. 2002) ...................................................................... 5

*In re JDN Realty Corp. Sec. Litig.*,
  182 F. Supp. 2d 1230 (N.D. Ga. 2002) ...................................................................... 8

*In re New Century*,
  588 F. Supp. 2d 1206 (C.D. Cal. 2008) ...................................................................... 5

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 622 (S.D.N.Y. 2014)........................................................................ 5

*In re Paincare Holdings Sec. Litig.*,
  541 F. Supp. 2d 1283 (M.D. Fla. 2008)...................................................................... 5

*In re PSS World Med., Inc. Sec. Litig.*,
  250 F. Supp. 2d 1335 (M.D. Fla. 2002)...................................................................... 3

*In re Resideo Techs., Inc., Sec. Litig.*,
  2021 WL 1195740 (D. Minn. Mar. 30, 2021) ........................................................... 5

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
  2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) ........................................................... 7

*In re Sadia, S.A. Sec. Litig.*,
  643 F. Supp. 2d 521 (S.D.N.Y. 2009)........................................................................ 8

*In re Scientific Atlanta, Inc. Sec. Litig.*,
  754 F. Supp. 2d 1339 (N.D. Ga. 2010) ...................................................................... 4

*In re Seitel, Inc. Sec. Litig.*,
  447 F. Supp. 2d 693 (S.D. Tex. 2006) ...................................................................... 3

*In re WageWorks, Inc., Sec. Litig.*,
  2020 WL 2896547 (N.D. Cal. June 1, 2020) ........................................................... 8

*In re: Ebix, Inc. Sec. Litig.*,
  898 F. Supp. 2d 1325 (N.D. Ga. 2012) ...................................................................... 3

*Katyle v. Penn Nat. Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) .................................................................................... 10

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ................................................................................ 3, 6

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000).......................................................................................... 4

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) .................................................................................... 9

*Stocke v. Shuffle Master, Inc.*,
  615 F. Supp. 2d 1180 (D. Nev. 2009)........................................................................... 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. (2007)......................................................................................................... 2, 3

*Yannes v. SCWorx Corp.*,
  2021 WL 2555437 (S.D.N.Y. June 21, 2021) ............................................................. 8

## STATUTES

15 U.S.C. § 78u-4(b)(2) ..................................................................................................... 2

## **INTRODUCTION**

Defendants[1] do not cite any undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, or undue prejudice as a basis to deny Plaintiff's motion for leave to amend the amended class action complaint (the "FAC," Dkt. No. 51). Instead, they claim such amendment would be futile based on mischaracterizations of the facts and allegations in the proposed Second Amended Complaint ("SAC," Dkt. No. 65-1).

Following the briefing on the motion to dismiss the FAC, the Company admitted that Cano's revenue recognition processes had limited predictive power because they were overly manual, fraught with errors, and suffered from data variability and gaps in real-time data reporting. On August 10, 2023, Cano revealed a $44 million charge against its Q2 2023 results to reflect the overstatement of previously reported revenue throughout *fiscal 2022*, which amounts to a restatement of prior financial reports. Regardless of whether the $44 million charge is termed a "restatement" or a "reconciliation," Defendants lacked a reasonable basis for its revenue statements because of the systemic deficiencies in Cano's revenue recognition process. Specifically, as the Company's new CEO, Mr. Kent, admitted soon after taking the helm from the embattled, self-dealing former CEO (Defendant Hernandez), Cano suffered from "process issues that have affected our ability to project our performance" in that "back-end processes and the ways that data from those processes inform our MRA estimates" "were overly manual" and "provided limited predictive power." In fact, Mr. Kent even admitted that the "miss" in revenue from Q2 2023, which was driven by the $44 million charge, was the result of "a very tedious and manual process" that was "fraught with all kinds of errors." On this August 10, 2023 disclosure, the public finally learned the truth about Cano and the Company's stock fell 73%.

Not only is Defendants' securities fraud demonstrated by these admissions, but multiple former employees confirm that the internal control issues were widespread and apparent throughout the Class Period. As such, it is not surprising that Defendants do not challenge the falsity of the alleged materially false and/or misleading statements. Instead, tacitly admitting that the SAC sufficiently pleads claims of securities fraud, Defendants spill much ink about the

---

[1] Capitalized terms retain the meaning set forth in Plaintiff's opening memorandum of law in support of his Motion For Leave To Amend The Class Action Complaint (Dkt. No. 65). "Individual Defendants" refers to Defendants Marlow Hernandez ("Hernandez") and Brian Koppy ("Koppy").

1

allegations in the FAC (which Plaintiff seeks to supersede) and insinuate that the SAC's inclusion of recent disclosures is an improper "shift [in the] theory of liability." *See, e.g.*, Opp. at 2. But there is nothing wrong with Plaintiff's allegations evolving with the evidence. Regardless, none of Defendants' aspersions are relevant to whether amendment is futile.

Moreover, Defendants ignore that the full truth about Cano's accounting improprieties emerged only after Defendant Hernandez exited the Company amid credible accusations (confirmed by substantial discovery) that he engaged in undisclosed related party transactions to enrich himself. The factual findings in the related litigation[2] paint a picture of executive management motivated to benefit themselves by omitting to disclose the truth about Cano's financial condition—which comports with Plaintiff's allegations that Defendants issued materially misleading statements about Cano's revenue to ensure the Company effectuated a business combination through which the Individual Defendants received lucrative stock options.

In sum, Defendants' only serious attempt to dispute the propriety of Plaintiff's motion to amend is to claim that amendment would be futile because the SAC fails to allege scienter. But the Company's own admissions, which are further confirmed by former employees, demonstrate the Defendants were, at a minimum, severely reckless in making their false Class Period statements. As such, the motion to amend should be granted.

**ARGUMENT**

## I.   THE SAC ADEQUATELY PLEADS SCIENTER

To plead scienter, a complaint must "state with particularity facts giving rise to a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). Scienter encompasses recklessness, and in this Circuit, scienter is sufficiently alleged by facts demonstrating "an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1300 (11th Cir. 2011).

An inference of scienter is "strong" if it is "cogent and compelling" and "*at least as likely as* any plausible opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at

---

[2] On June 14, 2023, Vice Chancellor Paul Fioravanti, Jr. issued an order weighing 250 exhibits and deposition testimony from 7 witnesses to confirm numerous instances where Cano entered into undisclosed transactions that enriched Defendant Hernandez and his family (the "Delaware Litigation"). SAC at ¶¶53-54. Citations to "¶__" hereinafter refer to the SAC.

2

324, 328 (2007) (emphasis in original); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1249 (11th Cir. 2008) ("the question before us boils down to whether a reasonable person *would* infer that there was at least a fifty-fifty chance that the individual defendants knew about the alleged fraud (or were severely reckless in not knowing about it) based on its nature, duration, or amount") (emphasis in original).[3] The inference "need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Tellabs*, 551 U.S. at 324.

When competing inferences are shown, the tie goes to the plaintiff. *Id.* The relevant inquiry "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 310, 322 (emphasis in original).

### A.    The Multiple, Systemic Accounting Improprieties Evidence, At a Minimum, Severe Recklessness

Incredibly, Defendants argue that their oversight to test their MRA revenue estimation process is, at best, negligence—ignoring that MRA accounts for more than 80% of Cano's revenue, the Individual Defendants had already been notified by the auditor that the Company inaccurately reports revenue, and Cano differed from its peers who waited until CMS's risk adjustment process occurred to accurately record revenue. *See* Opp. at 11-12; ¶¶35, 45, 48, 52; *In re: Ebix, Inc. Sec. Litig.*, 898 F. Supp. 2d 1325, 1345-47 (N.D. Ga. 2012) ("serious billing problems" and "internal controls" are "naturally within the purview of the company's top executives" and they had "specific communications . . . regarding these issues" to support scienter).

The "magnitude of the [misstatements] for the entire time that [Cano] was a public company suggest an extreme departure from ordinary care[.]" *In re AFC Enterprises, Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1375 (N.D. Ga. 2004). The disclosures on February 28, 2022, March 14, 2022 and August 10, 2023 collectively demonstrate that Cano has inaccurately reported MRA revenue for years, at times overstating its profitability by nearly 60%. ¶¶45, 51, 58-59; *see In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 705 (S.D. Tex. 2006) (30% overstatement of revenue "significantly contributes to a finding of scienter"); *In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp. 2d 1110, 1114 (M.D. Fla. 2005) (43% overstatement of income). That the Company did not accurately report revenue for years supports an inference of scienter. *In re PSS World Med., Inc.*

---

[3] Unless otherwise stated, all emphasis in bold and italics is added, and all internal citations and quotation marks are omitted.

3

*Sec. Litig.*, 250 F. Supp. 2d 1335, 1350 (M.D. Fla. 2002) ("multiple, systematic violations of GAAP" demonstrates that "it was so obvious that [executives] must have been aware of it").

Direct evidence of the Individual Defendants' knowledge is not required, contrary to Defendants' contention. *See* Opp. at 12; *In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1361 (N.D. Ga. 2010) (summary judgment precluded, noting that "Plaintiffs provide no direct evidence on this issue, [but] it is well established that circumstantial evidence is sufficient to support a strong inference of scienter"). A strong inference of scienter can be inferred from the facts that MRA revenue constituted the majority of the Company's revenue and the Individual Defendants were on notice of incorrect revenue recognition. *City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*, 2023 WL 1998174 (S.D. Fla. Feb. 13, 2023), *report and recommendation adopted by* 2023 WL 2601816 (S.D. Fla. Mar. 22, 2023) (inferring CFO's scienter from circumstantial allegations that "the accounting department was understaffed and followed very loose accounting processes and procedures" and that accounting rule was inconsistently applied for similar transactions) ("*Celsius*"); *see also Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) (a strong inference of scienter may arise when defendants "knew facts or had access to information suggesting that their public statements were not accurate"); *In re Fleming Cos. Inc. Sec. & Deriv. Litig.*, 2004 WL 5278716, at *11 (E.D. Tex. June 16, 2004) (scienter inferred where executives "failed to check information they had a duty to monitor").

Defendants' assertion that the material weaknesses reported in March 2022 and August 2023 are "entirely separate" is, frankly, perplexing. Opp. at. 12-13. Both material weaknesses relate to revenue recognition. ¶¶61-65, 132. It strains credulity to suggest that the Company remediated its earlier-disclosed weakness as to the incorrect interpretation of GAAP standards for revenue recognition and knowledgeable accounting personnel, yet somehow had a distinct, unrelated weakness for Cano's billing and coding process for its core business. The earlier weakness relates to the "misapplication of GAAP that resulted in a restatement [to] correct[] . . . accounting for Medicare Risk Adjustment ('MRA') revenue[.]" ¶132. The recently disclosed weakness is an admitted failure to corroborate information from the health plan and from CMS to ensure data is reliable, resulting in "all kinds of errors" in recognizing MRA revenue. ¶¶64-65. Analysts also understood the two material weaknesses to be related. *See* ¶64 (asking "how this is now the second time [Cano is] off by a large amount in this [MRA] process").

As such, Cano was clearly not employing personnel with "an appropriate level of knowledge, experience and oversight . . . to ensure proper selection and application of GAAP." *Cf.* ¶133 (claiming to have remediated the earlier-disclosed weakness). This failure to remediate weaknesses regarding revenue recognition supports scienter. *See In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 246 (S.D.N.Y. 2018) ("poor internal controls over a sustained period of time" supports scienter); *Stocke v. Shuffle Master, Inc.*, 615 F. Supp. 2d 1180, 1191 (D. Nev. 2009) (similar). There is no basis to suggest that Defendants had a good faith belief that the Company's MRA estimate processes had predictive power. Tellingly, Defendants do not challenge Plaintiff's allegations that Cano misrepresented that it had remediated its material weaknesses, underscoring that the reported material weaknesses are related.

Mr. Kent's concessions on August 10, 2023 do not save Defendants either. *See* Opp. at 12 (incorrectly contending that the "Q2 2023 Transcript . . . undermines Plaintiff's theory entirely"). His admissions—that Cano's "back-end processes [that] inform [its] MRA estimates" were "overly manual" and "provided limited predictive power" and the contemporaneous disclosure that fiscal 2022 revenue was overstated by $44 million—***confirm*** Plaintiff's theory that Defendants knew or were severely reckless in not knowing the egregiously deficient revenue recognition controls. ¶¶60, 64; *cf. In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1292-93 (M.D. Fla. 2008) ("false reason for the accounting errors *immediately after* acknowledging the accounting errors led to the massive restatement supports an inference of scienter") (emphasis in original). That the deficient internal controls were reported by Cano's new CEO soon after his appointment supports an inference that the deficiencies were egregious and the Individual Defendants were, at least, severely reckless in ignoring them. *In re New Century*, 588 F. Supp. 2d 1206, 1231 (C.D. Cal. 2008) ("[T]he fact that the new CEO . . . discovered the accounting violations within months of taking the position is a strong indication that these accounting violations were obvious enough that a new officer found them quickly."); *accord In re Resideo Techs., Inc., Sec. Litig.*, 2021 WL 1195740, at *6 (D. Minn. Mar. 30, 2021); *George v. China Auto. Sys., Inc.*, 2012 WL 3205062, at *14 (S.D.N.Y. Aug. 8, 2012).

Mr. Kent's admission that the Company had not been "correlating and corroborating . . . what is received by the health plan and what is received by CMS" is damning. ¶¶64-65. The failure to maintain adequate internal controls, combined with the facts of the nature and magnitude of accounting failures, supports a strong inference of scienter. *In re Hamilton Bankcorp., Inc. Sec.*

5

*Litig.*, 194 F. Supp. 2d 1353, 1357-58 (S.D. Fla. 2002); *In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 633 (S.D.N.Y. 2014) ("A lack of adequate internal controls may support the inference of scienter."). Rather than confront these facts, Defendants claim without support that Plaintiff is required to allege the Individual Defendants participated in the billing and coding practices that led to inaccurate reporting of revenue. Opp. at 11-14; *but see Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1249 (11th Cir. 2008) ("The lack of direct evidence connecting the defendants to the alleged fraud is not fatal").

**B.      The Confidential Witnesses' Accounts Bolster A Strong Inference of Scienter By Confirming Defendants' Own Admissions**

The former employees ("FEs") added in the SAC confirm the Company's own admissions that Cano wholly lacked adequate procedures to report revenue as a public company. Specifically, FE 1 was the Chief Administration Officer at Cano from August 2021 to December 2022 and recounts that, even after the Company "went public, they were still running manual" for "Everything" including "Billing and coding" and "Accounting." ¶69. FE 1 continued that "there was no data governance as to the methodology, and no data definitions," so "no one has the capacity to evaluate, assess or audit the information – to make sure the information was actual and factual." ¶70. FE 2 and FE 3 worked in coding and corroborate that "they had to do a lot of guessing on the backend, which is billing and coding," which directly impacted financial reports because "[t]here are nuances to each of these codings that make a big difference in how Medicare recognizes it." ¶¶71-73. Similarly, FE 1 stated that these changes to codes "didn't pass the Medicare audit, and they didn't get the RAF score they thought they would," indicating that Centers for Medicare and Medicaid Services concluded the Company overstated its services and thereby overstated its revenue.[4] ¶77.

---

[4] Contrary to Defendants' suggestion that "either management or the accountant missed something" (Opp. at 13-14), the FEs' accounts demonstrate that the Company was devoid of procedure such that accounting employees had to "guess[]" the value of the services provided, ¶¶69-80. This is a far cry from the allegations compared by Defendants in *Garfield v. NDC Health Corp.*, where plaintiff had not shown any irregularities alerted the auditor of improper accounting. 466 F.3d 1255, 1269-70 (11th Cir. 2006) ("DeKalb may not establish scienter by alleging that the auditor would have discovered the fraud had it not violated GAAS."). Moreover, unlike *Garfield*, Plaintiff does not rely on accounting violations "standing alone" to plead scienter; here, Plaintiff alleges scienter based on, *inter alia*, the Company's own admissions, executive departures, and former employee testimony. *See id.* at 1263, 1269 ("NDC's intention to restate its accounts is not alleged" in the operative complaint).

Defendants' principal challenges against the allegations by FEs rely on this Court's decision, *In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) ("*Royal Caribbean*"). Opp. at 14-16. But Defendants overlook key differences that render that case inapposite:

- In *Royal Caribbean*, the Court had already dismissed the bulk of the case on falsity grounds as forward-looking statements protected by the PSLRA safe harbor, and it addressed, "in an abundance of caution," whether defendants possessed facts that conflicted with their public statements. 2013 WL 3295951 at *12-17. Already wary that the complaint alleged a theory of fraud, the Court unsurprisingly concluded the allegations did not support a strong inference of scienter. Here, Defendants do not contest the falsity of their statements during the Class Period. *See generally* Opp.

- There, stock sales and "hands on" executives were insufficient to establish that officers possessed specific, non-public facts about the company's bookings. 2013 WL 3295951, at *12, *19. Here, a strong inference of scienter is supported by the nature and magnitude of the restatement; the core operations doctrine; the motivation to defraud to effectuate a business combination; the fact that the Individual Defendants were already on notice by the auditor that Cano's revenue recognition was non-compliant; and, most importantly, the Company's concessions that it lacked effective processes to predict MRA revenue. Sec. II.A., *supra*; *see also* Dkt. No. 57 at 15-21. *Royal Caribbean* lacked any such allegations.

- There, the plaintiff was left to rely on confidential witnesses to provide a strong inference of scienter, which is why the Court required direct interaction with the executives and specific facts to demonstrate defendants' knowledge of the company's operations. 2013 WL 3295951, at *18. Here, the FEs *support* the reasonable inference drawn from the SAC's remaining allegations and from the Company's own admissions, but the FEs are not the sole basis to plead scienter.

Defendants also improperly view each FE in isolation. Opp. at 16-17. Their only basis to discount the accounts of former employees based on their tenure is a case where plaintiff relied solely on *one* confidential witness who left a year before the class period, thus had "no insight" into operations during the class period. *Hattaway v. Apyx Med. Corp.*, 2023 WL 4030465, at *11 (M.D. Fla. June 15, 2023) (Opp. at 17). Here, FE 3 was employed by Cano from January 2020 to

March 2021, FE 2 from August 2021 to November 2021, and FE 1 from August 2021 to December 2022, . ¶ 69 n.8; ¶ 71 n.11; ¶ 72 n.12. Collectively, their corroborating accounts demonstrate that the pervasive internal control deficiencies existed throughout the Class Period.

### C. The Delaware Litigation Supports That Defendant Hernandez Acted With Scienter

Defendants acknowledge that the Delaware Litigation is relevant to the extent it connects Defendant Hernandez's departure to the improper revenue recognition. Opp. at 18; *In re JDN Realty Corp. Sec. Litig.*, 182 F. Supp. 2d 1230, 1242 (N.D. Ga. 2002) (CEO who entered secret promissory notes was, at a minimum, severely reckless in not knowing that statements regarding executive compensation and related party transactions were incomplete). Plaintiff alleges that it was only after Defendant Hernandez was ousted that Mr. Kent took over the Company and disclosed the rampant accounting irregularities at Cano. ¶¶54-57. Defendant Hernandez departed following credible allegations that he engaged in undisclosed related party transactions, which is relevant to show that he had a history of withholding material information from investors. The nature of the lawsuit and the result support an inference of scienter. *City Pension Fund for Firefighters and Police Officers in City of Miami Beach v. AraCruz Cellulose S.A.* 41 F. Supp. 3d 1369, 1397 (S.D. Fla. 2011) (resignation of CEO responsible for misleading statements sued by shareholders for company's derivative losses relevant to scienter) ("*AraCruz*").

### D. The Individual Defendants' Departures Soon After The Truth Emerged Supports An Inference of Scienter

Defendants' arguments regarding the sufficiency of allegations regarding the Individual Defendants' departures can be easily dispensed. Opp. at 18-20. Courts overwhelmingly conclude that the "close temporal proximity" between executive resignations and a restatement "weigh against an innocent inference that defendants resigned for unrelated personal or business reasons." *In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at *6 (N.D. Cal. June 1, 2020).[5] Here, Defendant Hernandez was ousted two days after a court found that he concealed the truth about numerous financial transactions, and Defendant Koppy "stepped down" weeks after Mr. Kent

---

[5] *Accord Yannes v. SCWorx Corp.*, 2021 WL 2555437 at *6 (S.D.N.Y. June 21, 2021) ("[T]he timing and circumstances of resignations . . . can add to a pleading of circumstantial evidence of fraud."); *In re Sadia, S.A. Sec. Litig.*, 643 F. Supp. 2d 521, 523-24, 534 (S.D.N.Y. 2009); *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008); *see also Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1305 (11th Cir. 2015) (similar*)*.

admitted to flawed revenue recognition processes. ¶¶53-55, 61 & n.7; *see also AraCruz*, 41 F. Supp. 3d at 1397 (scienter supported by CEO exit announced contemporaneously with admission that transactions violated company policy).

*     *     *

Defendants' proffered inference is unsupported and is certainly not "more compelling" than the fraudulent inference. Opp. at 13. Specifically, Defendants claim that Cano "did not have back-end billing and coding processes that kept pace with its increasing size and that those practices left something to be desired." *Id.* That Cano grew is not a fact alleged in the SAC. *See* Opp. at 13 n.5 (citing exhibits to improperly assert increase in members over 18-month period).[6] Even if it were properly considered, membership growth would not significantly impact the efficacy of revenue recognition procedures—particularly where Cano purportedly "remediated" the material weaknesses with respect to revenue recognition by the end of that period. *Compare* ¶133, *with* Opp. at 13 n.5. Moreover, the FEs employed by Cano over that purported growth period recount that, throughout the Class Period, the Company had manual billing processes resulting in data that could not be validated. ¶¶69-73 & n.8, 11-12. Plaintiff's prior arguments, combined with the SAC's allegations of an additional restatement and of inadequate internal controls throughout the Class Period, support a strong inference of scienter. *See generally* Dkt. No. 57 at 15-21.

## II.   THE SAC ADEQUATELY PLEADS LOSS CAUSATION

"To prove loss causation in a section 10(b) claim, a plaintiff must offer proof of a causal connection between the misrepresentation and the investment's subsequent decline in value." *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1247 (N.D. Ga. 2019); *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). "The loss causation element is only subject to Rule 8's notice pleading standard . . ., not the heightened pleading standards of the PSLRA." *In re Equifax*, 357 F. Supp. 3d at 1248, 1249. Loss causation can be demonstrated by (1) identifying a corrective disclosure; (2) showing a stock price drop as a result of the corrective disclosure; and (3) eliminating other possible explanations for the price drop. *FindWhat*, 658 F.3d at 1311-12. Plaintiff has sufficiently pled loss causation.

---

[6] *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("In a motion to dismiss a securities action, a court may consider the contents of public disclosure documents which are required to be filed with the SEC and are actually so filed. ***The documents may only be considered to show their contents, not to prove the truth of matters asserted therein***.").

Defendants ignore Plaintiff's actual loss causation allegations, instead generalizing that the difference between actual results and prior estimates is not a revelation. Opp. at 20. Even if this were supported by case law (it is not), this is not what Plaintiff is alleging. Cano's disclosure of a $44 million charge against its fiscal 2022 revenue and of deficient internal controls with respect to the processes that "inform our MRA estimates," including that its revenue recognition processes had limited predictive power because they were overly manual, fraught with errors, and suffered from data variability and gaps in real-time data reporting, caused the Company's stock to decline by 73%. ¶¶138-39.[7] These are "facts to the market that are new, that is, publicly revealed for the first time." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 473 (4th Cir. 2011). This more than satisfies the loss causation requirement that new information was provided to the market that resulted in a stock drop. *See FindWhat*, 658 F.3d at 1311 n. 28 (explaining that a corrective disclosure "obviously must disclose new information").

## CONCLUSION

Defendants have now had the opportunity to argue all of the reasons they believe that the SAC would not be able to survive a motion to dismiss under Rule 12(b)(6). By failing to argue that the SAC is deficient on the basis of falsity, Defendants concede that falsity is adequately pled.[8] As such, the only issues before the Court are whether Plaintiff has sufficiently alleged scienter and loss causation. Plaintiff's arguments herein demonstrating that amendment is not futile as to these two elements also necessarily means that Plaintiff has sufficiently pled his *prima facie* case for securities fraud. Plaintiff's motion to amend should be granted, the pending motion to dismiss the FAC should be denied as moot, and case should proceed to discovery.

---

[7] Defendants' out-of-circuit cited case lacked any such facts that were actually concealed before the disclosure. *See In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 679 (S.D.N.Y. 2007) ("After searching the Complaint and the plaintiffs' opposition brief, the Court cannot perceive any risk concealed by E & Y's audit opinions that then materialized to cause the plaintiffs' losses."). In fact, Defendants' failure to contest falsity is actually a concession that the disclosure at the end of the Class Period disclosed new facts. (If no new facts were disclosed, then there would be no false statements.)

[8] In a footnote, Defendants make a half-hearted request to dispute falsity at a later date, but they do not identify any basis to dispute falsity or supply any reason why they could not contest it now. *See* Opp. at 9 n.4. Since Defendants have now twice decided not to contest falsity, including on the exact complaint that will become operative if the motion is granted, there is no reason to allow them to make arguments in the future they could have made now.

Dated:  November 15, 2023

Respectfully submitted,

*/s/ Leo W. Desmond*
Leo W. Desmond, Esquire
Florida Bar Number 0041920
**DESMOND LAW FIRM, P.C.**
601 21st Street, Suite 300
Vero Beach, Florida 32960
Telephone: 772.231.9600
lwd@desmondlawfirm.com

*Liaison Counsel for Gudelio Fundora and for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Casey E. Sadler (admitted *pro hac vice*)
Pavithra Rajesh (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Facsimile: 310-201-9160
Email: csadler@glancylaw.com
        prajesh@glancylaw.com

*Counsel for Lead Plaintiff Gudelio Fundora and Lead Counsel for the Class*

11

## **PROOF OF SERVICE**

I hereby certify on this 15th day of November, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Leo W. Desmond*
Leo W. Desmond