# Exhibit 1

Filed Pursuant to Rule 424(b)(3)
Registration No. 333-252414

# PROXY STATEMENT FOR
## EXTRAORDINARY GENERAL MEETING OF JAWS ACQUISITION CORP.
## PROSPECTUS FOR
## 119,783,333 SHARES OF CLASS A COMMON STOCK AND 33,533,333 WARRANTS OF JAWS ACQUISITION CORP. (AFTER ITS DOMESTICATION AS A CORPORATION INCORPORATED IN THE STATE OF DELAWARE, WHICH WILL BE RENAMED "CANO HEALTH, INC." IN CONNECTION WITH THE BUSINESS COMBINATION DESCRIBED HEREIN)

———————————

The board of directors of Jaws Acquisition Corp., a Cayman Islands exempted company ("**Jaws**"), has unanimously approved (i) the domestication of Jaws as a Delaware corporation (the "**Domestication**"); (ii) the acquisition of certain equity interests in Primary Care (ITC) Intermediate Holdings, LLC ("**PCIH**") from its sole member, Primary Care (ITC) Holdings, LLC ("**Seller**"), by Jaws through a merger, pursuant to which PCIH will become a direct subsidiary of the Company (as defined below) as a result thereof (the "**Business Combination**"); and (iii) the other transactions contemplated by that certain Business Combination Agreement, dated as of November 11, 2020 (as it may be further amended or supplemented from time to time, the "**Business Combination Agreement**"), by and among Jaws, Jaws Merger Sub, LLC, a Delaware limited liability company ("**Merger Sub**"), Seller and PCIH (a copy of which is attached to this proxy statement/prospectus as *Annex A*. As used in this proxy statement/prospectus, the "**Company**" refers to Jaws as a Delaware corporation by way of continuation following the Domestication and the Business Combination, which, in connection with the Domestication and simultaneously with the consummation of the Business Combination, will change its corporate name to "Cano Health, Inc." As described in this proxy statement/prospectus, Jaws' shareholders are being asked to consider a vote upon (among other things) the Business Combination.

On the effective date of the Domestication and prior to the consummation of the Business Combination, (i) the issued and outstanding Class A ordinary shares, par value $0.0001 per share (the "**Class A ordinary shares**"), of Jaws will convert automatically by operation of law, on a one-for-one basis, into shares of Class A common stock, par value $0.0001 per share, of the Company (the "**Class A common stock**"); (ii) the issued and outstanding redeemable warrants that were registered pursuant to the Registration Statements on Form S-1 (SEC File Nos. 333-237874 and 333-238241) of Jaws (the "**IPO registration statement**") will automatically become redeemable warrants to acquire shares of Class A common stock at an exercise price of $11.50 per share on the terms and subject to the conditions set forth in the applicable warrant agreement (no other changes will be made to the terms of any issued and outstanding public warrants as a result of the Domestication); (iii) each issued and outstanding unit of Jaws that has not been previously separated into the underlying Class A ordinary share and underlying warrant upon the request of the holder thereof, will be cancelled and will entitle the holder thereof to one share of Class A common stock and one-third of one redeemable warrant to acquire one share of Class A common stock at an exercise price of $11.50 per share on the terms and subject to the conditions set forth in the applicable warrant agreement; (iv) each issued and outstanding Class B ordinary share, par value $0.0001 per share (the "**Class B ordinary shares**"), of Jaws will convert automatically by operation of law, on a one-for-one basis without giving effect to any rights of adjustment or other anti-dilution protections, into one share of Class A common stock; and (v) the issued and outstanding warrants of Jaws issued in a private placement will automatically become warrants to acquire shares of Class A common stock at an exercise price of $11.50 per share on the terms and subject to the conditions set forth in the applicable warrant agreement (no other changes will be made to the terms of any issued and outstanding private placement warrants as a result of the Domestication).

Accordingly, this prospectus covers 119,783,333 shares of Class A common stock, 33,533,333 shares of Class A common stock issuable upon exercise of warrants and 33,533,333 warrants to acquire shares of Class A common stock.

Table of Contents

## SHAREHOLDER COMMUNICATIONS

Shareholders and interested parties may communicate with the Jaws Board, any committee chairperson or the non-management directors as a group by writing to the Jaws Board or committee chairperson at Jaws Acquisition Corp., 1601 Washington Avenue, Suite 800, Miami Beach, FL 33139 (if sent before the Business Combination) or with the Company Board or any committee chairperson or the non-management directors as a group, to 9725 NW 117th Avenue, Suite 200, Miami, FL 33178 (if sent after the Business Combination). Each communication will be forwarded, depending on the subject matter, to the applicable board, the appropriate committee chairperson or all non-management directors.

## LEGAL MATTERS

Kirkland & Ellis LLP, New York, NY, has passed upon the validity of the securities of the Company offered by this proxy statement/prospectus and certain other legal matters related to this proxy statement/ prospectus.

## EXPERTS

The financial statements of Jaws Acquisition Corp. as of December 31, 2020 and December 31, 2019, and for the year ended December 31, 2020 and the period from December 27, 2019 (inception) through December 31, 2019, included in this proxy statement/prospectus have been audited by WithumSmith+Brown, PC, an independent registered public accounting firm, as stated in their report thereon and included in this proxy statement/prospectus, in reliance upon such report and upon the authority of such firm as experts in accounting and auditing.

The consolidated financial statements of Primary Care (ITC) Intermediate Holdings, LLC and Subsidiaries at December 31, 2019 and 2020, and for each of the two years in the period ended December 31, 2020, included in the Proxy Statement of Jaws Acquisition Corp., which is referred to and made a part of this Prospectus and Registration Statement, have been audited by Ernst & Young LLP, independent registered public accounting firm, as set forth in their report appearing elsewhere herein, and are included in reliance upon such report given on the authority of such firm as experts in accounting and auditing.

The combined financial statements of Healthy Partners, Inc, HP Enterprises II, LLC, Broward Primary Partners, LLC, and Preferred Primary Care, LLC at December 31, 2019 and 2018, and for each of the two years in the period ended December 31, 2019, included in the Proxy Statement of Jaws Acquisition Corp., which is referred to and made a part of this Prospectus and Registration Statement, have been audited by Ernst & Young LLP, independent auditors, as set forth in their report appearing elsewhere herein, and are included in reliance upon such report given on the authority of such firm as experts in accounting and auditing.

On October 27, 2020, PCIH engaged Ernst & Young LLP, or EY, to serve as its independent registered public accounting firm and dismissed Morrison Brown Argiz & Farra, LLC, or MBAF, who had previously audited its consolidated financial statements for the years ended December 31, 2019 and 2018. The decision to engage EY and dismiss MBAF was approved by PCIH's board of directors.

The audit reports of MBAF on PCIH's consolidated financial statements as of December 31, 2019 and 2018 and for the years then ended did not contain an adverse opinion or disclaimer of opinion, and were not qualified or modified as to uncertainty, audit scope, or accounting principles. In connection with the audit of PCIH's consolidated financial statements as of December 31, 2019 and 2018 and for the years then ended and for the subsequent interim period preceding MBAF's dismissal, there were: (i) no disagreements between PCIH and MBAF on any matters of accounting principles or practices, financial statement disclosure, or auditing scope or procedures, which disagreements, if not resolved to the satisfaction of MBAF, would have caused MBAF to make reference to the subject matter of the disagreements in its report on PCIH's financial statements; and (ii) no "reportable events" within the meaning set forth in Item 304(a)(1)(v) of Regulation S-K.

369

Table of Contents

## Report of Independent Registered Public Accounting Firm

To the Members and the Board of Directors of Primary Care (ITC) Holdings, LLC

**Opinion on the Financial Statements**

We have audited the accompanying consolidated balance sheets of Primary Care (ITC) Intermediate Holdings, LLC and subsidiaries (the Company) as of December 31, 2020 and 2019, the related consolidated statements of operations, members' capital and cash flows for each of the two years in the period ended December 31, 2020, and the related notes (collectively referred to as the "consolidated financial statements"). In our opinion, the consolidated financial statements present fairly, in all material respects, the financial position of the Company at December 31, 2020 and 2019, and the results of its operations and its cash flows for each of the two years in the period ended December 31, 2020, in conformity with U.S. generally accepted accounting principles.

**Basis for Opinion**

These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on the Company's financial statements based on our audits. We are a public accounting firm registered with the Public Company Accounting Oversight Board (United States) (PCAOB) and are required to be independent with respect to the Company in accordance with the U.S. federal securities laws and the applicable rules and regulations of the Securities and Exchange Commission and the PCAOB.

We conducted our audits in accordance with the standards of the PCAOB. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether due to error or fraud. The Company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting. As part of our audits we are required to obtain an understanding of internal control over financial reporting but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion.

Our audits included performing procedures to assess the risks of material misstatement of the financial statements, whether due to error or fraud, and performing procedures that respond to those risks. Such procedures included examining, on a test basis, evidence regarding the amounts and disclosures in the financial statements. Our audits also included evaluating the accounting principles used and significant estimates made by management, as well as evaluating the overall presentation of the financial statements. We believe that our audits provide a reasonable basis for our opinion.

Ernst & Young LLP

We have served as the Company's auditor since 2020.
Miami, FL
March 15, 2021

F-25