**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:22-CV-20827-WILLIAMS/SANCHEZ**

ALBERTO GONZALEZ, Individually and on
Behalf of All Others Similarly Situated,

        Plaintiff,

    v.

MARLOW HERNANDEZ and BRIAN D.
KOPPY,

        Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ..................................................................................................................... 4

I.     THE SAC DOES NOT RAISE ANY INFERENCE OF SCIENTER. ............................... 4

    A.     The Alleged "Accounting Improprieties" Are Not a Basis for Scienter Absent
Allegations of Intentional Fraud or Severe Recklessness. ....................................... 4

    B.     Plaintiff's Other Scienter Theories Are Unavailing. ................................................. 7

        1.     The Alleged "Magnitude" Does Not Support a Strong Inference of
Scienter. .......................................................................................................... 7

        2.     Plaintiff Has Not Alleged a Legally Cognizable Motive. ........................... 9

        3.     Plaintiff's Confidential Witness (FE) Allegations Are Irrelevant. ............. 10

        4.     Unrelated Delaware Litigation and Defendants' Departures Do Not
Support a Strong Inference of Scienter. ...................................................... 10

II.    THE SAC FAILS TO PLEAD FALSITY WITH RESPECT TO THE MAJORITY OF
ALLEGED MISSTATEMENTS. ...................................................................................... 12

III.   THE SAC DOES NOT ALLEGE LOSS CAUSATION. ................................................. 14

IV.    PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND A THIRD TIME. ......... 15

CONCLUSION ..................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amorosa v. Gen. Elec. Co.*,
    2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) ...................................................................3, 11

*In re Bio-Technology Gen. Corp. Sec. Litig.*,
    380 F. Supp. 2d 574 (D.N.J. 2005) ...........................................................................13

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) ...............................................................................9

*In re Buca, Inc. Sec. Litig.*,
    2006 WL 3030886 (D. Minn. Oct. 16, 2006) ...........................................................15

*Carvelli v. Ocwen Fin. Corp.*,
    2018 WL 4941110 (S.D. Fla. Apr. 30, 2018) ...........................................................15

*In re Catalina Mktg. Corp. Sec. Litig.*,
    390 F. Supp. 2d 1110 (M.D. Fla. 2005) ...................................................................8

*Cheney v. Cyberguard Corp.*,
    2000 WL 1140306 (S.D. Fla. Jul. 31, 2000) .............................................................7

*City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*,
    2023 WL 1998174 (S.D. Fla. Feb. 13, 2023) ...........................................................12

*City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*,
    649 F. Supp. 3d 1256 (S.D. Fla. 2023) ................................................................3, 5

*City Pension Fund for Firefighters and Police Officers in City of Miami Beach v.
    AraCruz Cellulose S.A.*,
    41 F. Supp. 3d 1369 (S.D. Fla. 2011) .....................................................................11

*In re Colonial Bancgroup, Inc. Sec. Litig.*,
    9 F. Supp. 3d 1258 (M.D. Ala. Mar. 27, 2014) .....................................................4, 15

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ...............................................................................................4, 15

*In re Ebix, Inc. Sec. Litig.*,
    898 F. Supp. 2d 1325 (N.D. Ga. 2012) ...................................................................7

*In re Faro Techs. Sec. Litig.*,
    534 F. Supp. 2d 1248 (M.D. Fla. 2007) ...................................................................9

*In re Iconix Brand Grp., Inc.*,
    2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017) ...........................................................7

*In re JDN Realty Corp. Sec. Litig.*,
    182 F. Supp. 2d 1230 (N.D. Ga. 2002) ...................................................................11

*Lemen v. Redwire Corp.*,
2023 WL 2598402 (M.D. Fla. Mar. 22, 2023) ..........................................................................9

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. ---, 2024 WL 1588706 (2024)...................................................................................14

*In re Marriott Int'l, Inc.*,
31 F.4th 898 (4th Cir. 2022) ...................................................................................................14

*Mizzaro v. Home Depot, Inc.*,
544 F.3d 1230 (11th Cir. 2008) ..................................................................................1, 3, 5, 10

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) ..........................................................................8

*In re Paincare Holdings Sec. Litig.*,
541 F. Supp. 2d 1283 (M.D. Fla. 2008) ....................................................................................7

*Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*,
572 F. App'x 713 (11th Cir. 2014) ...........................................................................................2

*In re Royal Caribbean Cruises, Ltd. Sec. Litig.*,
2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) .........................................................................15

*Schaeffer v. Nabriva Therapeutics plc*,
2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020)..........................................................................14

*In re Seitel, Inc. Sec. Litig.*,
447 F. Supp. 2d 693 (S.D. Tex. 2006) ......................................................................................8

*In re Sportsline.com Sec. Litig.*,
366 F. Supp. 2d 1159 (S.D. Fla. 2004) ..................................................................................2, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..........................................................................................................2, 5, 7

*Thor Power Tool Co. v. C.I.R.*,
439 U.S. 522 (1979)..................................................................................................................6

*Ziemba v. Cascade Int'l, Inc.*,
256 F.3d 1194 (11th Cir. 2001) ................................................................................................6

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ...............................................................................................2, 10

**Statutes and Rules**

Federal Rule of Civil Procedure 9(b)........................................................................................4, 11

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq*..................... *passim*

iii

Plaintiff's Opposition (D.E. 79) betrays that the SAC[1] is based upon multiple, demonstrable inaccuracies and mischaracterizations of the issues underlying Plaintiff's securities fraud claims, and this action must be dismissed in its entirety on several independent grounds.[2]

***First***, the SAC fails to "state with particularity ***facts*** giving rise to a ***strong inference***" of scienter, as it must. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008). Instead, Plaintiff resorts to blatant speculation and distortions of Cano's SEC filings, none of which, together or independently, satisfies the PSLRA's heightened pleading standard for scienter. In particular, Plaintiff's entire fraud theory—that Cano engaged in "[m]ultiple, [s]ystemic [a]ccounting [i]mproprieties"—is a fiction. Neither of the two unrelated accounting issues alleged in the SAC is sufficient to plead a strong inference of scienter, and Plaintiff's attempt to create a connection between them does not salvage his claims. Plaintiff misconstrues Cano's August 10, 2023 disclosure announcing the results of its previously disclosed process of annually adjusting estimated to actual MRA revenue based upon the most recent "mid-year reconciliation payment" from its health plan partners, which was not a "restatement" of Cano's earlier financial statements. Rather, it was a routine reconciliation of estimated to actual MRA revenue conducted by Cano and its peers in the industry, and simply because this particular annual reconciliation resulted in a downward adjustment does not render the process fraudulent. This MRA revenue reconciliation has nothing to do with the technical GAAP compliance issue that impacted the *timing* of MRA revenue accrual that led to Cano's restatement of its quarterly 2021 financial statements. Regardless, even if "overly manual" back-end billing and coding processes impacted Cano's MRA revenue estimates (and there are no non-speculative allegations establishing such facts in the SAC), and even though Cano misapplied a highly technical GAAP provision to time its accrual of MRA revenue prior to 2022, these allegations amount to, at most, allegations of negligence, but not fraud, particularly where Cano's outside auditors gave Cano clean audit opinions on these aspects of its accounting. Accounting errors, without particularized facts regarding Defendants' knowledge of those errors, are insufficient to plead a strong inference of scienter. *See, e.g.*, *In re*

---

[1] This reply uses the defined terms in Defendants' Motion to Dismiss the Second Amended Complaint and Supporting Memorandum of Law (D.E. 73), and it refers to that Memorandum as "Defendants' Opening Brief." Emphasis is always added unless noted.

[2] This reply is filed on behalf of Defendants Hernandez and Koppy only. Plaintiff voluntarily dismissed his claims against Cano (D.E. 77) after the filing of Defendants' Opening Brief. "Defendants," therefore, refers only to Hernandez and Koppy.

*Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1165–70 (S.D. Fla. 2004) (dismissing Section 10(b) claims).

Relatedly, Plaintiff demonstrably inflates the magnitude of the alleged accounting issues to support scienter, confusing capitated revenue (which accounts for a significant portion of Cano's revenue) with MRA revenue (which accounts for less than 2% of Cano's capitated revenue). Only the timing (not amount) of MRA revenue was impacted by the March 2022 restatement of Cano's 2021 quarterly financial statements, and the second quarter 2023 mid-year MRA revenue reconciliation reflected, at most, 1.6% lower actual revenue for 2022 than previously estimated.

Plaintiff's willingness to make counterfactual claims is self-evident from the Opposition's proclamation that Cano has "admitted that Defendants committed securities fraud" (D.E. 79 at 1). This smoke-and-mirrors approach to pleading cannot disguise that the Opposition fails to meaningfully address Defendants' competing, non-fraudulent inferences, which far outweigh any inferences of scienter in the Court's mandatory *Tellabs* balancing. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (an inference of scienter is only strong if it is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged"). In particular, Plaintiff has no answer to the undisputed facts, of which this Court can take judicial notice, that Cano's SEC filings disclosed that independent auditors, including its current auditor, Ernst & Young ("EY"), had previously given clean audit opinions of its financial statements before the 2022 restatement, and EY also attested that Cano had sufficient internal controls and/or had remediated internal controls on the relevant accounting issues. Accounting errors happen, and they are corrected; they are not automatically securities fraud. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009).

Plaintiff attempts to clear his *Tellabs* pleading hurdle by stringing together a series of theories that have been rejected as insufficient under the PSLRA:

- Plaintiff's alleged motives—consummating a business transaction and receipt of stock options—are the types of "personal financial incentive[s]" that courts routinely reject. *See, e.g.*, *Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*, 572 F. App'x 713, 718 (11th Cir. 2014). They are particularly nonsensical here where EY found no material restatement of Cano's pre-business combination financial statements in 2019 and 2020 (D.E. 74-6 at 6 (Ex. 99.1, at 2)), undermining any alleged incentive to inflate revenue prior to that transaction.

- Plaintiff's "FE" allegations lack "the foundation or basis of the confidential witness[es'] knowledge" or "the proximity to the offending conduct" as required by the

PSLRA (*Mizzaro*, 544 F.3d at 1240) because they had no contact with Defendants concerning the relevant accounting issues, are not alleged to be accounting employees, and their statements largely do not pertain to the Class Period.

- The Delaware Litigation had nothing to do with accounting issues, GAAP compliance, MRA revenue, or allegations of securities fraud, and the Court should disregard Plaintiff's improper—and desperate—attempt to manufacture scienter in this case by "cribbing uncorroborated allegations . . . from a complaint in another action." *See Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at *3 (S.D.N.Y. Aug. 19, 2022).

- Plaintiff's allegations regarding the circumstances of Defendants' departures from Cano are entirely speculative and unsupported by Cano's disclosures. Regardless, resignations, without an alleged connection to the alleged securities fraud (as opposed to unrelated events or even mere mismanagement), do not supply a strong inference of scienter. *City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*, 649 F. Supp. 3d 1256, 1275–76 (S.D. Fla. 2023).

Zero plus zero equals zero when the SAC is viewed holistically, as Plaintiff insists it must be.

***Second***, Plaintiff's inability to plead the required strong inference of scienter, contrasted with Defendants' unrebutted non-fraudulent inferences, is by itself a sufficient ground to dismiss this case in its entirety and with prejudice. But the Court should also dismiss certain of Plaintiff's claims on the independent ground that Plaintiff has not met his burden to allege falsity for nearly all categories of alleged misstatements. To be clear, Defendants do not dispute, for purposes of this motion only, that certain financial metrics in Cano's Form 10-Qs for the first, second, and third quarters of 2021 were rendered materially false as a result of the misapplication of ASC 606 that led to changes in the timing of Cano's accrual of MRA revenue and March 2022 restatement (which still does not give rise to securities fraud in the absence of scienter). But, Defendants dispute that any of Cano's financial statements were rendered materially false or misleading as a result of Cano's second quarter 2023 MRA revenue reconciliation or the alleged "overly manual" billing and coding practices and also dispute that Cano's risk disclosures and statements regarding internal controls were materially false or misleading for the following reasons:

- Cano's routine, periodic reconciliation of estimated to actual MRA revenue in the second quarter of 2023 did not lead to the restatement of any prior financial statements. The reconciliation, conducted by Cano and its peers when risk-adjusted payments are received from health plan partners, was accounted for in Cano's second quarter 2023 financial statement, consistent with its disclosed processes. *See* D.E. 74-6 at 13 (Ex. 99.2 at 19); *see also* pp. 5–6, *infra*.

- The allegedly "error-prone" processes described by Mr. Kent were back-office billing and coding practices that merely "inform[ed]" Cano's publicly reported MRA revenue

estimates. SAC ¶ 11. Those same processes that the FEs allege went back to 2020 did not lead to any alleged restatement or "accounting irregularity" in 2021, 2022, or any other time. *See id.* ¶¶ 68–80. Plaintiff's theory that Cano was plagued by "[m]ultiple, [s]ystemic [a]ccounting [i]rregularities" is belied by his own FEs' allegations.

- Cano's detailed risk disclosures throughout the Class Period regarding the complexities of accounting for MRA revenue were not false when made. Further, the SAC acknowledges that Cano management was unaware of any issues with Cano's processes until the second quarter of 2023, when Mr. Kent initiated a review of the Company's billing and coding practices. *See id.* ¶ 61.

- Plaintiff's arguments about Cano's statements regarding its internal controls disregard the Company's and its auditor's own disclosures in the SEC filings upon which Plaintiff relies. In 2022, Cano remediated the internal controls issues that led to the March 2022 restatement. *See* D.E. 73 at 8. And, in 2023 (the period encompassing the at-issue MRA revenue reconciliation), Cano and EY found certain weaknesses in internal controls "***except for the capitated revenue class of transactions***" (of which MRA revenue is a part). D.E. 83-2 (Cano Form 10-K for fiscal year ended Dec. 31, 2023 ("2023 Form 10-K")), at 118, 180.

***Third***, Plaintiff has not met his burden to prove loss causation, another independent basis for dismissal. The February 28, 2022 stock price drop on which Plaintiff's claims are based did not reveal an alleged fraud and was part of a continuing trend downward in Cano stock price. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347–48 (2005) (no loss causation where complaint "fail[ed] to claim that . . . share price fell significantly after the truth became known"). With regard to the August 2023 disclosure, Cano "merely reported negative financial results which were worse than estimated," which does not plead loss causation. *In re Colonial Bancgroup, Inc. Sec. Litig.*, 9 F. Supp. 3d 1258, 1271 (M.D. Ala. Mar. 27, 2014).

For these reasons, as well as those in Defendants' Opening Brief, Plaintiff's claims should be dismissed in their entirety, with prejudice.

## ARGUMENT

### I. THE SAC DOES NOT RAISE ANY INFERENCE OF SCIENTER.

#### A. The Alleged "Accounting Improprieties" Are Not a Basis for Scienter Absent Allegations of Intentional Fraud or Severe Recklessness.

As a threshold matter, Plaintiff's Opposition ignores the heightened pleading standards applicable to his securities fraud claims under Rule 9(b) and the PSLRA. *See* D.E. 79 at 7 (citing *Twombly*/*Iqbal* standards only). And for good reason—Plaintiff is unable to satisfy those heightened pleading standards. Plaintiff contends that the mere existence of what he falsely characterizes as "[m]ultiple, [s]ystemic [a]ccounting [i]mproprieties" (D.E. 79 at 13) is sufficient

4

to survive dismissal, but what the law requires is that he plead a strong inference of scienter that is "at least as compelling" as Defendants' opposing non-fraudulent inferences. *Mizzaro*, 544 F.3d at 1238 (quoting *Tellabs*, 551 U.S. at 324). After three attempts at filing complaints, he is unable to do so. To start, there are no "systemic accounting improprieties" here; there is one, highly technical correction of a GAAP accounting methodology previously signed off on by Cano's external auditors, which led to the restatement of 2021 quarterly revenue announced by Cano in March 2022. D.E. 73 at 7. In addition, there was the second quarter 2023 routine, annual MRA revenue estimate reconciliation process that Cano and its peers conduct because the MRA component of the monthly capitated revenue received by companies like Cano is later adjusted by "reconciliation payments" from health plan partners based upon the health status and demographic characteristics of the patients. *See* D.E. 74-8 at 95–96 (explaining that, "Capitated revenues are recognized in the month in which we are obligated to provide medical care services. . . . Through our Medicare Risk Adjustment ('MRA'), the rates are risk adjusted based on the health status (acuity) and demographic characteristics of members. The fees are paid on an interim basis based on submitted enrolled member data for the previous year and are ***adjusted in subsequent periods after the final data is compiled by the CMS***"). Even if Cano's allegedly "error-prone" back-end billing and coding processes impacted Cano's MRA revenue estimates (of which the SAC fails to plead any such link), the SAC pleads no facts to overcome the non-fraudulent inference that Cano's misapplication of GAAP prior to 2022 and its downward reconciliation of estimated to actual MRA revenue in the second quarter of 2023 resulted from, at most, potential negligence or miscalculation. *Citrix Sys.*, 649 F. Supp. at 1276 ("earnings miss is more probative of miscalculation than fraud").

Plaintiff's attempt to blur the distinctions between these two issues also fails to supply a strong inference of scienter. Cano issued a restatement in March 2022—*i.e.*, restating financial results for the first, second, and third quarters of 2021—after Cano and EY, who had previously issued clean audit opinions under the same methodology, determined in the process of preparing Cano's 2021 year-end financials that a change to its methodology for the timing of MRA revenue accrual was necessary. D.E. 73 at 7–8.[3] This Circuit has rejected the notion that GAAP violations,

---

[3] That Cano allegedly interpreted ASC 606 differently from its peers prior to March 2022 does not lead to a strong inference of scienter where Cano's interpretation was blessed by multiple outside auditors and where the same securities analyst who reported that Cano's methodology differed

without more, are by themselves sufficient to plead securities fraud, particularly where, as here, the Company used an outside auditor and where the particular accounting principles are complex and subject to interpretation.[4] *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1208–10 (11th Cir. 2001); *Sportsline.com*, 366 F. Supp. 2d at 1168–70. The same auditor, EY, determined in 2022 that Cano had addressed the weaknesses in internal controls that led to the restatement. D.E. 73 at 8. In other words, that issue was resolved.

Cano did not issue a second restatement in August 2023 or ever. Nor did it disclose any "accounting improprieties." Instead, what Cano described on August 10, 2023 was a routine, periodic adjustment of estimated MRA revenue to actual MRA revenue, which, contrary to Plaintiff's baseless allegation, was indeed "new information" (D.E. 79 at 11) based upon its recent receipt of "mid-year reconciliation" payments from its health plan partners. D.E. 73 at 9, 27. Cano disclosed this process well before August 10, 2023. D.E. 74-6 at 13 (Ex. 99.2 at 19). Just because this particular mid-year reconciliation resulted in a lower actual MRA revenue than estimated MRA revenue does not turn this routine process into an "accounting impropriety," let alone securities fraud. This MRA revenue reconciliation process is inherently based upon the "prospective" (SAC ¶ 39) nature of CMS capitated revenue. Indeed, other companies in the industry reported lower actual than estimated MRA revenue over the last year. *See, e.g.*, D.E. 83-3 (CareMax, Inc. Form 10-K for the year ended Dec. 31, 2023 ("CareMax 2023 10-K") at 9, F-13, F-18) (Cano's direct competitor describing, "[u]nder the risk adjustment model, capitation is paid on an interim basis based on enrollee data submitted for the preceding year and is adjusted in subsequent periods after the final data is compiled" and disclosing a $42.9 million decrease in estimated to actual 2023 revenue "primarily driven" by factors including "updated information from MSO Medicare health plans" and "lower than expected revenue in our centers population from Medicare risk adjustment").

Regardless, the SAC lacks any particularized allegation that either Dr. Hernandez or Mr.

---

from peers (D.E. 79 at 4) also commented that Cano's approach "seems reasonable." D.E. 74-3 at 1. GAAP provisions are subject to interpretation and "tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to management." *Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 544 (1979).

[4] EY noted in its 2022 annual report that "[a]uditing the Company's accounting for the estimated portion of capitated revenue was complex and required significant auditor judgment. . . ." D.E. 83-1 (Cano Form 10-K for fiscal year ended Dec. 31, 2022 ("Cano 2022 Form 10-K")) at 101.

Koppy intentionally caused the accounting to be wrong, or even knew or was severely reckless in not knowing that (i) Cano misapplied ASC 606 in 2021; or (ii) that Cano's future, actual MRA revenue would be lower than estimated MRA revenue. Dr. Hernandez is a physician and is not alleged to have any background in accounting or knowledge of the relevant accounting practices. And Mr. Koppy's role as CFO is, by itself, not enough in the absence of any allegations regarding his involvement in the events described in the SAC, particularly where the Company's independent auditors blessed its ASC 606 methodology for consecutive years leading up to the March 2022 restatement. *Cheney v. Cyberguard Corp.*, 2000 WL 1140306, at *8–9 (S.D. Fla. Jul. 31, 2000) ("[R]eliance on their high level position is not enough" to plead scienter based upon GAAP violations)[5]; *In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *18–19 (S.D.N.Y. Oct. 25, 2017) (clean audit opinion by independent auditor supports compelling inference that "accounting errors were not obvious or unreasonable"). For this reason, the SAC bears no resemblance to the allegations from *In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283 (M.D. Fla. 2008). D.E. 79 at 17, 21. In *Paincare*, the court looked not only to the fact and magnitude of the defendant's restatement (which encompassed nearly six years of financial statements), but also to allegations concerning the defendants' motives to increase the stock price in order to fund acquisitions and boost the individual defendants' compensation (allegations not present here) and allegations that the defendants offered a "false rationalization" for the company's restatement, combined with evidence of knowledge of the improper accounting treatment prior to the restatement, allegations also absent here. 541 F. Supp. 2d at 1287, 1291–92.

      **B.**      **Plaintiff's Other Scienter Theories Are Unavailing.**

In the absence of any allegations regarding either Defendant's state of mind, Plaintiff resorts to a hodge-podge of additional scienter theories, none of which comes close to the PSLRA and *Tellabs* standards, individually or holistically.

      **1.**      **The Alleged "Magnitude" Does Not Support a Strong Inference of Scienter.**

Plaintiff relies heavily upon the purported magnitude of the alleged accounting issues with respect to MRA revenue, claiming repeatedly that MRA revenue "accounts for more than 80% of

---

[5] Plaintiff's description of the *In re Ebix, Inc. Sec. Litig.*, 898 F. Supp. 2d 1325 (N.D. Ga. 2012) case, D.E. 79 at 13–14, illustrates why it is distinguishable from this one. There, the complaint included allegations of specific internal communications by the defendant executives establishing their knowledge of the alleged fraud. *Ebix, Inc.*, 898 F. Supp. 2d at 1346–47.

Cano's revenue" and that Cano overstated its profitability by "nearly 60%." D.E. 79 at 13, 15. These allegations are demonstrably false based upon Cano's SEC filings that Plaintiff incorporates by reference into the SAC, which disclose that (i) the March 2022 restatement of 2021 quarterly financials did not affect the amounts of revenue, but rather the *timing* of accrual (D.E. 73 at 7), which Plaintiff omits shifted revenue into subsequent quarters and had a net *positive* impact on Cano's 2022 revenue guidance (D.E. 74-6 at 6–7, 11 (Ex. 99.1 at 2–3; Ex. 99.2 at 7)); and (ii) MRA revenue accounts for no more than *2% of Cano's Medicare capitated revenue*. D.E. 74-6 at 13 (Ex. 99.2 at 19). Plaintiff appears to be confusing Medicare capitated revenue (the per member per month revenue that is a "pre-negotiated percentage of the premium that the health plan receives from the [CMS]," D.E. 74-4 at 6) with MRA revenue (the risk-adjusted component of capitated revenue that is based upon "health status . . . and demographic characteristics of members," D.E. 74-8 at 95–96). Medicare capitated revenue accounts for "a significant portion" of Cano's revenue (D.E. 74-4 at 6), of which MRA revenue is just a small part. Indeed, even if the entire $44 million reconciliation of estimated revenue in prior periods announced on August 10, 2023 was all for 2022 (as opposed to the first quarter of 2023 as well), $44 million would represent just 1.6% of Cano's 2022 revenue. D.E. 73 at 25. Plaintiff's Opposition ignores this simple math entirely. The impacts to the timing (but not amount) of MRA revenue accrual related to the March 2022 restatement and the routine reconciliation of no more than 1.6% of Cano's overall 2022 revenue in the second quarter of 2023 bear no resemblance to the cases relied upon by Plaintiff (D.E. 79 at 15) involving overstatements of 30% and 43%, respectively. *See In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 705 (S.D. Tex. 2006); *In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp. 2d 1110, 1114 (M.D. Fla. 2005). *But see Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *32 (C.D. Cal. Apr. 14, 2015) (rejecting magnitude of restatement allegations where "GAAP violations merely shifted earnings from present to future periods; overall revenues were not impacted"). Plaintiff's allegations regarding the impact of the alleged accounting issues are sloppy and misleading, and the Court can draw no strong inference of scienter from the alleged impact to Cano's revenue here.[6]

---

[6] For the same reason, Plaintiff's attempt to invoke the "core operations" doctrine based upon the alleged magnitude of the so-called "accounting improprieties" likewise fails (D.E. 79 at 15–16), in addition to the reasons why the doctrine is disfavored in this Circuit. D.E. 73 at 18–20.

### 2. Plaintiff Has Not Alleged a Legally Cognizable Motive.

Plaintiff continues to advance two legally insufficient and illogical theories of the Defendants' motive to commit fraud. Motive alone is insufficient to plead a strong inference of scienter absent allegations of the individual defendants' knowledge of the statements' falsity or severe recklessness (*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1285 (11th Cir. 1999)), which automatically distinguishes this case (in which such allegations are lacking) from the *Lemen v. Redwire Corp.*, 2023 WL 2598402, at *4 (M.D. Fla. Mar. 22, 2023) case on which Plaintiff relies. D.E. 79 at 16. In *Lemen*, the plaintiff alleged that the individual defendants were aware of the "tone at the top" problems the company allegedly failed to disclose because the company's disclosures identified those defendants as the primary perpetrators. 2023 WL 2598402, at *4. The SAC alleges zero facts that either Dr. Hernandez or Mr. Koppy knew any of Cano's 2021 quarterly financial statements were incorrect prior to being restated in March 2022.

Plaintiff first alleges that Defendants "were motivated to consummate the Business Combination, and the incorrect accounting method enabled them to report increased revenue in the short-term to make PCIH appear as a more appealing acquisition target." D.E. 79 at 16. But, aside from his own say-so, Plaintiff offers not a single case to support his argument that consummation of a business transaction is anything other than a general corporate incentive insufficient to establish scienter. *See* D.E. 73 at 20–22. Plaintiff also has no answer to the fact that EY did not find the restatements to Cano's financial statements prior to the Business Combination to be material.[7] *See id.* at 20–21.

Second, Plaintiff argues that Defendants' receipt of stock option awards upon the consummation of the Business Combination is a sufficient motive. D.E. 79 at 16–17. Receipt of stock options is the very definition of a "personal financial incentive" that courts categorically reject as a basis for scienter, and Plaintiff makes no attempt to explain why Defendants' cited cases (D.E. 73 at 21) are distinguishable. Unlike *In re Faro Techs. Sec. Litig.*, 534 F. Supp. 2d 1248, 1263–64 (M.D. Fla. 2007), relied upon by Plaintiff (D.E. 79 at 16) where the defendants sought to "cash out" after inflating the company's stock value, here there are no allegations that either Defendant sold stock during the Class Period, which means that Defendants' stock options and

---

[7] The SAC acknowledges that Mr. Koppy did not join PCIH until April 2021, more than four months after the agreement to consummate the Business Combination. SAC ¶¶ 22, 31. Mr. Koppy, therefore, could not have possessed a motive to inflate the target company's revenue.

other equity holdings in Cano lost value alongside its other stockholders. This purported "motive" falls flat.

### 3.     Plaintiff's Confidential Witness (FE) Allegations Are Irrelevant.

Plaintiff's Opposition distorts the allegations attributed to the FEs in the SAC in an attempt to divert attention from the glaring deficiencies identified in Defendants' Opening Brief, including that none of the FEs alleges any interaction with either Defendant concerning the allegations in the SAC, none alleges information relevant to the Company's accounting or public financial reporting, and none alleges temporally relevant information regarding the Company's practices during the Class Period. D.E. 73 at 12–15. Plaintiff makes no attempt to distinguish Defendants' cases (*id.* at 14) rejecting confidential witness allegations where the witnesses had no connection to the defendants or alleged misstatements.

The Opposition misdescribes the SAC's own FE allegations. None of the FEs is alleged to have any role in accounting at Cano; by the SAC's own admission, they are not "accounting employees" as the Opposition now contends. *Compare* SAC ¶¶ 69 n.8 (chief administration officer), 71 n.11 (billing and coding specialist), 72 n.12 (medical coder), *with* D.E. 79 at 18 n.11. Two of the confidential witnesses—FE 2 and FE 3—are back office "billing and coding" employees. The third, FE 1, is not alleged to have any role in accounting either. As a result, none of these FEs has the requisite reliable, first-hand knowledge to provide any particularized facts concerning how Cano's revenue was publicly reported. *Zucco Partners, LLC*, 552 F.3d at 995; *Mizzaro*, 544 F.3d at 1240. Similarly, Plaintiff attempts to reframe the FEs' allegations as concerning internal controls (D.E. 79 at 1, 19), but none of the statements attributed to the FEs actually says anything about internal controls, which is an accounting audit function.[8] Plaintiff's overreach in his characterization of his own FE allegations underscores their insufficiency.

### 4.     Unrelated Delaware Litigation and Defendants' Departures Do Not Support a Strong Inference of Scienter.

Because he has failed to state a claim for securities fraud, Plaintiff imports allegations from the entirely unrelated Delaware Litigation, which was dismissed, into the SAC and then, in his

---

[8] Plaintiff's attempt to use the FE allegations to support intentional deceit or severe recklessness is also contradicted by the SEC filings on which Plaintiff relies, where EY describes the work done by Cano's independent actuary to estimate MRA revenue and by EY itself to evaluate the methodology and assumptions used by Cano's actuary. *See* D.E. 83-1 at 101 (report of EY describing audit process for MRA revenue).

Opposition, claims those unrelated allegations support a strong inference of securities fraud as to Dr. Hernandez.[9] As Plaintiff's SAC Exhibits B and C reflect, however, the Delaware Litigation was in the context of a proxy contest for election of directors, in which Cano's slate of directors ultimately prevailed. The Delaware Litigation plaintiffs—certain members of Cano's board of directors at the time—made allegations regarding related party transactions, which they claimed violated Cano's internal policies. Nowhere did the Delaware Litigation court conclude that Dr. Hernandez "with[eld] material information from investors," as Plaintiff imagines.[10] D.E. 79 at 20. The Delaware Litigation did not concern the Company's public reporting of MRA revenue or any other financial metric and did not contain allegations of securities fraud. The case on which Plaintiff relies, *In re JDN Realty Corp. Sec. Litig.*, 182 F. Supp. 2d 1230, 1242 (N.D. Ga. 2002), illustrates precisely why the Delaware Litigation is irrelevant to scienter here. D.E. 79 at 20. In that case, the securities litigation was about allegedly undisclosed transactions, so the alleged knowledge of the CEO regarding those transactions contributed to a strong inference of scienter. *JDN Realty Corp.*, 182 F. Supp. 2d at 1235, 1242. Here, the allegations in the Delaware Litigation concerning related party transactions have nothing to do with the alleged MRA revenue accrual and estimation issues alleged in the SAC. The existence of and allegations in the Delaware Litigation cannot constitute particularized factual allegations in this case that would satisfy Rule 9(b) or the PSLRA, as they have nothing to do with Dr. Hernandez's knowledge (or lack thereof) about MRA revenue recognition and estimation. *See Amorosa*, 2022 WL 3577838, at *3.

The fact that Dr. Hernandez resigned as Cano's CEO in June 2023, shortly after the Delaware court dismissed the Delaware Litigation, does not connect the necessary dots for Plaintiff. Unlike the *City Pension Fund for Firefighters and Police Officers in City of Miami Beach v. AraCruz Cellulose S.A.*, 41 F. Supp. 3d 1369, 1384 (S.D. Fla. 2011) case on which Plaintiff relies (D.E. 79 at 20), Dr. Hernandez did not allegedly resign from Cano as a result of the disclosure issues in the SAC. Instead, Plaintiff's allegations regarding the circumstances of Dr. Hernandez's departure are purely speculative. D.E. 79 at 20. Moreover, the SAC contains no facts that Mr. Kent

---

[9] The Delaware Litigation did not concern Mr. Koppy—nor does Plaintiff allege that it did—and therefore, the Delaware Litigation cannot contribute to a strong inference of scienter as to him.

[10] To the contrary, the Delaware Court of Chancery's decision, denying the plaintiffs' motion for preliminary injunction, recites, "At an Audit Committee meeting on February 23, Weil reported on its investigation, affirming that disclosure was not required. Ernst and Young ('EY'), the Company's independent auditor, reached a similar conclusion." D.E. 70-3 at 24.

discovered alleged "rampant accounting irregularities" only after Dr. Hernandez's departure. D.E. 79 at 19–20. Mr. Kent's own statements, relied upon by Plaintiff, describe that he began a review of the Company's billing and coding practices upon his arrival at Cano in April 2023, during a time when Dr. Hernandez was still Cano's CEO. *See* D.E. 74-10 at 6. Regardless, what Mr. Kent discovered were not "rampant accounting irregularities," but rather ways to improve upon the Company's billing and coding practices. D.E. 73 at 9–10.

Similarly, Plaintiff's theory that Mr. Koppy's departure was connected to Mr. Kent's August 10, 2023 disclosures (or any of the SAC's other allegations) is likewise based on speculation unsupported by any facts, particularly where there is no allegation that Mr. Koppy had any knowledge of or involvement in the billing and coding processes that were the subject of Mr. Kent's statements—which, as the FEs' allegations make clear, are entirely distinct departments from the finance department overseen by Mr. Koppy.[11] The far more plausible, non-fraudulent inference is that Mr. Koppy's departure was connected to Mr. Kent bringing in new management with whom he had worked in the past. D.E. 73 at 22 n.11. Regardless, even if Mr. Koppy's departure related somehow to the MRA revenue reconciliation announced in August 2023, Plaintiff has not come close to alleging that the reconciliation was the result of fraud—as opposed to, at most, poorly managed billing and coding processes with which Mr. Koppy is not alleged to have had any involvement.

## II. THE SAC FAILS TO PLEAD FALSITY WITH RESPECT TO THE MAJORITY OF ALLEGED MISSTATEMENTS.

Plaintiff's abject failure to plead a strong inference of scienter as to either Defendant is alone sufficient to compel dismissal of the SAC in its entirety, and with prejudice. But the SAC also fails to plead falsity as to the majority of alleged misstatements.

First, there are no alleged inaccuracies in Cano's quarterly financial statements based upon Cano's routine, annual reconciliation of estimated to actual MRA revenue resulting from the "reconciliation payments" received from health plan partners in mid-2023. The only alleged changes to Cano's previously reported financials during the Class Period resulted from the change

---

[11] For this reason, the *City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*, 2023 WL 1998174 (S.D. Fla. Feb. 13, 2023) case cited by Plaintiff (D.E. 79 at 16) is distinguishable. There, the defendant had alleged direct, hands-on involvement in the department with the alleged "very loose" processes, accompanied by other particularized allegations of scienter absent here. *Celsius Holdings, Inc.*, 2023 WL 1998174, at *5, 8–10.

in Cano's methodology for the timing of MRA revenue accruals announced in February 2022 that led to the shifting forward of 2021 quarterly revenue into subsequent quarters.[12] In other words, as set forth above and in Defendants' Opening Brief, there was no restatement of Cano's previously disclosed MRA revenue estimates, just an annual reconciliation to actuals. And, Plaintiff's speculation that the "overly manual," "error-prone" processes allegedly described by the FEs and Mr. Kent led to "rampant" or "systemic" accounting irregularities does not bear out in the SAC or Cano's SEC disclosures where those same processes are not alleged to have led to any "restatement" of financials earlier in the Class Period. The reconciliation is part of Cano's ongoing process of adjusting estimated MRA revenue to actual revenue, the same process undertaken by its peers. *See* D.E. 83-3 (CareMax 2023 Form 10-K) at 9, F-13, F-18. There is no "accounting impropriety" or "irregularity" here.[13]

Second, Cano's risk disclosures were not false when made based upon Mr. Kent's subsequent disclosures of the back-end billing and coding practices that Cano sought to improve. There is no allegation that either Defendant knew that any such issues impacted Cano's ability to reasonably estimate MRA revenue prior to Mr. Kent's review commencing in April 2023 (and for this reason, Plaintiff fails to allege that Cano's MRA revenue estimates lacked a "reasonable basis" at the time they were made in 2022 and the first quarter of 2023, D.E. 79 at 10). This is particularly true where an independent actuary assisted Cano with its MRA revenue estimate assumptions, which methodology and assumptions were in turn reviewed by EY as part of its year-end audit process. *See* p. 10 n.8, *supra.* Instead, Cano disclosed the challenges of estimating and accruing MRA revenue (*see, e.g.*, SAC ¶¶ 98, 102, 106, 128), and EY also acknowledged that "[a]uditing the Company's accounting for the estimated portion of capitated revenue was complex and required significant auditor judgment due to the ***significant estimation uncertainty*** related to the estimated risk score and the related MRA accrual." D.E. 83-1 at 101. Cano's risk disclosures are

---

[12] As Plaintiff's own case (D.E. 79 at 9), *In re Bio-Technology Gen. Corp. Sec. Litig.*, demonstrates, simply because a restatement may reflect that financial statements were false when made is "not an admission of wrongdoing." 380 F. Supp. 2d 574, 586 (D.N.J. 2005) (dismissing accounting restatement-based securities fraud claims for lack of scienter).

[13] Plaintiff also offers no rebuttal to Defendants' argument that to the extent Cano revised its revenue guidance on August 10, 2023 as a result of the MRA revenue reconciliation, the prior guidance would be non-actionable as a forward-looking statement protected by the PSLRA's safe harbor. D.E. 73 at 24 n.14.

not materially false and misleading in the absence of any particularized allegation of fact to indicate that the MRA revenue estimates were false when made—unlike *Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at \*11 (S.D.N.Y. Apr. 28, 2020), relied upon by Plaintiff (D.E. 79 at 12), in which the defendants' statements about regulatory compliance were false when made because they had already received a warning letter from FDA.[14] Furthermore, any omission of Cano's allegedly "overly manual" and "error prone" billing and coding processes is not actionable, where Cano did not make any affirmative statement to suggest otherwise. *See Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. ---, 2024 WL 1588706, at \*2 (2024) ("[p]ure omissions are not actionable under Rule 10b–5(b)"); *In re Marriott Int'l, Inc.*, 31 F.4th 898, 902–03 (4th Cir. 2022) (affirming risk disclosures concerning cybersecurity risks not actionable where defendant "made no characterization at all with respect to the quality of its cybersecurity").

Third, Plaintiff's allegations that Cano's disclosures regarding internal controls were materially false and misleading are contradicted by the very SEC filings on which Plaintiff relies. As detailed in Defendants' Opening Brief, Cano determined that it had remediated the weaknesses in internal controls that led to the March 2022 restatement, and its auditor, EY, agreed with Cano's assessment. SAC ¶ 132; D.E. 74-8 at 147. And, regarding the MRA estimation process, EY concluded at the end of 2023 (the period during which Cano announced the downward reconciliation of estimated to actual MRA revenue) that although certain weaknesses in internal controls were identified by Cano's management, those weaknesses did not include "the capitated revenue class of transactions" (of which MRA revenue is a part). D.E. 83-2 at 118, 180. The FEs' allegations of issues with billing and coding processes are not weaknesses in internal controls simply because Plaintiff says so, and EY's 2023 report slams the door on Plaintiff's theory.

### III.    THE SAC DOES NOT ALLEGE LOSS CAUSATION.

Plaintiff fails to plead the independent element of loss causation for the reasons set forth in Defendants' Opening Brief. Plaintiff has contrived the alleged "partial" February 28, 2022 corrective disclosure (which revealed no wrongdoing but rather reflected prompt disclosure, upon

---

[14] Instead, Cano warned "the billing and collection process is complex … [and] requires complex, resource-intensive processes. . . . If our estimates of revenues are materially inaccurate, it could impact the timing and the amount of our revenue recognition and have a material adverse impact on our business, results of operations, financial condition and cash flows." D.E. 83-1 at 34.

Cano's and EY's discovery, of the need for a change in Cano's application of ASC 606 and the "potential" need for non-cash adjustments, D.E. 74-2 at 5 (Ex. 99.1 at 1), because when the actual financial impact of the change in Cano's ASC 606 accounting methodology was announced, Cano's stock price ***increased***. D.E. 74-7 (stock price chart). The stock price drop on which Plaintiff's claims are based did not reveal an alleged fraud and was part of a continuing trend downward in Cano's stock price. *Dura Pharms., Inc.*, 544 U.S. at 347–48 (noting "complaint's failure to claim that Dura's share price fell significantly after the truth became known").[15] And, with regard to the August 10, 2023 disclosure, Cano "merely reported negative financial results which were worse than estimated," which is insufficient to plead loss causation. *Colonial Bancgroup, Inc.*, 9 F. Supp. 3d at 1271.

## IV.    PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND A THIRD TIME.

Plaintiff's request for leave to replead for a third time (D.E. 79 at 25) should be denied. It is well within this Court's authority and discretion to dismiss this case with prejudice after Plaintiff's multiple, failed attempts to state a claim. *Carvelli v. Ocwen Fin. Corp.*, 2018 WL 4941110, at *8 (S.D. Fla. Apr. 30, 2018), *aff'd*, 934 F.3d 1307 (11th Cir. 2019) (dismissing complaint with prejudice because of incurable infirmities); *In re Royal Caribbean Cruises, Ltd. Sec. Litig.*, 2013 WL 3295951, at *19 (S.D. Fla. Apr. 19, 2013) (Williams, J.) (determining that amendment of complaint would be futile). This Court has previously cautioned Plaintiff that "barring exceptional and extraordinary circumstances," the SAC "shall be the last and final complaint filed in this litigation." D.E. 69 at 4. There are no "exceptional and extraordinary" circumstances that would warrant leave to amend.

### CONCLUSION

For the foregoing reasons, the SAC should be dismissed in its entirety with prejudice.


April 24, 2024                                     By:    **NELSON MULLINS RILEY & SCARBOROUGH LLP**

                                                         */s/ Peter R. Goldman*

---

[15] Plaintiff's considerable efforts to discredit and distinguish the *In re Buca, Inc. Sec. Litig.*, 2006 WL 3030886, at *9 (D. Minn. Oct. 16, 2006) case (D.E. 79 at 23 & n.14), cited just once in Defendants' Opening Brief for the additional point that the February 28, 2022 stock price drop was part of a larger downward trend in Cano's stock price at the time, are unavailing; *Buca* remains good law and has not received any negative treatment.

Peter R. Goldman (FBN 860565)
Nina C. Welch (FBN 118900)
Danna Khawam (FBN 1025114)
100 S.E. 3rd Avenue, Suite 2700
Fort Lauderdale, FL 33394
Telephone: (954) 745-5239
Facsimile: (954) 761-8135
peter.goldman@nelsonmullins.com
nina.welch@nelsonmullins.com
danna.khawam@nelsonmullins.com

and

**GOODWIN PROCTER LLP**

*/s/ Deborah S. Birnbach*
Deborah S. Birnbach (*pro hac vice*)
Katherine McKenney (*pro hac vice*)
100 Northern Avenue
Boston, MA 02210
Tel: (617) 570-1000
Fax: (617) 523-1231
dbirnbach@goodwinlaw.com
kmckenney@goodwinlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April, 2024, I electronically filed the foregoing with the Clerk of Court by using the Court's CM/ECF system, which will furnish a copy to all counsel of record.

*/s/ Peter R. Goldman*
Peter R. Goldman

16